**REESE RICHMAN LLP**
Michael R. Reese
mreese@reeserichman.com
875 Avenue of Americas, 18th Floor
New York, New York 10001
Telephone:  (212) 643-0500
Facsimile:  (212) 253-4272

***Counsel for Plaintiffs and the Proposed Class***

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

## CENTRAL ISLIP

| | |
|---|---|
| **PATRICK HUGHES** and **NAFISÉ NINA HODJAT,** individually and on behalf of others similarly situated, | Case No.  12-cv-00041-JFB-ETB |
| Plaintiff, | **FIRST AMENDED** <br> **CLASS ACTION COMPLAINT** |
| v. | **FOR DAMAGES AND INJUNCTIVE RELIEF** |
| **THE ESTER C COMPANY; NBTY, INC.;** and **NATURESMART, LLC**, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiffs Patrick Hughes and Nafisé Nina Hodjat ("Plaintiffs"), individually and on behalf of others similarly situated (the "Class"), allege for their Class Action Complaint against defendants The Ester C Company, a subsidiary of NBTY, Inc.; NBTY, Inc.; and NatureSmart, LLC (collectively, "Defendants" or "Ester C Co."), upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by their attorneys, as follows:

## INTRODUCTION

1.      This is a class action brought by Plaintiffs, and a class and sub-classes of those similarly situated, against Defendants seeking redress for Defendants' unjust, unfair, and deceptive practices in misrepresenting the health benefits of their Ester-C products – including Ester-C Tablets, Ester-C Gummies, and Ester-C To Go (collectively, "Ester-C" or the "Products") during the period January 5, 2006, to the present.

2.      Defendants deceptively market Ester-C to create the reasonable expectation with purchasers that Ester-C is a form of immune system protection or defense, protects users from illness and decreases one's likelihood of getting or remaining ill.  For example, the packaging for Ester-C Tablets states that "Ester-C provides your body with the immune and antioxidant support it needs to help keep you healthy and strong during times of seasonal change and the stresses of daily living."

3.      Defendants also deceptively represent that Ester-C is better than other sources of Vitamin C, including fruit, and that the Vitamin C in Ester-C is better absorbed by the body. Indeed, the packaging of Ester-C states to consumers that it is "The Better Vitamin C."

4.      Unfortunately for consumers, Defendants' representations of the health benefits of Ester-C are wholly unsupported by credible science and, therefore, are misleading and false.

AMENDED CLASS ACTION COMPLAINT

5.     The Federal Trade Commission (FTC) has settled charges brought against a number of manufacturers and retailers who sell supplements similar to Ester-C that falsely claimed an ability to prevent, reduce the risk of, and mitigate colds and/or the flu.  As part of those settlements, the FTC has collected millions of dollars on behalf of defrauded consumers and has enjoined fraudulent claims of immune support that were not scientifically supported.

6.     The purpose of this action is to put an end to Defendants' deceptive marketing of Ester-C and to provide consumers with monetary relief for Defendants' deceptive conduct.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction over this class action under 18 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the Federal Courts in any class action in which any member of the plaintiff class is a citizen of a State different from any defendant, and in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.  Plaintiffs allege that the total claims of individual class members in this action are well in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5).  As set forth herein, Plaintiff Hughes is a citizen of Illinois and Plaintiff Hodjat is a citizen of California, whereas The Ester C Company is a citizen of Arizona and New York, NatureSmart, LLC is a citizen of Colorado and New York, and NBTY, Inc. is a citizen of Delaware and New York.  Furthermore, Plaintiffs allege that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a State other than New York, where this action was originally filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).  Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).

8.      Venue is proper in this District under 28 U.S.C. § 1391(a).  Defendants maintain their headquarters within this District, and a substantial part of the events or omissions giving rise to the claims occurred within this District.

## PARTIES

### Individual and Representative Plaintiffs

9.      Plaintiff Patrick Hughes is an individual consumer who, at all times material hereto, was a citizen of Washington County, Illinois.  Mr. Hughes purchased Ester-C from a Walgreens store located in St. Louis, Missouri, in or around March 2010.  He relied on Defendants' false, misleading, and deceptive misrepresentations that taking Ester-C would provide immune system support, decrease his likelihood of getting or remaining ill, and protect him from illness.  Had he known the truth that the statements he relied on were false, misleading, deceptive, and unfair, he would have not purchased Ester-C or paid the premium price (of approximately 300%) for the Ester-C he bought.

