**WHATLEY DRAKE & KALLAS, LLC**
Patrick J. Sheehan
psheehan@wdklaw.com
380 Madison Avenue, 23rd Floor
New York, New York 10017
Telephone:  (212) 447-7070
Facsimile:   (212) 447-7077

***Counsel for Plaintiffs and the Proposed Class***

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

**CENTRAL ISLIP**

| | | |
|---|---|---|
| **PATRICK HUGHES** and **NAFISÉ NINA HODJAT,** individually and on behalf of others similarly situated, | ) ) ) | |
| | ) | Case No.  12-cv-00041-JFB-ETB |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED** |
| **THE ESTER C COMPANY; NBTY, INC.;** and **NATURESMART, LLC**, | ) ) | **CLASS ACTION COMPLAINT** |
| | ) | |
| Defendants. | ) ) | |

## TABLE OF CONTENTS

STATEMENT OF FACTS AND SUMMARY OF ARGUMENT IN OPPOSITION TO MOTION TO DISMISS ........................................................................................ 1

LEGAL STANDARD .......................................................................................... 4

ARGUMENT ....................................................................................................... 5

    I.     PLAINTIFFS HAVE PROPERLY ALLEGED THEIR CLAIMS ...................... 5

          A.    Plaintiffs Have Standing To Bring Their Claims ....................................... 5

          B.    Plaintiffs Have Properly Stated Their Claims Based on the Alleged Misrepresentations ................................................................................... 7

    II.    PLAINTIFFS HAVE ADEQUATELY PLED THEIR CONSUMER FRAUD CLAIMS ............................................................................................... 13

    III.   PLAINTIFFS HAVE ADEQUATELY PLED THEIR MISREPRESENTATION CLAIMS ............................................................................................... 18

          A.    Intentional Misrepresentation .................................................................. 18

          B.    Negligent Misrepresentation .................................................................... 21

    IV.   PLAINTIFFS HAVE ADEQUATELY PLED THEIR UNJUST ENRICHMENT CLAIM ................................................................................................. 23

CONCLUSION .................................................................................................. 25

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ackerman v. Coca-Cola Co.*,
    No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. Jul. 21, 2010) .... 8, 20

*Andrade v. J.P. Morgan Chase Bank, N.A.*,
    No. 08-cv-3703 RRM, 2009 U.S. Dist. Lexis 80836 (E.D.N.Y. Sept. 4, 2009) ........................ 5

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009) ........................................................................... 4, 5

*Barrera v. Pharmavite, LLC*,
    Case No. CV11-4153-CAS (AGRx) (C.D. Cal. Jun. 17, 2011) ............................................. 10

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*,
    290 F.3d 476 (2d Cir. 2002) ........................................................................................... 4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................................... 5

*Blue Cross Health Servs., Inc. v. Sauer*,
    800 S.W.2d 72 (Mo. Ct. App. 1990) ............................................................................... 25

*Bober v. Glaxo Wellcome Plc*,
    246 F.3d 934 (7th Cir. 2001) .......................................................................................... 9

*Chavez v. Nestle USA, Inc.*,
    No. CV 09-9192-GW(CWx), 2011 U.S. Dist. LEXIS 58733 (C.D. Cal. May 2, 2011) ........... 9

*Comet Theatre Enters., Inc. v. Cartwright*,
    195 F.2d 80 (9th Cir. 1952) ........................................................................................... 24

*Danvers Motor Co., Inc. v. Ford Motor Co.*,
    432 F.3d 286 (3rd Cir. 2005) .......................................................................................... 5

*Donahue v. Ferolito, Vultaggio & Sons*,
    13 A.D.3d 77 (N.Y. App. Div. 2004) .............................................................................. 19

*Fraker v. Bayer Corp.*,
    No. CV F 08-1564 AWI GSA, 2009 U.S. Dist. LEXIS 125633 (E.D. Cal. Oct. 2, 2009) ....... 10

*Franulovic v. Coca Cola Co.*,
    390 Fed. Appx. 125 (3d Cir. 2010) ................................................................................. 9

*Gredell v. Wyeth Labs., Inc.*,
    367 Ill. App. 3d 287 (Ill. App. Ct. 2004) ......................................................................... 9

*In re Merrill Lynch Auction Rate Securities Litigation*,
No. 09 Civ. 9887 (LAP), 2012 U.S. Dist. LEXIS 19879 (S.D.N.Y. Feb. 15, 2012) ............... 12

*Kimmell v. Schaefer*,
675 N.E.2d 4504 (N.Y. 1996) ........................................................................................ 19, 21

*Kwikset Corp. v. Superior Court*,
246 P.3d 877 (Cal. 2011) ................................................................................................ passim

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (Cal. 2011) ...................................................................................................... 6

*Manchester v. Bankhead Corp., Div. of Bankhead Enterprises, Inc.*,
125 A.D.2d 740 (2d Dept. 1986) ............................................................................................. 8

*Mark Twain Plaza Bank v. Lowell H. Listrom & Co., Inc.*,
714 S.W.2d 859 (Mo. Ct. App. 1986) .................................................................................... 22

*MBIA Ins. Co. v. GMAC Mortg. LLC*,
914 N.Y.S.2d 604 (N.Y. Sup. Ct. 2010) ................................................................................ 19

*McGowan v. Cadbury Schweppes, PLC*,
941 F. Supp. 344 (E.D.N.Y. 1996) ......................................................................................... 11

*MidAmerican Bank & Trust Co. v. Harrison*,
851 S.W.2d 563 (Mo. Ct. App. 1993) .................................................................................... 22

*Moriarity v. Small World Adoption Found. of Missouri, Inc.*,
No. 5:04-CV-394, 2008 U.S. Dist. LEXIS 2309 (N.D.N.Y. Jan. 11, 2008) ........................... 19

*Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*,
467 F.3d 73 (2d Cir. 2005) ....................................................................................................... 5

*Parmentier v. Novartis Pharms. Corp.*,
No. 1:12-CV-45 SNLJ, 2012 U.S. Dist. LEXIS 84574 (E.D. Mo. Jun. 19, 2012) ................... 11

*Patel v. New York Life Ins. Co.*,
No. 11 Civ. 4895 (JPO), 2012 U.S. Dist. LEXIS 72717 (S.D.N.Y. May 21, 2012) ................ 12

*Samiento v. World Yacht Inc.*,
883 N.E.2d 990 (N.Y. 2008) ................................................................................................... 25

*Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*,
199 S.W.3d 228 (Mo. Ct. App. 2006) ..................................................................................... 17

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994) ................................................................................................... 16

*Sims v. Artuz,*
   230 F.3d 14 (2d Cir. 2000) ................................................................ 4

*Stewart v. Beam Global Spirits & Wine, Inc.,*
   No. 11-5149 NLH, 2012 U.S. Dist. LEXIS 90554 (D.N.J. June 29, 2012)............................ 23

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank,*
   250 F.3d 87 (2d Cir. 2001) ................................................................ 21

*Truth in Labeling Campaign v. Shalala,*
   999 F. Supp. 1289 (E.D. Mo. 1998) ................................................... 11

*Waldman v. New Chapter, Inc.,*
   714 F. Supp. 2d 398 (E.D.N.Y. 2010) ............................................... 11

*Wilkison v. Wiederkehr,*
   124 Cal. Rptr. 2d 631 (Cal. App. Ct. 2002) ...................................... 25

*Williams v. Gerber Products Co.,*
   552 F.3d 934 (9th Cir. 2008) ................................................... passim

## **Rules**

Fed. R. Civ. P. 15(a)(2).......................................................................... 25

Fed. R. Civ. P. 8(a) .............................................................................. 15

Plaintiffs Patrick Hughes and Nafise Nina Hodjat ("Plaintiffs") respectfully submit the following in opposition to Defendants The Ester C Company, NBTY, Inc., and Naturesmart, LLC's ("Defendants") Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (Dkt. #17) ("Motion" or "Def. Mem.").  As set forth below, Defendants' Motion is without merit and should be denied in its entirety.