10.     Plaintiff Nafisé Nina Hodjat is an individual consumer who, at all times material hereto, was a citizen of Los Angeles County, California.  Ms. Hodjat purchased Ester-C from Ralphs and Whole Foods stores located in Los Angeles, California, on several occasions throughout 2011.  She relied on Defendants' false, misleading, and deceptive misrepresentations that taking Ester-C provide immune system support, decrease her likelihood of getting or remaining ill, and would protect her from illness.  Had she known the truth that the statements she relied on were false, misleading, deceptive, and unfair, she would have not purchased Ester-C or paid the premium price (of approximately 300%) for the Ester-C she bought.

**Defendants**

11.     Defendant The Ester C Company (formerly known as Zila Neutraceuticals, Inc.) is a corporation with its principal place of business at 2100 Smithtown Ave., Ronkonkoma, New York 11779.  The Ester C Company operates as a subsidiary of NBTY, Inc.

12.     Defendant NBTY, Inc. is a corporation with its principal place of business at 2100 Smithtown Ave., Ronkonkoma, New York 11779.

13.     Defendant NatureSmart, LLC is a limited liability company and is a wholly owned subsidiary of NBTY, Inc.  NatureSmart, LLC's principal place of business is at 2100 Smithtown Ave., Ronkonkoma, New York 11779.

14.     According to Ester C's packaging, it is manufactured "for NatureSmart, LLC" in Bohemia, NY 11716.  It lists a phone number of 1-866-417-0739, which is also the phone number listed for The Ester C Company on Ester-C's homepage, http://www.ester-c.com.  According to that website, the corporate address is 110 Orville Drive, Bohemia, New York 11716.  Other sources indicate an address of 90 Orville Dr., Bohemia, NY 11716.

## COMMON FACTUAL ALLEGATIONS

15.     Cold and flu remedies are big business.  For example, in 2008, U.S. consumers spent an estimated $4.6 billion on cold and flu remedies.  *See* Craig Levitt, *Nothing to sneeze at: the cough and cold category posted double-digit growth last year and the upward trend is expected to continue this season*, Grocery Headquarters Magazine, Sept. 1, 2009, *available at* http://www.thefreelibrary.com/Nothing+to+sneeze+at:+the+cough+and+cold+category+posted+ double-digit+...-a0209032548 (last visited May 3, 2012).

16.     Seeking to cash in on consumers' desire to avoid colds and flu, Defendants market their Ester-C Products as vitamin supplements that contain either 500mg of Vitamin C,

AMENDED CLASS ACTION COMPLAINT

which is over eight times the recommended daily allowance of Vitamin C established by the Food and Drug Administration (FDA), or 1000mg of Vitamin C, which is almost seventeen times the recommended daily allowance of Vitamin C established by the FDA.  According to the packaging for Ester-C, the Products also contain Calcium and "C-Sorb™ Citrus Vioflavonoids Complex," which includes several fruits and "Naturally Occurring Vitamin C Metabolites." Ester-C is available in three forms:  as tablets, as soft "gummies" (recommended for "ages 4 and up"), and as a beverage mix.  The Products are sold in a variety of outlets, including A & P, CVS, Duane Reade, HEB, Walgreens, K-Mart, Wal-Mart, Amazon.com, Drugstore.com, Rite Aid, Target, and other health food, grocery, and drug stores.

17.     Ester-C's packaging represents that Ester-C is the "Better Vitamin C" that provides "Immune Support" and specifically "provides your body with the immune and antioxidant support it needs to help keep you healthy and strong during those times of seasonal changes and the stresses of daily living,"   The packaging represents that Ester-C provides "immune protection" and supports "Antioxidant Health."   Some packaging also represents that Ester-C provides "24 Hour Immune Support."