**STATEMENT OF FACTS AND SUMMARY OF ARGUMENT IN
<u>OPPOSITION TO MOTION TO DISMISS</u>**

Defendants manufacture Ester-C products, a variety of vitamin supplements including Ester-C Tablets, Ester-C Gummies, and Ester-C To Go (collectively, "Ester-C" or the "Products").  As detailed in the First Amended Class Action Complaint (the "FAC") (Dkt. #13), cold and flu remedies are a big business: in 2008, U.S. consumers spent an estimated $4.6 billion on cold and flu remedies.  FAC ¶ 15.  Preying on this desire to avoid getting sick, Defendants deceptively market Ester-C to create the reasonable expectation with purchasers that Ester C is a form of immune system protection or defense, protects users from illnesses, and decreases one's likelihood of getting or remaining ill.  FAC ¶ 2.

Defendants accomplish this by stating on the Ester-C packaging itself that:

> ***Ester-C provides your body with the immune and antioxidant support it needs
> to help keep you healthy and strong during times of seasonal change and the
> stresses of daily living.***

FAC ¶ 2; Ex. A (sample Ester-C product labels).  Ester-C's packaging also represents that Ester-C is the "Better Vitamin C."  FAC ¶ 2; Ex. A (sample Ester-C product labels).  The packaging additionally represents that Ester-C supports "Antioxidant Health" and that Ester-C provides "24 Hour Immune Support."  FAC ¶ 17; Ex A (sample Ester-C product labels).

Defendants underscore these representations in mass marketing and advertising to consumers.  On the Ester-C website, Defendants have a section called "Ask An Expert" that

1

states the following: "What do you do to make sure your immune system remains healthy? . . . I take an Ester-C tablet daily, all year long, because it is gentler on the stomach and because of all the clinical research that supports the use of this product."  FAC ¶ 20.  Likewise, retailers that sell Ester-C market it in the same manner.  An advertisement on Amazon.com for "Ester-C 24 Hour Immune Support 500mg" states as follows: "24 hour immune protection. [E]ster-c gives you powerful immune system support. [E]ster-c provides your body with the antioxidant protection it needs to help keep you healthy and strong . . . ."  FAC ¶ 24.  These representations convey to the consumer that, by taking Ester-C, his or her immune system will be aided in protecting the consumer from illness.  FAC ¶ 25.

These representations are deceptive and misleading.  Not only do Defendants have no credible evidence that taking Ester-C will provide immune support or keep one from getting sick, but scientific studies cited in Plaintiffs' FAC indicates evidence that Ester-C is not any better than other vitamin C supplements at providing vitamin C to the body, and that, therefore, the statements are misleading and deceptive.[1]  FAC ¶ 25 (citing Oregon State University study).

Plaintiffs Hughes (a Missouri resident) and Hodjat (a California resident) relied on these misrepresentations in deciding to buy Ester-C, for which Defendants – the vast majority of which are based in New York - charged almost a 300% premium.  FAC ¶¶ 9, 10.

---

[1]  *See* Oregon State University, Linus Pauling Institute – Micronutrient Information Center, http://lpi.oregonstate.edu/infocenter/vitamins/vitaminC/ (last visited May 4, 2012) ("Ester-C® contains mainly calcium ascorbate, but also contains small amounts of the vitamin C metabolites dehydroascorbate (oxidized ascorbic acid), calcium threonate, and trace levels of xylonate and lyxonate.  Although the metabolites are supposed to increase the bioavailability of vitamin C, the only published study in humans addressing this issue found no difference between Ester-C® and commercially available ascorbic acid tablets with respect to the absorption and urinary excretion of vitamin C." (citing Johnston CS, Luo B., *Comparison of the absorption and excretion of three commercially available sources of vitamin C*, J. Am. Diet Assoc. 94(7):779-781 (1994))).  Other studies exist that demonstrate that Ester-C cannot perform as advertise, and can be added to an amended complaint, if this court deems amendment necessary.

2

Had Plaintiffs known the truth that the statements they relied on were false, misleading, deceptive, and unfair, they would have not purchased Ester-C or paid the premium price for the Ester-C they bought. FAC ¶¶ 9, 10, 29. Accordingly, they now sue Defendants for violating the consumer protection laws of their respective states of Missouri and California.

The Federal Trade Commission (the "FTC") has settled charges brought against a number of manufacturers and retailers who sell supplements similar to Ester-C that falsely claimed an ability to prevent, reduce the risk of, and mitigate colds and/or the flu. FAC ¶¶ 5, 26-27. As the FAC avers, these settlements "enjoined fraudulent claims of immune support that were not scientifically supported." FAC ¶ 5; *see also* FAC ¶¶ 26-27. Such claims are almost exactly the same ones at issue here – that Defendants make fraudulent claims of immune support about Ester-C that they have no credible evidence to support. FAC ¶¶ 4, 25. In announcing the FTC's settlement with CVS with respect to its AirShield product, David Vladeck, Director of the Bureau of Consumer Protection of the FTC, stated that "manufacturers and retailers are on notice that they have to tell the truth about what dietary supplements can and cannot do." FAC ¶ 27. In contravention to this FTC guideline, Defendants have not been truthful regarding what their Ester-C Products "can and cannot do."

Despite these well pled facts, Defendants have moved to dismiss. As set forth below, Defendants' motion to dismiss is without merit and must be denied.

Defendants argue that "Plaintiffs have failed to allege facts sufficient to state any claim based on a misrepresentation…they simply claim that Defendants' packaging and statements are 'unsupported by credible evidence." This argument is wrong, contradicted by both the facts and law. First, as seen below, a number of statements regarding Ester-C are alleged to be affirmatively misleading. For example, Defendants' statements such as "Ester-C provides your

3

body with the immune and antioxidant support it needs to help keep you healthy and strong during times of seasonal change and the stresses of daily living";  that Ester-C is "better" than vitamin C; and, that Ester-C provides "24 Hour Immune Support" are alleged to be affirmatively false.  And the FAC alleges that they are false based upon ***both*** lack of credible evidence to support the statements as well as scientific evidence to the contrary that demonstrates the falsity of the statements.  Accordingly, Defendants' motion to dismiss on these grounds must be denied.

Defendants also argue that Plaintiffs have failed to meet the pleading requirements of 9(b).  This, however, is wrong, as the FAC provides enough detail to meeting the pleading requirement and allow for Defendants to answer.  Indeed, because the Products' packaging statements are similar with respect to those representations that are at issue in this case, it is unnecessary for Plaintiffs to specify which of the three Ester-C products listed in the FAC.

Accordingly, Defendants' Motion must be denied.