18.     Ester-C's packaging also highlights that the Product provides "ENHANCED ABSORPTION."

19.     Defendants underscore these representations in mass marketing and advertising to consumers.  For example, on the Ester-C website, Defendants state:

> **Make Ester-C® part of your daily routine for optimal health...no matter what time of year it is!**

http://www.ester-c.com/FAQ.htm (last visited May 4, 2012).

20.      Likewise, on the Ester-C website, Defendants have a section called "Ask An *Expert*" that states the following:

- 6 -                     AMENDED CLASS ACTION COMPLAINT

**Q:  What do you do to make sure your immune system remains healthy?**

I try to practice what I preach. I probably fly over 100,000 miles a year but I have not missed a single presentation in my career due to illness. I think part of this is luck, but part of this is following the medical research that I present to others. I do not drink alcohol in general on airplanes and when I do drink I keep it moderate (1-2 drinks a day maximum or just a few drinks a week). I never exercise unless I have had 6-8 hours of sleep the night before and I feel awake. I do not smoke or expose myself to smoke (I have to thank my wife for this one because she always moves to a different table at a restaurant or wants to leave if a smoker is nearby). I try to reduce my mental and physical stress by getting some physical activity daily... **Finally, I take an Ester-C tablet daily, all year long, because it is gentler on the stomach and because of all the clinical research that supports the use of this product.**

**Q:What is the best way to stay healthy during winter months?**

The goal is to support your immune system. Time tested methods are effective: stay at home, rest, eat healthy foods and drink plenty of fluid. **I would add to this list of suggestions that you supplement your diet with a quality vitamin C to support your immune system to help keep you healthy all year-round.**

http://www.ester-c.com/FAQ.htm (last visited May 4, 2012).

21.     Regarding absorption, on the Ester-C website, Defendants state:

Ester-C® Calcium Ascorbate is a unique and patented form of vitamin C. It is made using a proprietary, water-based manufacturing process which results in a pH neutral product that contains naturally occurring vitamin C metabolites. These metabolites activate the vitamin C molecules making it easier for the body to transport them from cell to cell for numerous health benefits.

http://www.ester-c.com/Benefits.htm (last visited May 4, 2012).

22.     Retailers that sell Ester-C market it in the same manner.  For example, Walmart's website marketing Ester-C states as follows:

> **Stay healthy with the Ester-C The Better Vitamin C Supplement Tablets.**
>
> *          *          *
>
> **The Ester-C vitamin C 1000mg tablets also offer 24 hour immunity from day to day ailments like flu and fever.**

23.     An advertisement for the Product on Sears.com states as follows:

> **Ester-C to go 24 hour immune support powder packets . . . Naturally pleasant tasting health and energy booster.**

24.     An advertisement on Amazon.com for "Ester-C 24 Hour Immune Support 500mg" states as follows:

> **24 hour immune protection. [E]ster-c gives you powerful immune system support. [E]ster-c provides your body with the antioxidant protection it needs to help keep you healthy and strong . . . .**

25.     These representations convey to the consumer that, by taking Ester-C, his or her immune system will be aided in protecting the consumer from illness.  However, Defendants have no credible evidence that taking Ester-C will provide immune support or keep one from getting sick.  Evidence also indicates that Ester-C is not any better than other Vitamin C supplements at providing Vitamin C to the body.[1]

---

[1] *See* Oregon State University, Linus Pauling Institute – Micronutrient Information Center, http://lpi.oregonstate.edu/infocenter/vitamins/vitaminC/ (last visited May 4, 2012) ("Ester-C® contains mainly calcium ascorbate, but also contains small amounts of the vitamin C metabolites dehydroascorbate (oxidized ascorbic acid), calcium threonate, and trace levels of xylonate and lyxonate.  Although the metabolites are supposed to increase the bioavailability of vitamin C, the only published study in humans addressing this issue found no difference between Ester-C® and commercially available ascorbic acid tablets with respect to the absorption and urinary excretion of vitamin C." (citing Johnston CS, Luo B., *Comparison of the absorption and excretion of three commercially available sources of vitamin C*, J. Am. Diet Assoc. 94(7):779-781 (1994)).)