## LEGAL STANDARD

It is well settled that the court in a motion to dismiss pursuant to Rule 12(b)(6) tests the legal, not the factual, sufficiency of a complaint.  *See*, *e.g.*, *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, 'the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims'").  In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a court "must accept as true the [factual] allegations contained in the complaint, and all reasonable inferences must be drawn in favor of the non-movant." *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 479 (2d Cir. 2002).  To survive the motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009); *see*

*also Andrade v. J.P. Morgan Chase Bank, N.A.*, No. 08-cv-3703 RRM, 2009 U.S. Dist. Lexis 80836 (E.D.N.Y. Sept. 4, 2009) (applying standard stated in *Iqbal* and denying motion to dismiss). "The plausibility standard is not akin to a 'probability requirement . . . .'" *Iqbal*, 129 S. Ct. at 1946. Indeed, in *Twombly*, the Supreme Court cautioned that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## ARGUMENT

## I.    PLAINTIFFS HAVE PROPERLY ALLEGED THEIR CLAIMS

### A.    Plaintiffs Have Standing To Bring Their Claims.

A loss of money or property (*i.e.* economic injury) is sufficient to confer Article III standing. *See Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 77 (2d Cir. 2005) ("Because the Committee is composed of creditors who suffered economic injuries that are fairly traceable to WorldCom's violations of the securities laws…the Committee meets the requirements for Article III standing"); *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 291 (3rd Cir. 2005) ("[w]hile it is difficult to reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms").

Here, Plaintiffs have properly alleged a loss of money in regard to their purchases of the Products. Specifically, Plaintiffs have alleged that they purchased the Products from various stores in St. Louis, Missouri and Los Angeles, California. FAC ¶¶ 9, 10. Plaintiffs further allege that the Products were marketed as, but not limited to, the "Better Vitamin C" that provides "Immune Support," "provides your body with the immune and antioxidant support it needs to help keep you healthy and strong," and provides "Enhanced Absorption," which are all alleged to

be false, misleading, deceptive and unfair. FAC ¶¶ 17-18, 25, 48, 62, 86, 93. Moreover, Plaintiffs allege that had they known the truth that the statements they relied on were false, misleading, deceptive and unfair, they would not have purchased the Products or paid the premium price (of approximately 300%) for the Ester-C products. FAC ¶¶ 9-10. As such, Plaintiffs have properly alleged standing.

Recently, the California Supreme Court shed light on what constitutes an "economic injury" for standing purposes. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323-330 (Cal. 2011). In *Kwikset*, the Court held that the plaintiffs who had purchased a product that falsely bore a "made in the U.S.A." label had standing to bring a suit against the product's manufacturer because the consumers' economic injury could be shown by the fact that "each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately." *Id*. at 329. Moreover, the Court stated that a "consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement…by alleging, as plaintiffs have here, that he or she would not have bought the product but for the misrepresentation. That assertion is sufficient to allege causation…It is also sufficient to allege economic injury." *Id*. at 330. In the present case, Plaintiffs allege that they paid money for a product which, if appropriately labeled, they would not have purchased at all. FAC ¶¶ 9, 10. Therefore, as in *Kwikset*, Plaintiffs have clearly alleged an economic injury sufficient to confer Article III standing.

Defendants also argue that Plaintiffs do not have standing because they have not alleged which products they purchased and which representation they relied on. Def. Mem. at 6.

Defendant's argument is misplaced and ignores Plaintiff's well-pleaded complaint. Plaintiffs have clearly alleged that they purchased the "Ester-C products" (*see* FAC ¶¶ 9,10), which are defined as including Ester-C Tablets, Ester-C Gummies, and Ester-C To Go (*see* FAC ¶ 1). Since each of the Products' packaging statements are similar with respect to those representations that are at issue in this case, it is unnecessary for Plaintiffs to specify which of the three Ester-C products listed in the FAC. Moreover, Plaintiffs have alleged various false representations made by Defendants in regard to the Products. *See* FAC ¶¶ 17-25. Plaintiffs have further alleged that they "relied on Defendants' false, misleading, and deceptive misrepresentations that taking Ester-C would provide immune system support, decrease [their] likelihood of getting or remaining ill, and protect [them] from illness." FAC ¶¶ 9, 10. Thus, Plaintiffs have clearly alleged the products they purchased as well as the representations they relied on in purchasing the Products, and as such, have properly alleged standing to bring their claims.

> **B.     Plaintiffs Have Properly Stated Their Claims Based on the Alleged Misrepresentations.**

Plaintiffs have properly alleged how Defendants' claims in regard to the efficacy of the Products are false. Specifically, Plaintiffs have alleged that the Products were marketed as, but not limited to, the "Better Vitamin C" that provides "Immune Support," "provides your body with the immune and antioxidant support it needs to help keep you healthy and strong," and provides "Enhanced Absorption." FAC ¶¶ 17-18. Plaintiffs further allege that "Defendants have no credible evidence that taking Ester-C will provide immune support or keep one from getting sick." FAC ¶ 25; *see also* FAC ¶ 48 ("Defendant [sic] have thereby – in their manufacturing, advertising, marketing, selling, and distribution of the Products – engaged in practices that constitute deception, fraud, false pretense, false promise…"); FAC ¶ 62 ("Defendants…have

falsely advertised Ester-C Products by falsely claiming that the Products offer protection against germs, provide immune support, and help prevent a user from getting or remaining sick"); FAC ¶ 86 ("At the time Defendants made the representations herein alleged, Defendants knew the representations were false"); FAC ¶ 93 ("Defendants made the false representations herein alleged…").  Plaintiffs also allege that scientific studies evidence the falsity of Defendants' statements.  *See* FAC ¶ 25 ("Evidence also indicates that Ester-C is not any better than other Vitamin C supplements at providing Vitamin C to the body").  As such, Plaintiffs have alleged that Defendants' claims regarding the efficacy of the Products, in that the Products are the "Better Vitamin C" and that they provide "Immune Support," are false.   Accordingly, Defendants' argument must be rejected.

Moreover, the question of whether Defendants' claims regarding the efficacy of the Products are false is a question of fact not appropriate to be resolved at a motion to dismiss.  *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *68 (E.D.N.Y. Jul. 21, 2010) ("whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and therefore usually cannot be resolved through a motion to dismiss" (citing *Williams v. Gerber Products Co*., 552 F.3d 934, 938-39 (9th Cir. 2008)) (citation omitted); *Manchester v. Bankhead Corp., Div. of Bankhead Enterprises, Inc*., 125 A.D.2d 740, 741 (2d Dept. 1986) ("questions of fact as to the efficacy of [design of the ratchet-pawl mechanism]").

Defendants also argue that Plaintiffs have not alleged falsity of the claims made by Defendants in connection with the Products in that they have only alleged that "the representations on the product are not supported by adequate scientific evidence."  Def. Mem. at 6-7.  Defendants' argue that this supposed "lack of substantiation" theory does not constitute

actual falsity.  Def. Mem. at 6.  Defendants' argument is misplaced and misconstrues Plaintiff's FAC.  As set forth above, Plaintiffs have alleged that Defendant's claims regarding the efficacy of the Products, specifically that the Products are the "Better Vitamin C" and that they provide "Immune Support" and "Enhanced Absorption" are false in that there was no evidence to support such a claim.  *See* FAC ¶¶ 25, 48, 62, 86, 93.  To further support these allegations, Plaintiffs have also cited an Oregon State University study that positively indicates that there is no difference between Ester-C and other commercially available Vitamin C supplements and thus that the claims regarding the efficacy of Ester-C were false and misleading.  *See* FAC ¶ 25.  As such, Plaintiffs have alleged that Defendants' claims were false.