26.     The FTC has settled a series of investigations against manufacturers and retailers who sell supplements similar to Ester-C that falsely claimed an ability to benefit one's immune system.  Specifically:

a)  On August 14, 2008, the FTC announced that Airborne Health Inc. and its principals agreed to pay up to $30 million to settle FTC charges that it did not have adequate evidence to support its advertising claims that taking Airborne, a dietary supplement containing 17 ingredients, including vitamins A, C, E, zinc, and selenium, would provide tangible health benefits.  According to the FTC's complaint, there is no competent and reliable scientific evidence to support the claims made by the defendants that Airborne tablets can prevent or reduce the risk of colds, sickness, or infection; protect against or help fight germs; reduce the severity or duration of a cold; and protect against colds, sickness, or infection in crowded places such as airplanes, offices, or schools.  *See* http://www.ftc.gov/opa/2008/08/airborne.shtm;

b)  On July 13, 2009, the FTC announced that national pharmacy chain Rite Aid Corporation had agreed to pay $500,000 to settle FTC charges that it deceptively advertised that its "Germ Defense" tablets and lozenges could prevent and treat colds and the flu or reduce the severity and duration of these illnesses.  Also under the settlement agreement, Rite Aid may not claim that any Rite-Aid-label version of Airborne, or any Rite-Aid-label food, drug, or dietary supplement can reduce the risk of or prevent colds or flu, reduce the severity or duration of colds, or boost the immune system unless the claims

- 9 -                    AMENDED CLASS ACTION COMPLAINT

are truthful, not misleading, and substantiated by competent and reliable scientific evidence.  *See* http://www.ftc.gov/opa/2009/07/riteaide.shtm;

c)  On September 8, 2009, the FTC announced that national retailer CVS Pharmacy Inc. had agreed to pay $2.8 million to settle FTC charges that claims that its "AirShield" dietary supplements can prevent colds, fight germs, and boost immune systems were false and misleading.  *See* http://www.ftc.gov/opa/2009/09/cvs.shtm;

d)  On March 23, 2010, national pharmacy chain Walgreens agreed to pay nearly $6 million to settle FTC charges that the company deceptively advertised "Wal-Born" – a line of dietary supplements similar to the Airborne cold-and-flu treatment – using the same kind of baseless claims that the supplements could prevent colds, fight germs, and boost the immune system.  *See* http://www.ftc.gov/opa/2010/03/walgreens.shtm;

27.    In announcing the FTC's settlement with CVS with respect to its AirShield product, David Vladeck, Director of the Bureau of Consumer Protection of the FTC, stated:

> Students returning to college campuses and parents sending their kids off to school want to take precautions to fight the germs that can cause coughs, colds, and the flu. . . .  As the CDC has advised, there are good practices to follow.  But consumers should not be misled by false claims about the germ-fighting properties of dietary supplements.  With orders against Airborne, Rite Aid, and the one proposed against CVS, manufacturers and retailers are on notice that they have to tell the truth about what dietary supplements can and cannot do.

28.    In contravention to this FTC guideline, Defendants have not been truthful regarding what their Ester-C Products "can and cannot do."

AMENDED CLASS ACTION COMPLAINT

29.     Defendants have profited enormously from their false advertising of Ester-C.  For example, according to www.walmart.com, a box of Ester-C 500mg containing 90 tablets costs $8.44, or more than $0.09 per tablet, a premium price of more than three times the cost of a comparable Vitamin C supplement, such as Spring Valley's "Natural C" 500mg containing 250 tablets, which costs $7.00, or less than $0.03 per tablet.  *Compare* http://www.walmart.com/ip/Ester-C-500-Mg-Vitamin-Supplement-Ester-C-500-Mg-90-ct/10318443 (last visited Dec. 9, 2011), *with* http://www.walmart.com/ip/Spring-Valley-C-Vitamin-w-Rose-Hips-Dietary-Supplement-250-Ct/893225 (last visited Dec. 9, 2011). Accordingly, Defendant has charged consumers a premium of approximately 300%.

## CLASS ALLEGATIONS

30.     This action has been brought, and may be properly maintained, under Federal Rule of Civil Procedure 23(a)(1)-(4) and (b)(3).