Each of the cases Defendants cite in support of their proposition (*see* Def. Mem. at 7) is distinguishable.  *See Franulovic v. Coca Cola Co*., 390 Fed. Appx. 125, 126 (3d Cir. 2010) (unlike the present case, where there are no studies invalidating the claims, the defendant "advertised Enviga as a calorie-burning drink based on the results of a short-term scientific study" which the plaintiffs did not dispute or otherwise controvert); *Bober v. Glaxo Wellcome Plc*, 246 F.3d 934, 939 (7th Cir. 2001) (unlike the present casewhere Defendants' claims imply and otherwise state that there is evidence in support, there was no "claim at issue [which] implies that there is substantiation for the claim"); *Gredell v. Wyeth Labs., Inc*., 367 Ill. App. 3d 287 (Ill. App. Ct. 2004) (same); *Chavez v. Nestle USA, Inc*., No. CV 09-9192-GW(CWx), 2011 U.S. Dist. LEXIS 58733, at *12-*13 (C.D. Cal. May 2, 2011) (the plaintiffs did not "adequately explain why the identified statements are false or misleading…Even here, as Defendant observes, there are no allegations that consumers were misled regarding the actual amount of DHA in the products…Plaintiff has not articulated what about that claim is deceptive beside the fact that it is supposedly unsubstantiated"); *Barrera v. Pharmavite, LLC*, Case No. CV11-4153-CAS (AGRx),

9

at 3 (C.D. Cal. Jun. 17, 2011) (the plaintiff "fail[ed] to allege Pharmavite's claims about the TripleFlex products are actually false and misleading, but rather merely asserts that Phramavite's product claims are not substantiated by 'competent scientific evidence'").

For additional support, Defendants cites *Fraker v. Bayer Corp*., No. CV F 08-1564 AWI GSA, 2009 U.S. Dist. LEXIS 125633 (E.D. Cal. Oct. 2, 2009).  Def. Mem. at 7.  In *Fraker*, the plaintiffs alleged that the health benefit claims in regard to the defendant's dietary supplement was false and misleading because the defendant in the FTC agreement agreed to cease making such claims.  *Id.* at *21-*22.  The court stated that "the FTC order does not create a private right of action and Plaintiff cannot sue on the grounds Defendant violated the order."  *Id*.  The court further stated that "Plaintiff's second problem is that the government's complaint in the January 3 Action and the Consent Decree allege only that Defendant is accused of violating the FTC order, nothing more. The court has examined the documents and finds that neither of them allege, much less prove, that the claims Defendant made in its advertising of Product were actually false or misleading."  *Id*.  As such, the court ruled that the plaintiffs had not properly alleged the defendant's claims were false or misleading.  Unlike *Fraker*, Plaintiffs do not allege that Defendants' claims in connection with the Products are false and misleading because an FTC agreement prevents Defendants from making such claims.  In other words, Plaintiffs do not reference any settlement agreement with a governmental agency as proof of liability.  Rather, as set forth above, Plaintiffs allege in the FAC that Defendant's claims regarding the efficacy of the Products including, but not limited to, that the Products are the "Better Vitamin C" and that they provide "Immune Support" and "Enhanced Absorption" are false and misleading in that there was no evidence to support such claims and indeed, there exists scientific evidence to refute such

claims. *See* FAC ¶¶ 17-25; *see also* FAC ¶¶ 48, 62, 86, 93. Thus, the decision in *Fraker* does not apply here.

Defendants also argue that courts in New York and Missouri have not addressed the issue of whether a plaintiff may bring an action requiring the defendant to substantiate its claims and as such, this Court should follow California and other jurisdictions. Def. Mem. at 8. Once again, Defendants misconstrue Plaintiffs' FAC as the actual issue in this case is whether Plaintiffs may bring an action against Defendants for claims regarding the efficacy of the Products which include, but are not limited to, that the Products are the "Better Vitamin C" and that they provide "Immune Support" and "Enhanced Absorption" when, in fact, there is not only no evidence to support such claims, but also evidence that contradicts such claims. *See* FAC ¶¶ 17-25. It is inarguable that New York and Missouri courts have frequently addressed similar issues. *See, e.g., Waldman v. New Chapter, Inc*., 714 F. Supp. 2d 398, 405-6 (E.D.N.Y. 2010) (the consumer sufficiently alleged misleading product packaging to maintain deceptive acts and practices claim); *McGowan v. Cadbury Schweppes, PLC*, 941 F. Supp. 344, 348 (E.D.N.Y. 1996) (in an action against wine manufacturer for misrepresentations in the labeling of the wine, the court had found the plaintiffs had properly pleaded their claims); *Parmentier v. Novartis Pharms. Corp*., No. 1:12-CV-45 SNLJ, 2012 U.S. Dist. LEXIS 84574, at *2-*3 (E.D. Mo. Jun. 19, 2012) (plaintiff alleged defendant's drug product labeling was deceptive as it did not accurately reflect all the necessary information material to consumers); *Truth in Labeling Campaign v. Shalala*, 999 F. Supp. 1289, 1291 (E.D. Mo. 1998) (action concerning the deceptiveness of food labeling in regard to monosodium glutamate (MSG) chemical).[2]

---

[2] Defendants further argue that in the event of a conflict with New York law, Missouri law should govern Plaintiff Hughes' claims and California law should govern Plaintiff Hodjat's claims. Def. Mem. at 8, fn. 8. Defendant's argument should be rejected as Defendants have not shown that any conflict of law exists. As such, there is no need for this Court to make a choice of law determination at this time. In any event, a choice of law determination at this

Defendants further argue that it is improper for Plaintiffs to reference FTC settlement agreements involving other products that are similar to Defendants' Products.  Def. Mem. at 9. Defendants assert that the FTC agreements "do not constitute legal determination of falsity." Def. Mem. at 9.  Defendants' argument misses the point.  Plaintiffs do not argue that the FTC agreements should have any binding or authoritative effect on this Court's decision.  Rather, Plaintiffs cite the FTC agreements to show that the FTC has settled with manufacturers and retailers of supplements similar to the Products, in that they made immunity claims.  *See* FAC ¶ 26(a) (no evidence that Airborne dietary supplement could enhance the immune system); 26(b) (no evidence that Rite Aid version of Airborne could enhance the immune system); 26(c) (no evidence AirShield dietary supplement could boost the immune system); 26(d) (no evidence "Wal-Born" dietary supplement could boost the immune system).