31.     Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situated (the "Class"), initially defined to be all persons who purchased Ester-C from January 5, 2006, to the present.  Excluded from the Class are Defendants; members of the immediate families of the officers and directors of Defendants; their legal representatives, heirs, successors, or assigns; any entity in which they have or have had a controlling interest; and any entity that purchased Ester-C for resale.

32.     In addition to representing the Class, Plaintiff Hughes seeks to represent a sub-class on behalf of all members of the Class who purchased Defendants' Products within the State of Missouri (the "Missouri Class").

33.     In addition to representing the Class, Plaintiff Hodjat seeks to represent a sub-class on behalf of all members of the Class who purchased Defendants' Products within the State

of California (the "California Class").

34.    **Numerosity**—Fed. R. Civ. P. 23(a)(1):  The members of the Class are so numerous and widely dispersed that joinder of them in one action is impractical.  On information and belief, thousands of individuals throughout the United States have purchased Ester-C.

35.    **Existence and Predominance of Common Questions of Law and Fact**—Fed. R. Civ. P. 23(a)(2); 23(b)(3):  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

a)  Whether Defendants misrepresented and/or failed to disclose material facts concerning Ester-C;

b)  Whether Defendants' conduct was unfair and/or deceptive;

c)  Whether Defendants have been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint, such that it would be inequitable for Defendants to retain the benefits conferred upon them by Plaintiff and the Class; and

d)  Whether Plaintiffs and the other Class members have sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

36.    **Typicality**—Fed. R. Civ. P. 23(a)(3):  Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all members of the Class, purchased Defendants' Products at a premium in a typical consumer setting and sustained damages from Defendants' wrongful conduct.  Thus, the claims of Plaintiffs and other members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct.

AMENDED CLASS ACTION COMPLAINT

37.     **Adequacy of Representation**—Fed. R. Civ. P. 23(a)(4):  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other Class members they seek to represent.  Plaintiffs have retained competent and experienced class action counsel who intend to vigorously prosecute this action.  The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

38.     **Superiority**—A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the Class members is impracticable.  The amount at stake for each consumer is such that individual litigation would be inefficient and cost prohibitive.  Additionally, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the claims asserted herein.  There will be no difficulty in the management of this action as a class action.

39.     **Notice**—Plaintiffs and his counsel anticipate that notice to the proposed Class will be effectuated by publication in major newspapers and on the Internet.

## CAUSES OF ACTION

## COUNT I

**(Violation of Missouri's Merchandising Practices Act)**
**(on behalf of Missouri Class only)**

40.     Plaintiff Hughes incorporates by reference and realleges all paragraphs previously alleged herein.

41.     Section 2 of the Missouri's Merchandising Practices Act (MMPA), Mo. Rev. Stat. § 407.010, provides the following:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice.  . . . Any act, use or employment

declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation."

42.     At all relevant times, each Defendant was and is a "person" as defined by MMPA § 1(5), Mo. Rev. Stat. § 407.010(5), because each is a "partnership, firm, for-profit or not-for-profit corporation, whether domestic or foreign, company, foundation, trust, business entity or association."

43.     At all relevant times, the Ester-C Products constituted "merchandise" as defined by MMPA § 1(4), Mo. Rev. Stat. § 407.010(4), because the Products are "objects, wares, goods, [or] commodities."

44.     At all relevant times, Defendants' manufacturing, marketing, advertising, sales and/or distribution of the Products met the definition of "sale" set forth by set forth by MMPA § 1(6), Mo. Rev. Stat. § 407.010(6), because such manufacturing, marketing, advertising, sales, and/or distribution constituted a "sale, lease, offer for sale or lease, or attempt to sell or lease merchandise for cash or on credit."

45.     At all relevant times, Defendants' manufacturing, marketing, advertising, sales, and/or distribution of the Products met the definition of "advertisement" set forth by MMPA § 1(1), Mo. Rev. Stat. § 407.010(1), because such manufacturing, marketing, advertising, sales, and/or distribution constituted an "attempt by publication, dissemination, solicitation, circulation, or any other means to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in any merchandise."