Defendants further assert that the product statements at issue in the FTC agreements referenced in the FAC are different than the statements and representations made by Defendants in connection with the Products.  Def. Mem. at 9.  Specifically, Defendants argue that the immunity claims in regard to the Products are considered "structure or function" claims under the FDA which, unlike, the disease prevention claims made by the defendants in the FTC settlement agreements, are not regulated by the FDA.  Def. Mem. at 9-10.  Defendants' argument is misguided.  Plaintiffs' allegations in the FAC are that Defendant's claims regarding the efficacy of the Products including, but not limited to, that the Products are the "Better Vitamin C" and that they provide "Immune Support" and "Enhanced Absorption" are false in that there

---

stage of litigation is premature.  *See Patel v. New York Life Ins. Co*., No. 11 Civ. 4895 (JPO), 2012 U.S. Dist. LEXIS 72717, at *8 (S.D.N.Y. May 21, 2012) ("Because a choice of law analysis is fact intensive, courts often decline to make a choice of law determination at the motion to dismiss stage"); *In re Merrill Lynch Auction Rate Securities Litigation*, No. 09 Civ. 9887 (LAP), 2012 U.S. Dist. LEXIS 19879, at *71 (S.D.N.Y. Feb. 15, 2012) ("The Court need not reach the choice-of-law issue here to decide MM1's motion to dismiss this claim").

was no evidence to support such a claim.  *See* FAC ¶¶ 17-25; *see also* FAC ¶¶ 48, 62, 86, 93.

Whether Defendant's Products are regulated by the FDA is irrelevant.

Thus, for the reasons set forth above, Defendants' arguments should be rejected as

Plaintiffs have properly alleged how Defendants' claims in regard to the efficacy of the Products

are false.

## II.   PLAINTIFFS HAVE ADEQUATELY PLED THEIR CONSUMER FRAUD CLAIMS

Defendants' assertion that Plaintiffs' FAC is bereft of the details required by Fed. R. Civ.

P. 9(b) (Def. Mem. at 12) simply ignores the allegations in the FAC, which plainly sets forth the

"who, what, where, when and why" of Defendants' fraud:[3]

- **WHO:**    Defendants The Ester C Company, NBTY, Inc. and NatureSmart LLC. FAC ¶¶ 11-14.  The products at issue to which the false, misleading, deceptive, and unfair statements were made are Ester-C Tablets, Ester-C Gummies, and Ester-C To Go. FAC ¶¶ 1, 16.

- **WHAT:**    Statements such as: "Ester-C provides your body with the immune and antioxidant support it needs to help keep you healthy and strong during times of seasonal change and the stresses of daily living" (FAC ¶¶ 2, 17); "The Better Vitamin C" (FAC ¶¶ 3, 17); "Immune Support" (FAC ¶17); "immune protection" (FAC ¶17); "Antioxidant Health" (FAC ¶17); and "Enhanced Absorption"  (FAC ¶18).  In fact, Defendants' own exhibit to their Motion clearly shows that these representations are on the product packaging.  *See* Ex. A to Defendants' Mot. to Dismiss (Dkt. #18, p. 4).  The fact that the false, misleading, deceptive, and unfair statements are directly on the product packaging is important because "[s]imply stated: labels matter.  The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source."  *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 889 (Cal. 2011).[4]

---

[3] Defendants state that Plaintiffs must: "(1) specify the allegedly fraudulent statements, (2) identify the speaker of those statements, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *See* Def. Mem. at 12 (citations omitted).

[4] While the packaging of the Ester-C Gummies and the Ester-C To Go differ slightly from the Ester-C Tablets, the representations are the same, or substantially similar, and are also unfair, deceptive, false and misleading. For example, the Ester-C Gummies similarly contain the claims that it is "The Better Vitamin C", "Immune Support", and "Enhanced Absorption".  *See* Ex. A, p. 6.  It also states that "There is nothing like the immune support of our patented Ester-C formula.  As a unique, delicious form of Vitamin C, Ester-C is well retained, providing immune system support."  *Id*.  Likewise, Ester-C To Go contains the claims that it is "The Better Vitamin C", "Immune

- **WHERE:**   The unfair, deceptive, fraudulent and misleading statements were made at the point-of-sale on the product packaging. FAC ¶¶ 2, 3. In addition, false, misleading, deceptive, and unfair statements were made on Ester-C's website (FAC ¶¶ 19-21) and on the product description page for online retailers. FAC ¶¶ 22-24. In particular, the false, misleading, deceptive, and unfair statements were seen on the product packaging of Ester-C on the shelves of a Walgreens in St. Louis, Missouri for Plaintiff Hughes. FAC ¶ 9. As for Plaintiff Hodjat, she viewed them at Ralphs and Whole Foods stores in Los Angeles, California. FAC ¶ 10.

- **WHEN:**   The false, misleading, deceptive, and unfair statements were made from at least January 5, 2006 to the present. FAC ¶ 1; *see also* FAC ¶¶ 9-10. The product was first purchased in or around March 2010 for Plaintiff Hughes (FAC ¶ 9) and throughout 2011 for Plaintiff Hodjat (FAC ¶ 10).

- **HOW:**   The false, misleading, deceptive, and unfair statements and omissions create reasonable expectations that using the product "is a form of immune system protection or defense, protects users from illness and decreases one's likelihood of getting or remaining ill" (FAC ¶ 2) and that the product is "better than other sources of Vitamin C, including fruit" (FAC ¶3). The FAC states that "[t]hese representations convey to the consumer that, by taking Ester-C, his or her immune system will be aided in protecting the consumer from illness." FAC ¶25.[5]

---

Support", and "Enhanced Absorption". *See* Ex. A, p. 7. It similarly states that "Ester-C To Go! is a new way to get advanced, active immune system support, anytime, anywhere!" *Id.*

[5]   Given that these are consumer protection claims, the protection provided against unfair, deceptive and fraudulent marketing practices is even greater than that provided by common law fraud claims. *See, e.g., Schuchmann v. Air Services Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 233 (Mo. Ct. App. 2006) ("The purpose of Missouri's Merchandising Practices Act is to preserve fundamental honesty, fair play and right dealings in public transactions. As stated above, the MMPA supplements the definition of common law fraud, eliminating the need to prove an intent to defraud or reliance. The statute and the regulation paint in broad strokes to prevent evasion thereof due to overly meticulous definitions.") (citations and quotations omitted); *Kwikset Corp.*, 246 P.3d at 883-84 ("Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language … and provided courts with broad equitable powers to remedy violations. The state's false advertising law (§ 17500 et seq.) is equally comprehensive within the narrower field of false and misleading advertising.") (citations and quotations omitted).

It is not just the actual words used by Defendants, read in isolation, that matters, it is also the context and the reasonable inferences and implications that the product message conveys as well. *See Williams v. Gerber Products Co.*, 552 F.3d 934, 939 n. 3 (9th Cir. 2008) ("This statement certainly contributes, however, to the deceptive context of the packaging as a whole. Given the context of this statement, we decline to give Gerber the benefit of the doubt by dismissing the statement as puffery. It is not difficult to choose statements, designs, and devices which will not deceive.") (citation and quotation omitted). That Ester-C is marketed towards individuals concerned about catching colds or the flu is self-evident. For example, why would a company sell, and a consumer buy, a vitamin supplement containing high doses of Vitamin C (8 or more times the FDA's recommended daily allowance) that purports to provide "Immune Support" if not to prevent colds and the flu. Otherwise, a consumer could, for example, simply taking a multivitamin containing Vitamin C. Likewise, what "seasonal change" (Ex. A, p. 4) is Ester-C referring to but the flu season. Unsurprisingly, Defendants tried to market Ester-C as a supplement that can be taken "all year long" (Ex. A, p. 6) and "no matter what time of year it is" (Ex. A, p. 7) in the hopes of selling Ester-C not just during the cold and flu season, which is when people typically look for vitamin C

14

- **WHY:** The representations are unfair, deceptive, fraudulent and misleading because they are "wholly unsupported by credible science," Defendants "have no credible evidence," and they are contradicted by evidentiary findings from a published study. FAC ¶¶ 4, 25.; *see also* FAC ¶¶ 48 ("Defendant [sic] have thereby – in their manufacturing, advertising, marketing, selling, and distribution of the Products – engaged in practices that constitute deception, fraud, false pretense, false promise…"); FAC ¶ 62 ("Defendants…have falsely advertised Ester-C Products by falsely claiming that the Products offer protection against germs, provide immune support, and help prevent a user from getting or remaining sick"); FAC ¶ 86 ("At the time Defendants made the representations herein alleged, Defendants knew the representations were false"); FAC ¶ 93 ("Defendants made the false representations herein alleged…").[6] In addition, similar claims made by other vitamin supplement companies were found to be misleading as evidenced by the various FTC actions detailed in paragraph 26 of the Amended Complaint.