46.     At all relevant times, Defendants' sale or advertisement of the merchandise at issue occurred in "trade" or "commerce" as those terms are defined in MMPA § 1(7), Mo. Rev. Stat. § 407.010(7), because such sale or advertisement constituted "the advertising, offering for

sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated."  Additionally, such sale or advertisement directly or indirectly affected the people of Missouri, which is conduct explicitly included in the definition of "'[t]rade' or 'commerce'" set forth in MMPA § 1(7).

47.     As described in detail above, Defendants uniformly misrepresented to Plaintiff Hughes and each member of the Missouri Class, by means of advertising, marketing, and other promotional materials, and on the Products' labeling and packaging that the Products had particular health benefits that they did not.

48.     Defendant have thereby – in their manufacturing, advertising, marketing, selling, and distribution of the Products – engaged in practices that constitute deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce.  Therefore, Defendants have violated the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

49.     As a direct and proximate result of Defendants' improper conduct, Plaintiff Hughes and other members of the Missouri Class have suffered damages and ascertainable losses of moneys and/or property, in amounts to be determined by the Court or jury, by paying more for the Product than they would have and/or by purchasing the Product when they would not have if the horsepower of the Product had not been misrepresented.

50.     THEREFORE, Plaintiff Hughes prays for relief as set forth below.

AMENDED CLASS ACTION COMPLAINT

## COUNT II

### (Violation of California's Consumers Legal Remedies Act)
### (on behalf of California Class only)

51.     Plaintiff Hodjat incorporates by reference and realleges all paragraphs previously alleged herein.

52.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA").

53.     Plaintiff Hodjat and members of the California Class are "consumers," as the term is defined by California Civil Code § 1761(d) because they bought Ester-C Products for personal, family, or household purposes.

54.     Plaintiff, members of the California Class, and Defendants have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

55.     The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

56.     As alleged more fully above, Defendants have violated the CLRA by falsely representing to Plaintiff Hodjat and the California Class members that Ester-C Products offer protection against germs, provide immune support, and help prevent a user from getting or remaining sick.

57.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

58.     The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiff Hodjat and members of the California Class.

59.     Plaintiff Hodjat and members of the California Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

60.     THEREFORE, Plaintiff Hodjat prays for relief as set forth below.

## COUNT III
### (Violation of California's False Advertising Law)
### (on behalf of California Class only)

61.     Plaintiff Hodjat incorporates by reference and realleges all paragraphs previously alleged herein.

62.     As alleged above, Defendants – in violation of California's False Advertising Law ("FAL"), California Business and Professions Code § 17500, *et seq.* –  have falsely advertised Ester-C Products by falsely claiming that the Products offer protection against germs, provide immune support, and help prevent a user from getting or remaining sick.

63.     Plaintiff Hodjat and the other members of the California Class have suffered injury in fact and have lost money or property as a result of Defendants' violations of the FAL.

64.     THEREFORE, Plaintiff Hodjat prays for relief as set forth below.

## COUNT IV
### (Violation of California's Unfair Competition Law)
### (on behalf of California Class only)

65.     Plaintiff Hodjat incorporates by reference and realleges all paragraphs previously alleged herein.

66.     By committing the acts and practices alleged herein, Defendants have engaged in deceptive, unfair, and unlawful business practices – in violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, *et seq.* – as to the California Class as a whole.

67.     Defendants have violated the UCL's proscription against engaging in unlawful conduct as a result of (i) their violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7) and (a)(9), as alleged above; and (ii) their violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*, as alleged above.

68.     In addition, Defendants have violated the UCL's proscription against engaging in unlawful conduct as a result of their violations of the Sherman Law, Cal. Health & Safety Code § 109875, *et seq.*, which forbids (1) misbranding of any food or drug, *id.* §§ 10398 and 111445, and (2) manufacturing, selling, delivering, holding, or offering for sale any food or drug that is misbranded or delivering or proffering such for delivery, *id.* §§110770 and 111450.

69.     The Sherman Law provides that a product is misbranded "if its labeling is false or misleading in any particular." *Id.* § 110660.   In determining whether the labeling or advertisement of a food, drug, device, or cosmetic is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.  The extent that the labeling or advertising fails to reveal facts concerning the food, drug, device, or cosmetic or consequences of customary use of the food, drug, device, or cosmetic shall also be considered.  *Id.* § 110290.