Other "details" that Defendants claim are inadequately pled (Def. Mem. at 13) are clearly set forth in the FAC. For example, for Plaintiff Hughes, it is alleged that he "relied on" Defendants' representations (*e.g.*, those set forth in FAC ¶¶ 2, 3, 17-22) and that he would not have purchased the product or paid the premium price (or approximately 300%) for Ester-C (FAC ¶ 9). For Plaintiff Hodjat, it is alleged that she "relied" on Defendants' representations (*e.g.*, those set forth in FAC ¶¶ 2, 3, 17-22) and that she would not have purchased the product or paid the 300% premium price for Ester-C (FAC ¶ 10).[7] As for the remaining "details" that Defendants claim are not provided (*e.g.*, which particular product, how much they paid, and how

---

supplements. Moreover, whether the marketing and product packaging of Ester-C is deceptive is a question of fact not appropriate for a motion to dismiss. *See Williams*, 552 F.3d at 938.

[6] To the extent that the Court finds that additional details must be pled, such allegations can easily be made on amendment of the FAC. In particular, Plaintiffs are prepared to cite extensively from an expert report of Michael Starnbach (a Ph.D. from Stanford University who is currently a Professor of Microbiology and Immunobiology at Harvard Medical School). Plaintiffs did not cite to Dr. Starnbach's expert opinion that there is no reasonable basis to represent or otherwise suggest that high dose vitamin C supplements like Ester-C can boost, strengthen, power up or support one's immune system because doing so would be beyond the notice pleading requirements of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(a) ("a short and plain statement"); 8(d)(1) ("Each allegation must be simple, concise, and direct. No technical form is required."); 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

[7] These allegations clearly satisfy the elements of causation and damages, "[f]or each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately." *Kwikset Corp.*, 246 P.3d at 890.

long they used the product) are facts related to calculation of damages, are not requirements of Rule 9(b), and are an insufficient basis to dismiss Plaintiffs' claims.

As to the "strong inference" of fraud that Defendants assert is lacking, that claim is easily refuted by both the law and the actual allegations of the FAC and the reasonable inferences that may be drawn thereon. For example, Plaintiffs have alleged Defendants' "motive" to commit fraud was to "cash in on consumers' desire to avoid colds and flu" (FAC ¶16), which is a $4.6 billion industry (FAC ¶15), and that Defendants "opportunity to commit fraud" was the marketing and sale of the Ester-C products (FAC ¶¶ 1-4).[8]  Thus, Plaintiffs have adequately pled the strong inference of fraud for their fraud-based claims. Likewise, given that there is no credible science or evidence to support Defendants' claims of "immune and antioxidant support [your body] needs to help keep you healthy and strong" (FAC ¶ 2), there is "strong circumstantial evidence of conscious misbehavior" (if Defendants knew that Ester-C did not provide any immune system benefits) or "recklessness" (if Defendants never tested whether Ester-C provides any immune system benefits).[9]  Thus, Plaintiffs have adequately pled their fraud-based claims.

It is not just the actual words used by Defendants, read in isolation, that matters, it is also the context and the reasonable inferences and implications that the product message conveys as well.  *See Williams*, 552 F.3d at 939 n. 3  ("This statement certainly contributes, however, to the deceptive context of the packaging as a whole. Given the context of this statement, we decline to give Gerber the benefit of the doubt by dismissing the statement as puffery.  It is not difficult to choose statements, designs, and devices which will not deceive.") (citation and quotation omitted).  That Ester-C is marketed towards individuals concerned about catching colds or the

---

[8] *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).
[9] *Shields*, 25 F.3d at 1128.

flu is self-evident.  For example, why would a company sell, and a consumer buy, a vitamin supplement containing high doses of Vitamin C (eight or more times the FDA's recommended daily allowance) that purports to provide, among other claims, "Immune Support" if not to prevent colds and the flu?   Otherwise, a consumer could, for example, simply take a multivitamin containing Vitamin C or a much cheaper Vitamin C supplement without such false, misleading, deceptive, and unfair statements.  Likewise, what "seasonal change" (Ex. A, p. 4) is Ester-C referring to but the flu season?  Moreover, whether the marketing and product packaging of Ester-C is deceptive is a question of fact not appropriate for a motion to dismiss.  *See Williams*, 552 F.3d at 938.  Thus, the challenged representations made by Defendants are clearly false, misleading, deceptive, and unfair as set forth in the FAC.

As for the consumer protection act claims in particular, because the protection provided against false, misleading, deceptive, and unfair marketing practices is even greater than that provided by common law fraud claims, there is no reason to dismiss those claims.  *See, e.g., Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 233 (Mo. Ct. App. 2006) ("The purpose of Missouri's Merchandising Practices Act is to preserve fundamental honesty, fair play and right dealings in public transactions.  As stated above, the MMPA supplements the definition of common law fraud, eliminating the need to prove an intent to defraud or reliance. The statute and the regulation paint in broad strokes to prevent evasion thereof due to overly meticulous definitions.") (citations and quotations omitted); *Kwikset Corp.*, 246 P.3d at 883-84 ("Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.  In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language … and provided courts with broad equitable powers to remedy violations.  The state's false advertising

17

law (Cal. Bus. and Prof. § 17500, *et seq.*) is equally comprehensive within the narrower field of false and misleading advertising.") (citations and quotations omitted).

III.   **PLAINTIFFS HAVE ADEQUATELY PLED THEIR MISREPRESENTATION CLAIMS**

A.   **Intentional Misrepresentation.**

Defendants assert that Plaintiffs' claim for intentional misrepresentation must be dismissed because no false statement has been specified and because Plaintiffs have not alleged that Defendants knew of any statements falsity.  Def. Mem. at 14.  As set forth above regarding the consumer fraud claims, Plaintiffs have identified the false statements made by Defendants related to the sale of Ester-C such as "Immune Support", "The Better Vitamin C", and "Enhanced Absorption".  FAC ¶¶ 17-18.  Plaintiffs further allege that "Defendants have no credible evidence that taking Ester-C will provide immune support or keep one from getting sick."  FAC ¶ 25; *see also* FAC ¶¶ 48 ("Defendant [sic] have thereby – in their manufacturing, advertising, marketing, selling, and distribution of the Products – engaged in practices that constitute deception, fraud, false pretense, false promise…"); FAC ¶ 62 ("Defendants…have falsely advertised Ester-C Products by falsely claiming that the Products offer protection against germs, provide immune support, and help prevent a user from getting or remaining sick"); FAC ¶ 86 ("At the time Defendants made the representations herein alleged, Defendants knew the representations were false"); FAC ¶ 93 ("Defendants made the false representations herein alleged…").  Plaintiffs also allege that Defendants deceptively represented that Ester-C is better than other sources of Vitamin C and that the Vitamin C is better absorbed by the body by stating that Ester-C is "The Better Vitamin C" in spite of evidence that indicates that Ester-C is not any better than other vitamin C supplements at providing Vitamin C to the body.  *See* FAC ¶¶ 3, 25. Likewise, Plaintiffs have alleged (or it can be inferred) that either the Defendants knew the

statements were false because they either had evidence to the contrary, or Defendants acted with reckless disregard of the statements falsity because they had no substantiation for their claims.