70.     Defendants' acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

71.     As more fully described above, Defendants' misleading marketing, advertising, packaging, and labeling of Ester-C is likely to deceive reasonable consumers.  Indeed, Plaintiff Hodjat and the other members of the California Class were unquestionably deceived regarding the health benefits of Ester-C, as Defendants' marketing, advertising, packaging, and labeling of

Ester-C misrepresent and/or omit the true facts concerning the benefits of the Products.  Said acts are fraudulent business practices.

72.     Defendants' acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

73.     Plaintiff Hodjat and the other members of the California Class who purchased Ester-C suffered a substantial injury by virtue of buying a product they would not have purchased absent Defendants' unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Ester-C.

74.     There is no benefit to consumers or competition from deceptively marketing and labeling dietary supplements.  Indeed, the harm to consumers and competition is substantial.

75.     Plaintiff and the other members of the California Class who purchased Ester-C had no way of reasonably knowing that the Ester-C they purchased was not as marketed, advertised, packaged, and labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

76.     The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff Hodjat and the other members of the California Class.

77.     Defendants' violations of the UCL continue to this day.

78.     THEREFORE, Plaintiff Hodjat prays for relief as set forth below.

AMENDED CLASS ACTION COMPLAINT

## COUNT V

### (Unjust Enrichment Under New York Common Law)
### (on Behalf of the Nationwide Class)

79.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

80.     As described in more detail above, Defendants have been unjustly enriched by their sale of Ester-C Products through the use of false advertising and other fraudulent and deceptive conduct designed to persuade consumers that Ester-C Products actually provide immune support.

81.     As a proximate result of Defendants' unlawful, fraudulent, and unfair conduct, Defendants have obtained revenues by which they became unjustly enriched at the expense of Plaintiffs and other members of the Class.  Under the circumstances alleged herein, it would be unfair and inequitable for Defendants to retain the profits they have unjustly obtained at the expense of Plaintiffs and the Class.

82.     THEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT VI

### (Intentional Misrepresentation/Fraud Under New York Common Law)
### (on Behalf of the Nationwide Class)

83.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

84.     Defendants have represented to the public, including Plaintiffs, by promoting, marketing, advertising, packaging, labeling, and other means, that the Ester-C Products have characteristics and qualities that they do not have – specifically, that they can and do provide immune support.

85.     At the time Defendants made the representations herein alleged, Defendants knew the representations were false.

86.     Defendants made the misrepresentations herein alleged with the intention of depriving Plaintiffs and other Class members of property or otherwise causing injury, and, thus, Defendants have committed fraud.

87.     Plaintiffs and other Class members believed and relied on Defendants' promoting, marketing, advertising, packaging, and labeling of the Ester-C Products, and, in justifiable reliance thereon, purchased them.

88.     As a proximate result of these acts, Plaintiffs and other Class members were induced to spend an amount to be determined by the Court or jury on the Ester-C Products manufactured, distributed, and sold by Defendants, and Plaintiffs and the other Class members lost money by purchasing Ester-C Products that were not what they were represented to be, that were worth less than Plaintiffs and the other Class members paid for the Products, and which Plaintiffs and the other Class members would not have purchased but for the misrepresentations.

89.     Plaintiffs and other Class members, in purchasing, using, and consuming the Ester-C as herein alleged, did rely on Defendants' above representations, all to their damage.

90.     THEREFORE, Plaintiffs pray for relief as set forth below.

<u>COUNT VI</u>
**(Negligent Misrepresentation Under New York Law)**
**(On Behalf of the Nationwide Class)**

91.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

92.     Defendants have represented to the public, including Plaintiffs, by promoting, marketing, advertising, packaging, labeling, and other means, that their Ester-C Products have

AMENDED CLASS ACTION COMPLAINT

characteristics and qualities that they do not have – specifically, that they provide immune support.

93.     Defendants made the false representations herein alleged with the intention of inducing the consuming public to purchase Defendants' Ester-C products.

94.     Plaintiffs and other Class members believed and relied on Defendants' promoting, marketing, advertising, packaging, and labeling of the Ester-C Products, and, in justifiable reliance thereon, purchased them.