Moreover, reliance has plainly been pled. *See* FAC ¶¶ 9-10 (Plaintiffs "relied on Defendants' false, misleading, and deceptive misrepresentations that taking Ester-C would provide immune system support, decrease [their] likelihood of getting or remaining ill, and protect [them] from illness"). Whether Plaintiffs' reliance was justified is a question of fact inappropriate for resolution on a motion to dismiss. *See MBIA Ins. Co. v. GMAC Mortg. LLC*, 914 N.Y.S.2d 604, 608 (N.Y. Sup. Ct. 2010) (denying motion to dismiss fraud claim based on assertion that plaintiff could not justifiably rely on any purported misrepresentation because "[r]easonable reliance is a fact intensive inquiry, which should be reserved for a trier of fact."); *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996) ("Whether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact").

Likewise, the presence of the purported disclaimer that "the express statement on the package that the product was not for disease prevention" (Def. Mem. at 14) is insufficient to justify dismissing Plaintiffs' claims at this time. Compare *Moriarity v. Small World Adoption Found. of Missouri, Inc.*, No. 5:04-CV-394, 2008 U.S. Dist. LEXIS 2309 (N.D.N.Y. Jan. 11, 2008) (denying summary judgment because question of fact existed related to element of justifiable reliance despite presence of disclaimers and warnings). The sole case cited by Defendants, *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77 (N.Y. App. Div. 2004), is not instructive. While the court did find the fraud claim correctly dismissed for failure to demonstrate justifiable reliance, the opinion does not identify the exact representations that were challenged or the language of the express disclaimer. *Id*. at 78. In addition, the *Donahue* court

19

found that the "type of product involved" (herbal iced teas and fruit punch) was also relevant to granting dismissal. *Id*. Here, the type of product involved is a vitamin supplement, and not simply a beverage, that purported to offer immune system and health benefits. In addition, the fine print statement that "[t]hese products are not intended to diagnose, treat, cure or prevent any disease" is contradicted by the more noticeable, express statements on the product's label that, for example, "Ester-C provides your body with the immune and antioxidant support it needs to help keep you healthy and strong during times of seasonal change and the stresses of daily living." FAC ¶¶ 2, 17. *See Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box … We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception").

Here, whether the representations made by Defendants are misleading, are likely to deceive, or could deceive a reasonable consumer are questions of fact. *See Ackerman*, 2010 U.S. Dist. LEXIS 73156 at *68 ("whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and therefore usually cannot be resolved through a motion to dismiss" (citing *Williams v. Gerber Products Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008)) (citation omitted). The fact finder should be allowed to review, *inter alia*, the product packaging and determine whether a reasonable consumer could justifiably rely on Defendants' unfair, deceptive, fraudulent and misleading statements because "[t]he facts of this case…do not amount to the rare situation in which

granting a motion to dismiss is appropriate." *Williams*, 552 F.3d at 939.  Thus, Plaintiffs' claim

for intentional misrepresentation should not be dismissed.

      **B.**      **Negligent Misrepresentation.**

      Again, Defendants boldly claim that no false statement has been pled.  Def. Mem. at 15.

As set forth in detail above, Plaintiffs have adequately pled false statements.  *See* FAC ¶¶ 17-18,

25, 48, 62, 86, 93.

      Defendants also contend that the claim for negligent misrepresentation under New York

law should be dismissed because a "special relationship" must be pled.  However, both the Court

of Appeals for New York and the Second Circuit have stated that whether a special relationship

exists is a factual inquiry; thus, making it inappropriate for determination on a motion to dismiss.

*See Kimmell*, 675 N.E.2d at 454 ("Whether the nature and caliber of the relationship between the

parties is such that the injured party's reliance on a negligent misrepresentation is justified

generally raises an issue of fact."); *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250

F.3d 87 (2d Cir. 2001) (citing *Kimmell* and holding that "Given that a determination of whether a

special relationship exists is essentially a factual inquiry, these allegations are sufficient to

overcome a motion to dismiss").

      Even so, Plaintiffs have adequately alleged such a special relationship since all that is

required to find a special relationship is consideration of:

> whether the person making the representation held or ***appeared to hold unique or***
> ***special expertise***; whether a special relationship of trust or confidence existed
> between the parties; and whether the speaker was ***aware of the use to which the***
> ***information would be put and supplied it for that purpose***.

*Kimmell*, 675 N.E.2d at 454 (emphasis added).  Here, Defendants appeared to hold unique or

special expertise in the purported immune system benefits of Ester-C.  Given the representations

on the Products' packaging, Defendants touted the health benefits of their product – claims that

appeared to be based on, or a consumer would reasonably assume was based on, medical or scientific evidence (*i.e.* a special expertise).  In addition, Defendants were clearly aware that such representations on the product packaging would be used by consumers to determine whether to purchase a vitamin supplement and whether to purchase Ester-C as compared to other vitamin supplements or other products.  Defendants made these representations about the purported health benefits of Ester-C for the purpose of convincing consumers, like Plaintiffs, to purchase their products because labels matter.  *See Kwikset Corp.*, 246 P.3d at 889.  Thus, Plaintiffs have adequately alleged the existence of a special relationship under New York law sufficient to withstand the motion to dismiss.

While Defendants have not fully briefed the choice-of-law issue and determination of choice-of-law is not appropriate on a motion to dismiss, to the extent that Missouri's negligent misrepresentation law may apply, Plaintiffs have adequately pled their claim as well despite the purported restriction of negligent misrepresentation claims to a "limited group in a particular transaction."  Def. Mem. at 16.  Under Missouri law, a person may bring a claim for negligent misrepresentation "where (1) the defendant has knowledge of the specific injured party's reliance; or (2) the plaintiff is a ***member of a group that the defendant seeks to influence***; or (3) the defendant has special reason to know that some member of a limited group will rely on the information."  *Mark Twain Plaza Bank v. Lowell H. Listrom & Co., Inc.*, 714 S.W.2d 859, 865 (Mo. Ct. App. 1986) (cited by *MidAmerican Bank & Trust Co. v. Harrison*, 851 S.W.2d 563, 564 (Mo. Ct. App. 1993)) (emphasis added).  Here, Plaintiffs clearly satisfy the second scenario in that they are members of a group of consumers that Defendants sought to influence through the false and deceptive representations on the product packaging.  As stated above, labels matter and Defendants specifically placed the representations of "Immune Support", "The Better Vitamin

C", and "Enhanced Absorption" to get consumers to buy Ester-C as opposed to some other product.  At this pleading stage, Plaintiffs have satisfied their burden for pleading a negligent misrepresentation claim.