95.     At the time Defendants made the misrepresentations herein alleged, Defendants had no reasonable grounds for believing the representations to be true.

96.     As a proximate result of Defendants' negligent misrepresentations, Plaintiffs and other Class members were induced to spend an amount to be determined by the Court or jury on the Ester-C Products manufactured, distributed, and sold by Defendants, and Plaintiffs and the other Class members lost money by purchasing Ester-C Products that were not what they were represented to be, that were worth less than Plaintiffs and the other Class members paid for the Products, and that Plaintiffs and the other Class members would not have purchased but for the misrepresentations.

97.     THEREFORE, Plaintiffs pray for relief as set forth below.

AMENDED CLASS ACTION COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and the Class as follows:

A.       An Order certifying the proposed Class and the proposed subclasses (the Missouri Class and the California Class) under Federal Rule of Civil Procedure 23(a) and (b)(3); appointment of Plaintiffs as representatives of the Class; appointment of Plaintiff Hughes as representative of the Missouri Class; appointment of Plaintiff Hodjat as representative of the California Class; and appointment of Plaintiffs' undersigned counsel as counsel for the Class;

B.       An Order declaring that Defendants are financially responsible for notifying Class members of the pendency of this suit;

C.       An Order establishing Defendants as constructive trustees of the profits that served to unjustly enrich them, together with interest during the period in which Defendants retained such funds;

D.       An Order providing injunctive relief, pursuant to California Civil Code § 1780(a)(2) and (a)(5) and pursuant to California Business and Professions Code §§ 17203 and 17535, requiring Defendants to:

      a)   remove language on the Ester-C packaging representing that Ester-C "supports" a person's immune system;

      b)   remove the language "Immune Support" and "Antioxidant Support" from the Ester-C packaging;

      c)   remove language on the Ester-C packaging representing that Ester-C provides "24 Hour Immune Support";

AMENDED CLASS ACTION COMPLAINT

    d)  remove language on the Ester-C packaging representing that "Ester-C provides your body with the immune and antioxidant support it needs to help keep you healthy and strong during times of seasonal change and the stresses of daily living";

    e)  remove language indicating that Ester-C should be "part of your daily routine for optimal health";

    f)  provide restitution to Plaintiff Hodjat and the other members of the California Class; and

    g)  disgorge all revenues obtained as a result of Defendants' violations of California law;

E.     An Order awarding statutory damages in the maximum amount provided by law;

F.     An Order awarding monetary damages, including, but not limited to, any compensatory, incidental, or consequential damages in an amount to be determined by the Court or jury, with respect to the common law claims alleged;

G.     An Order awarding compensatory damages, the amount of which is to be determined by the Court or jury;

H.     An Order awarding punitive damages in accordance with proof and in an amount consistent with applicable precedent;

I.     An Order awarding interest at the maximum allowable legal rate on the forgoing sums;

J.     An Order awarding Plaintiffs their reasonable costs and expenses of suit, including their attorneys' fees; and

K.     Such further relief as this Court may deem just and proper.

          AMENDED CLASS ACTION COMPLAINT

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all claims so triable.

DATED:  May 15, 2012                    **REESE RICHMAN LLP**


*/s/ Michael R. Reese*
Michael R. Reese
mreese@reeserichman.com
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

– and –

**WHATLEY KALLAS, LLC**
Patrick J. Sheehan
380 Madison Avenue, 23rd Floor
New York, New York 10017
Telephone:  (212) 447-7060
Facsimile:   (800) 922-4851

**COMPLEX LITIGATION GROUP LLC**
Jeffrey A. Leon
Jamie E. Weiss
513 Central Avenue, Suite 300
Highland Park, Illinois 60035
Telephone:  (847) 433-4500

**BECKER, PAULSON, HOERNER
& THOMPSON, P.C.**
Kevin T. Hoerner
5111 West Main Street
Belleville, Illinois 62226

**THE KREISLER LAW FIRM LLC**
Brian T. Kreisler
Brian@kreislerlawfirm.com
P.O. Box 1353
O'Fallon, IL 62269

*Counsel for Plaintiffs and the Proposed Class*