## IV.    PLAINTIFFS HAVE ADEQUATELY PLED THEIR UNJUST ENRICHMENT CLAIM

Despite Defendants' assertions (Def. Mem. at 16-17), Plaintiffs have adequately stated a claim for unjust enrichment.   Plaintiffs have pled that Defendants made false, deceptive, fraudulent and misleading statements regarding the Ester-C products.  FAC ¶¶ 1-4; *see also* FAC ¶¶ 48 ("Defendant [sic] have thereby – in their manufacturing, advertising, marketing, selling, and distribution of the Products – engaged in practices that constitute deception, fraud, false pretense, false promise…"); FAC ¶ 62 ("Defendants…have falsely advertised Ester-C Products by falsely claiming that the Products offer protection against germs, provide immune support, and help prevent a user from getting or remaining sick"); FAC ¶ 86 ("At the time Defendants made the representations herein alleged, Defendants knew the representations were false"); FAC ¶ 93 ("Defendants made the false representations herein alleged…").  Plaintiffs have also alleged that they relied on these representations and that each would not have purchased Ester-C, or paid a premium for Ester-C, if they had known the truth about the fact that Ester-C does not provide the immune system support or boost it claims and that it does not have any benefit which makes it better than any other form or source of Vitamin C.  FAC ¶¶ 9, 10, 25.  Plaintiffs also alleged that "Defendants have obtained revenues by which they became unjustly enriched at the expense of Plaintiffs and other members of the Class."  FAC ¶ 81.  Thus, Defendants would not have had profited off the sales of Ester-C without their inequitable and fraudulent conduct.  This case is similar to *Stewart v. Beam Global Spirits & Wine, Inc.*, No. 11-5149 NLH, 2012 U.S. Dist. LEXIS 90554 (D.N.J. June 29, 2012), which is a suit challenging the sale of a purported "all

natural", "healthy alternative to other commercial Margarita products presently available".   In *Stewart*, the district court denied a motion to dismiss the unjust enrichment claim because the plaintiff had

> alleged sufficient facts to make out a plausible claim for relief for unjust enrichment because the complaint clearly asserts that the Beam Defendants "received funds that they otherwise would not have received and which it would be unjust for them to retain" as a result of their allegedly fraudulent conduct and purported misrepresentations. (Second Am. Compl. ¶ 77.) Plaintiffs specifically alleged that "Plaintiffs and other Class members would not have purchased Skinny Girl Margarita products, absent Defendants' misrepresentations, if the true facts had been known." (Second Am. Compl. ¶ 75.) Accepting Plaintiffs' allegations as true that they would not have purchased Skinny Girl Margarita from the liquor store retailers involved if not for the Beam Defendants' alleged misrepresentations and that these purchases therefore resulted in Defendants receiving funds they would not have otherwise received through the wholesale distribution of their products, Plaintiffs' second amended complaint sufficiently alleges a plausible claim for relief.

*Id.* at \*28-\*29.  Likewise, this Court should not dismiss Plaintiffs' unjust enrichment claim.

Moreover, contrary to Defendants' assertion that "Plaintiffs [did not] pay for … a high-dose vitamin C supplement" (Def. Mem. at 17), Plaintiffs have clearly alleged that they paid for a product that was represented to provide immune support, to be a better Vitamin C, and to keep you healthy but the truth is that Ester-C does not do any of those things.  FAC ¶¶ 9, 10, 25, 26.[10] In addition, Plaintiffs specifically alleged that they would not have purchased the product or paid the premium price for Ester-C if they had known the truth.  FAC ¶¶ 9, 10.  Thus, Plaintiffs did not receive what they paid for because the claims made by Defendants were false, misleading, deceptive, and unfair and Defendants have been unjustly enriched by profiting off their misconduct.

---

[10] *Comet Theatre Enters., Inc. v. Cartwright*, 195 F.2d 80 (9th Cir. 1952), cited by Defendant, is inapposite as it does not involve a claim for unjust enrichment against a defendant who profited off its unfair, deceptive, fraudulent and misleading acts.  *Comet* is factually distinguishable because it involved a claim for money had and received for money voluntarily paid to defendants for full performance of a contract under a mistake of law.  *Id.* at 81.  The court found that the relief of rescission and restitution was not necessary because there would be no harm to the party for whose benefit the statute making the contract illegal exists and because the plaintiff got what it paid for (*i.e.* performance of the contract).

In addition, Fed. R. Civ. P. 8(d)(2) specifically entitles Plaintiffs to plead their unjust enrichment claim in the alternative.  Furthermore, none of the cases cited by Defendants actually state that a plaintiff must allege that no adequate remedy at law exists in order to pursue an unjust enrichment claim and Defendants' cases are easily distinguishable.[11]  Thus, Plaintiffs' claim for unjust enrichment should not be dismissed.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion should be denied.[12]

DATED:  July 13, 2012

**WHATLEY DRAKE & KALLAS, LLC**

*/s/ Patrick J. Sheehan*
Patrick J. Sheehan
psheehan@wdklaw.com
380 Madison Avenue, 23rd Floor
New York, New York 10017
Telephone:  (212) 447-7070
Facsimile:  (212) 447-7077

**REESE RICHMAN LLP**
Michael R. Reese
mreese@reeserichman.com
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

---

[11] *See Wilkison v. Wiederkehr*, 124 Cal. Rptr. 2d 631, 639 (Cal. App. Ct. 2002) (holding that plaintiff cannot maintain an action for quasi-specific performance of contract seeking constructive trust because adequate remedy at law for breach of written agreement); *Blue Cross Health Servs., Inc. v. Sauer*, 800 S.W.2d 72, 75-76 (Mo. Ct. App. 1990) (Missouri state courts have separate law and equity divisions and the court held that the proper claim was not unjust enrichment in equity but for money had and received in law as court could not impose a constructive trust where there is no specified res; the court noted that the "remedy for unjust enrichment is restitution … A person entitled to restitution can find a remedy in equity or at law depending upon the circumstances of the particular case."); *Samiento v. World Yacht Inc.*, 883 N.E.2d 990, 996 (N.Y. 2008) (stating that a plaintiffs' third cause of action for unjust enrichment does not lie as plaintiffs have an adequate remedy at law since the court reinstated the plaintiff's first cause of action for violation of New York labor law).
[12] Alternatively, if the Court accepts any part of Defendants' arguments, Plaintiffs should be given leave to amend. Defendants do not seek dismissal with prejudice, nor could they as all their arguments could be addressed through amendment, which the Federal Rules of Civil Procedure state the Court should "freely give."  *See* Fed. R. Civ. P. 15(a)(2).

**COMPLEX LITIGATION GROUP LLC**
Jeffrey A. Leon
Jamie E. Weiss
513 Central Avenue, Suite 300
Highland Park, Illinois 60035
Telephone:  (847) 433-4500

**BECKER, PAULSON, HOERNER
& THOMPSON, P.C.**
Kevin T. Hoerner
5111 West Main Street
Belleville, Illinois 62226

**THE KREISLER LAW FIRM LLC**
Brian T. Kreisler
Brian@kreislerlawfirm.com
P.O. Box 1353
O'Fallon, IL 62269

*Counsel for Plaintiffs and the Proposed
Class*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on July 13, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel registered to receive notification of said filing.

                                     *s/Patrick J. Sheehan*