# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 12-CV-0041 (JFB) (ETB)
_____

PATRICK HUGHES AND NAFISE NINA HODJAT,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

VERSUS

THE ESTER C COMPANY, NBTY, INC., AND NATURESMART LLC,

Defendants.

_____

**MEMORANDUM AND ORDER**
March 15, 2013
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs Patrick Hughes ("Hughes") and Nafise Nina Hodjat ("Hodjat") (collectively, "plaintiffs") bring this class action in diversity on behalf of themselves and others similarly situated against Ester-C Company (a subsidiary of NBTY, Inc.), NBTY, Inc., and NatureSmart LLC (collectively, "defendants" or "Ester-C Co."). Specifically, plaintiffs allege that defendants have deceptively marketed their products ("Ester-C products" or "products") from January 5, 2006 through to the present, and that such marketing has, *inter alia*: created a reasonable expectation in Ester-C consumers that the products are a form of immune system defense; deceptively represented Ester-C as a superior source of Vitamin C than other sources; and made misleading representations as to Ester-C's health benefits that are not supported by credible science. (*See* First Am. Class Action Compl. ("FAC") ¶¶ 1, 2, 9, 10.) In particular, plaintiffs allege violations of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010 (on behalf of Missouri class members); violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"), and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL") (on behalf of California class members); and violations

under New York common law, including unjust enrichment, intentional misrepresentation, and negligent misrepresentation as to all class members. (*Id.* ¶¶ 40-97.)

Defendants move to dismiss the FAC on three grounds: (1) failure to state a claim pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure; (2) failure to plead fraud with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure; and (3) failure to properly allege the elements of the common law torts of intentional misrepresentation, negligent misrepresentation, and unjust enrichment.

For the reasons stated herein, defendants' motion is denied in its entirety.

## I. BACKGROUND

### A. Facts

The following facts are taken from the FAC, including documents that plaintiffs have incorporated by reference. These facts are not findings of fact by the Court. Rather, the Court assumes these facts to be true for purposes of deciding the pending motion to dismiss. The Court construes the facts in the light most favorable to plaintiffs, the non-moving party.

Ester-C Co. produces products that contain large dosages of vitamins. According to its packaging, Ester-C Co.'s products contain 500 mg of Vitamin C (more than eight times the daily dosage of Vitamin C as recommended by the Food and Drug Administration (the "FDA")) or 1000 mg of Vitamin C (approximately seventeen times the daily dosage of Vitamin C as recommended by the FDA). (FAC ¶ 16.) Ester-C Co.'s products also state that they contain Calcium, "C-Sorb Citrus

Vioflavonoids Complex," and "Naturally Occurring Vitamin C Metabolites." (*Id.* ¶ 16; *see also* Decl. of James Arden in Supp. of Mot. to Dismiss, Ex. A ("Product Labels, Ex. A").)

Ester-C Co. offers consumers three principal forms of products, including Ester-C Tablets, Ester-C Gummies, and Ester-C To Go, a type of beverage mix. (FAC ¶ 16.) Consumers may purchase the products at several major drugstores, including CVS, Walgreens, K-Mart, Wal-Mart, Amazon.com, Drugstore.com, Rite Aid, Target, A&P, and Duane Read. (*Id.*)

Plaintiff Hughes, a citizen of Illinois, purchased an Ester-C product at a Walgreen's in St. Louis, Missouri, in March 2010. (*Id.* ¶ 9.) Plaintiff Hodjat, a citizen of California, purchased Ester-C products at Ralph's and Whole Foods grocery stores in Los Angeles, California on several occasions in 2011. (*Id.* ¶ 10.) Plaintiffs subsequently brought suit against defendants on behalf of nation-wide consumers of Ester-C.

This dispute centers on the specific packaging, labeling, and marketing of Ester-C Co.'s products. Plaintiffs point to several statements – present either on the products' packaging or Ester-C Co.'s website – which they assert are deceptive, false, and/or misleading to consumers. (*See id.* ¶¶ 16-21.) These statements include the following:[1]

---

[1] Although plaintiffs provide excerpts of the labels' language in their complaint, the Court finds it easier to read the actual copies of the labels as provided by defendants in their exhibits to their motion to dismiss. (*See* Product Labels, Ex. A.) *See Nasso v. Bio Reference Labs, Inc.*, No. 11-cv-3480, 2012 WL 4336429, at *3 (E.D.N.Y. Sept. 24, 2012) (noting documents a court may consider on a motion to dismiss, including "'documents 'integral' to the

1. The description of Ester-C as, "The Better Vitamin C." (Oral Arg. Oct. 23, 2012; Product Labels, Ex. A.)

2. The phrase "#1 Pharmacist Recommended Brand" on the product labels. (Oral Arg. Oct. 23, 2012; Product Labels, Ex. A.)

3. The language, "Immune Support" on the product labels. (FAC ¶ 17; Product Labels, Ex. A.)

4. The language, "Ester-C provides your body with the immune and antioxidant support it needs to help keep you healthy and strong during times of seasonal change and the stresses of daily living," on the product labels. (FAC ¶ 17; Product Labels, Ex. A.)

5. The language, "Antioxidant Support" on the product labels. (Oral Arg. Oct. 23, 2012; Product Labels, Ex. A.)

6. The language, "Enhanced Absorption" on the product labels. (FAC ¶ 18; Product Labels, Ex. A.)

7. The language, "Make Ester-C part of your daily routine for optimal health . . . no matter what time of year it is!" on the product labels and the Ester-C website. (FAC ¶ 19; Product Labels, Ex. A.)[2]

According to the FAC, Ester-C Co.'s representations as to the purpose and performance of its Products are not limited to the aforementioned packaging. (FAC ¶¶ 19-21.) Rather, Ester-C Co.'s website includes similar representations, including a section entitled "Ask An Expert," in which an identified "expert" claims he maintains a healthy and active lifestyle in part through the consumption of Ester-C. (*Id.* ¶¶ 19-20.) The website also discusses Ester-C's ability to increase absorption of vitamin C molecules, "making it easier for the body to transport [the vitamins] from cell to cell for numerous health benefits." (*Id.* ¶ 21.)[3]

According to the FAC, retailers' marketing as to the products is similar. For instance, Amazon.com advertises product "Ester-C 24 Hour Immune Support 500mg" as "24 hour immune protection. [E]ster-C gives you powerful immune system support. [E]ster-C provides your body with the antioxidant protection it needs to help keep you healthy and strong . . . ." (*Id.* ¶ 24 (alterations in original).) Wal-mart markets Ester-C with such statements as, "[s]tay

complaint and relied upon in it, even if not attached or incorporated by reference, [and] documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint'" (quoting *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003))).

[2] In their complaint, plaintiffs reference additional language that they assert appears on certain Ester-C packaging, namely, that Ester-C's products provide "immune protection" and "24 Hour Immune Support." (*See* FAC ¶ 17.) Defendants counter that

no such language appears on any of its products (*see* Defs.' Mem. in Supp. of Mot. to Dismiss at 10; Defs.' Reply at 1-2), and moreover, offer exhibits of actual Ester-C product labels (the accuracy of which plaintiffs do not dispute), none of which contain such language (*see* Product Labels, Ex. A). The Court finds no plaintiff-referenced language on the products or, for that matter, on defendants' website. The cited language instead seems to appear in other, non-Ester-C companies' marketing. Thus, the Court does not consider such alleged labeling in its analysis.

[3] Plaintiffs do not explicitly state in their complaint on what exact dates or at what times they read such labels or visited the Ester-C website. However, plaintiffs specifically state the language on which they claim to have relied in making their Ester-C purchases. (FAC ¶¶ 16-21.) Plaintiffs also allege that they would not have made their purchases if they had not read and relied on such statements. (*Id.* ¶¶ 9, 10.)

healthy with the Ester-C The Better Vitamin C Supplement Tablets," and "[t]he Ester-C vitamin C 1000mg tablets also offer 24 hour immunity from day to day ailments like flu and fever." (*Id.* ¶ 22.) Sears.com states, "Ester-C to go 24 hour immune support powder packets . . . naturally pleasant tasting health and energy booster." (*Id.* ¶ 23.)[4]

Plaintiffs assert that the alleged false advertising is designed to increase product sales. (*See id.* ¶ 16 ("Seeking to cash in on consumers' desire to avoid colds and flu, Defendants market their Ester-C Products as vitamin supplements . . . ."); *id.* ¶ 29 (stating "Defendants have profited enormously from their false advertising of Ester-C," and noting that a box of Ester-C 500mg containing 90 tablets costs approximately $8.44, whereas a comparable market Vitamin C supplement typically costs about $7.00, signifying "a premium of approximately 300%").) Further, plaintiffs allege that defendants have no credible evidence that Ester-C will perform as it is claimed to – that is, that Ester-C will provide immune system support or prevent one from becoming sick – and cite to evidence that they assert indicates to the contrary. (*See id.* ¶ 25 & n.1.)[5]

Plaintiffs also reference various Federal Trade Commission ("FTC") investigations into several of Ester-C's competitors, including Airborne Health, Inc., Rite-Aid Corp.'s "Germ Defense" products, CVS Pharmacy, Inc.'s "AirShield" products, and Walgreens' "Wal-Born" products. (*Id.* ¶ 26.) Plaintiffs note that the FTC settled all of these investigations, which were based on manufacturers' and retailers' representations regarding the ability of their products to boost one's immune system and protect against illness. (*Id.*) Plaintiffs contend that, given the similarities between Ester-C Co.'s products and those of the aforementioned FTC-targeted companies, "[d]efendants have not been truthful regarding what their Ester-C Products 'can and cannot do'" (*id.* ¶ 28), and therefore, their representations "are misleading and false" (*id.* ¶ 4).

Defendants move to dismiss plaintiffs' complaint on three principal grounds. First, defendants contend that plaintiffs' misrepresentation claims (raised under several states' laws) are not adequately pled under Federal Rules of Civil Procedure 8 and 12(b)(6) because plaintiffs cannot point to any false statements allegedly made by defendants. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mot. to Dismiss") at 1-2, 5-11.) As part of this argument, defendants contend that plaintiffs' falsity-by-virtue-of-lack-of-credible-evidence claim is actually a lack of substantiation claim, which plaintiffs do not adequately support in their pleadings. Defendants further argue that plaintiffs' references to recent FTC consent decrees in support of their misrepresentation claim are unavailing because such decrees concern settlements between the FTC and other

---

[4] At oral argument, counsel for defendants made clear that Ester-C Co. is not responsible for the language that other companies use to market Ester-C, and noted that in the past, defendants have had to reach out to ask such companies to remove language that goes beyond Ester-C's own marketing and labeling representations. (*See* Oral Arg. Oct. 23, 2012.)

[5] Specifically, plaintiffs cite a publication issued by Oregon State University's Linus Pauling Institute in which the effect of Ester-C's main ingredients, including calcium ascorbate and small amounts of different forms of vitamin C metabolites, was called into question. (FAC ¶ 25 n.1 (quoting Oregon State University, Linus Pauling Institute – Micronutrient Information Center, http://lpi.oregonstate.edu/infocenter/vitamins/vitamin

C/ (last visited May 4, 2012)) (internal quotation mark omitted)).

manufacturers, and involve different products and different claims. (*Id.* at 9-10.) Lastly, defendants argue that plaintiffs do not have standing to pursue their claims because plaintiffs never stated which products they allegedly purchased, nor did they plead whether they ever read the various marketing statements referenced in their complaint before purchase. (*Id.* at 6.)

Second, defendants argue that plaintiffs have failed to plead their claims, which sound in fraud, with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. (*Id.* at 12-13.) This lack of particularity, according to defendants, is evidenced by plaintiffs' failure to identify which Ester-C products they purchased; what specific alleged misrepresentations they relied on in deciding to purchase the products; how much they paid for the products; when and for how long they used the products; and the reasons supporting plaintiffs' contention that such representations are false. (*Id.*)

Third, defendants claim that plaintiffs have not properly alleged the elements of the torts of intentional misrepresentation, negligent misrepresentation, or unjust enrichment. (*Id.* at 14-17.)[6] For these reasons, defendants contend that this Court should dismiss plaintiffs' FAC in its entirety.

Plaintiffs' arguments in opposition, most briefly summarized, are as follows. First, plaintiffs assert that they both have standing to bring, and have properly alleged, their claims. (Pls. Opp'n to Defs.' Mot. to Dismiss at 5-13.) Second, plaintiffs contend they have pled their fraud claims with the requisite particularity. (*Id.* at 13-18.) Third, plaintiffs argue that they have adequately pled their state misrepresentation claims (both intentional and negligent), as well as their unjust enrichment claim. (*Id.* at 18-25.)

On careful consideration of the parties' arguments, and for the reasons set forth herein, the Court concludes that dismissal of plaintiffs' claims is not warranted. Accordingly, the Court denies defendants' motion to dismiss in its entirety.

### B. Procedural Background

The original complaint in this action was filed on January 4, 2012; plaintiffs' amended complaint followed on May 15, 2012. Defendants filed their motion to dismiss on June 13, 2012. Plaintiffs' opposition thereto was filed on July 13, 2012, and defendants' reply was filed on July 27, 2012. Oral argument was held on October 23, 2012. The Court has fully considered the arguments and submissions of the parties.

---

[6] Although defendants argue that plaintiffs fail to sufficiently plead the elements of these torts under California, Missouri, or New York law, a review of plaintiffs' complaint makes clear that plaintiffs only allege these torts under New York common law. (*See* FAC Counts V-VII.) Moreover, defendants point to no conflict of law with New York law, such that Missouri or California law should be deemed applicable here. (*See* Defs.' Mot. to Dismiss at 8 n.8.) The Court need not make such a determination at this juncture in the litigation. *See Patel v. N.Y. Life Ins. Co.*, No. 11 Civ. 4895 (JPO), 2012 WL 1883529, at *3 (S.D.N.Y. May 21, 2012) ("Because a choice of law analysis is fact intensive, courts often decline to make a choice of law determination at the motion to dismiss stage."); *see also In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 541 (S.D.N.Y. 2012 ("The Court need not reach the choice-of-law issue here to decide [defendant's] motion to dismiss."). The Court accordingly limits its analysis as to these issues to New York law and does not, at this stage, make any choice of law determination.

## C. State Schemes

Plaintiffs' pleadings focus on three states' laws concerning false product representations, namely, California, Missouri, and New York. All three states (whether under their common or statutory law) broadly prohibit false advertising or merchandising, unfair and deceptive business practices, and fraudulent misrepresentations. These state regulations will be discussed in greater detail *infra*.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

Motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure probe the legal, not the factual, sufficiency of a complaint. *See, e.g., Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). Stated differently, when assessing the viability of a complaint's pleadings at the Rule 12(b)(6) stage, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) (internal alternation omitted). Thus, when reviewing a motion to dismiss, "the [c]ourt must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Volpe v. Nassau Cnty.*, 12-CV-2416 (JFB)(AKT), 2013 WL 28561, at *5 (E.D.N.Y. Jan. 3, 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Generally, this standard for survival does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

However, where a case concerns allegations of fraud or mistake under Rule 9(b) of the Federal Rules of Civil Procedure, claims must be pled with particularity. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Nasso*, 2012 WL 4336429, at *3 ("Claims concerning fraud are subject to heightened pleading standards.").

Generally, to comply with Rule 9(b)'s specificity requirements, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)) (internal quotation mark omitted). Conclusory allegations of fraud will not survive Rule 9(b)'s heightened pleading standard, and therefore, will be subject to dismissal at the motion to dismiss stage. *See Nasso*, 2012 WL 4336429, at *3 (citing *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971)).

Where a motion to dismiss presents itself before the court, a court may examine the following: "(1) facts alleged in the

complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Nasso*, 2012 WL 4336429, at *3 (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d at 356-57) (internal citations omitted).

### III. DISCUSSION

### A. Failure to State a Claim Upon Which Relief May Be Granted

The Court first addresses defendants' argument that plaintiffs fail to state a claim under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants' argument is twofold: (1) plaintiffs lack standing to challenge Ester-C's Products, and (2) plaintiffs' assertion that Ester-C Co.'s representations are "misleading and false" because they are "unsupported by credible science" is, for all intents and purposes, a lack of substantiation argument, which (a) a private litigant may not bring, and which (b) plaintiffs do not adequately plead. (Defs.' Mot. to Dismiss at 5 (citing FAC ¶¶ 4, 25).)

### 1. Standing

### a. Legal Standard

When turning to the courts, a plaintiff must show that he has a justiciable case or controversy, including that he has standing before the court. Thus, standing "'focuses on the party seeking to get his complaint before a federal court, and not on the issues he wishes to have adjudicated.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976) (quoting *Flast v. Cohen*, 392 U.S. 83, 99 (1968)). Generally, to establish standing, a plaintiff must satisfy three requirements: (1) "there must be alleged (and ultimately proved) an injury in fact – a harm suffered by the plaintiff that is concrete and actual or imminent," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)) (internal quotation marks omitted); (2) there must be "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant," *id.*; and (3) there must be "a likelihood that the requested relief will redress the alleged injury," *id.* Where a plaintiff satisfies this trifecta of injury, causation, and redressability, he also will have met the "case or controversy" requirement of Article III, *Jaghory v. N.Y. State Dept. of Educ.*, 131 F.3d 326, 329-30 (2d Cir. 1997), thereby giving a federal court jurisdiction over the matter, *see Steel Co.*, 523 U.S. at 103-04.

Notably, for purposes of this action, where a case involves a class of plaintiffs, a court must "look[] to the status of the named plaintiff, not the standing of unidentified class members." *Salsitz v. Peltz*, 210 F.R.D. 95, 99 (S.D.N.Y. 2002); *see also Simon*, 426 U.S. at 40 n.20 ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to

represent." (citations and internal quotation marks omitted)).

### b. Application

The Court first addresses whether the named plaintiffs, Hodjat and Hughes, have standing to bring their claims before this Court.

Economic injury suffices as a form of injury-in-fact that meets the first element of standing. *See Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 161 (1981) (recognizing economic injury as an injury-in-fact); *see also Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005) ("While it is difficult to reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms."); *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient basis for standing.").

Here, plaintiffs state that they purchased Ester-C based on its representations as to immune support, and that "[h]ad [they] known the truth that the statements [they] relied on were false, misleading, deceptive, and unfair, [they] would not have purchased Ester-C or paid the premium price (of approximately 300%) for the Ester-C [they] bought." (FAC ¶¶ 9, 10; *see also id.* ¶ 49 ("As a direct and proximate result of Defendants' improper conduct, [plaintiffs] . . . have suffered damages and ascertainable losses of moneys and/or property . . . by paying more for the Product than they would have and/or by purchasing the Product when they would not have if the horsepower of the Product had not been misrepresented."); *id.* ¶¶ 81, 88, 96.) This is a sufficient economic injury for purposes of clearing standing's injury bar. *See Degelmann v. Advanced Med. Optics Inc.*,

659 F.3d 835, 840 (9th Cir. 2011) ("[P]laintiffs] presented evidence that they were deceived into purchasing a product that did not disinfect as well as it represented. Had the product been labeled accurately, they would not have been willing to pay as much for it as they did, or would have refused to purchase the product altogether. The district court's reasoning – that class members would have bought other contact lens solution, and therefore suffered no economic harm – conceived of injury in fact too narrowly."); *Ross v. Sioux Honey Ass'n, Co-op.*, No. C-12-1645 EMC, 2013 WL 146367, at *6 (N.D. Cal. Jan. 14, 2013) (where plaintiff filed class action alleging that product label misled consumers into purchasing a product they might otherwise not have purchased, court concluded that economic harm was established for standing purposes); *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 890 (Cal. 2011)) ("For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately. This economic harm – the loss of real dollars from a consumer's pocket – is the same whether or not a court might objectively view the products as functionally equivalent.").

Plaintiffs likewise satisfy the causation and redressability elements of standing. As to causation, plaintiffs state that their economic injuries (here, the out-of-pocket cost of purchasing Ester-C as opposed to another brand) are fairly traceable to the alleged misrepresentations on Ester-C's packaging, as plaintiffs state that they would not have purchased Ester-C's products "had [they] known the truth that the statements

[they] relied on were false, misleading, deceptive, and unfair . . . ." (FAC ¶¶ 9, 10.) As to redressability, plaintiffs seek "to put an end to [d]efendants' deceptive marketing of Ester-C and to provide consumers with monetary relief for [d]efendants' deceptive conduct." (*Id.* ¶ 6.) This is sufficient for purposes of Article III standing.

Although defendants argue that plaintiffs cannot demonstrate that they have standing because plaintiffs do not clarify which products they purchased or which product representations, if any, they read or actually relied upon, this contention is countered by the express language of the complaint. Plaintiffs state that they purchased Ester-C (*id.* ¶¶ 9 & 10), they note the different types of Ester-C products available for consumer purchase (*id.* ¶ 16), and they list several examples of the types of Ester-C product representations that plaintiffs assert they relied upon in making their purchases (*id.* ¶¶ 9-10, 17-25). Defendants' call for greater specificity here better falls to their challenges on Rule 9(b) grounds, not to their arguments as to standing. *See Kwikset*, 246 P.3d at 890 (stating "a consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement . . . by alleging . . . that he or she would not have bought the product but for the misrepresentation").

In short, plaintiffs' allegations in the FAC establish standing to sue. The Court now turns to defendants' arguments that the allegations in the FAC fail to satisfy Rule 8 and Rule 12(b)(6).

## 2. Pleading Burdens and the Reasonable Consumer

### a. Legal Standard

Rule 8 of the Federal Rules of Civil Procedure sets out the general pleading standard with which all pleadings must comply: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has fleshed out this statement further, noting that Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678; *id.* (rejecting under Rule 8 "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" (citations and internal quotation marks omitted)). That is, a complaint must contain "facial plausibility," present "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Twombly*, 550 U.S. at 555 (stating "[f]actual allegations must be enough to raise a right to relief above the speculative level").

Whereas Rule 8 governs pleadings at the outset of a case, Rule 12(b)(6) serves as a type of gatekeeper, preventing claims that fail to satisfy Rule 8's requisites from proceeding onward through the labyrinthine terrain of a case's progression to resolution. For this reason, a "[f]ailure to comply with Rule 8(a) may result in dismissal of a complaint . . . ." *Praseuth v. Werbe*, 99 F.3d 402, 408 (2d Cir. 1995). As noted earlier, for a complaint to survive the motion to dismiss stage, it "must contain sufficient factual matter, accepted as true," which effectively

"'state[s] a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### b. Application

The key issue embedded in defendants' argument in support of dismissal is whether plaintiffs, in pleading their claims of misrepresentation under California, Missouri, and New York consumer protection laws, in fact plead a lack of substantiation claim. In crafting their claims as to the alleged fraudulent nature of defendants' representations, plaintiffs' principal pleadings are that "[e]vidence . . . indicates that Ester-C is not any better than other Vitamin C supplements at providing Vitamin C to the body," and that "[d]efendants have no credible evidence that taking Ester-C will provide immune support or keep one from getting sick." (FAC ¶ 25.) In other words, plaintiffs argue that defendants' representations are misleading or false because defendants have no scientific evidence backing up their statements. As discussed below, lack-of-substantiation arguments have been found by many courts, including California courts, to be insufficient, on their own, to support a false or misleading advertising claim. In the instant case, however, the FAC goes beyond asserting a simple lack of substantiation claim, and also alleges that defendants made representations that are affirmatively false.

### i. Lack of Substantiation

#### 1) Overview of Relevant Case Law

Several courts have addressed the issue of a lack of substantiation claim raised in the context of a false advertising or misrepresentation argument. In particular, California courts have addressed claims of false advertising similar to those at issue in this case (*i.e.*, claims that a product's statements are false or misleading under California's Consumer Legal Remedies Act, ("CLRA"), False Advertising Law ("FAL"), and Unfair Competition Law ("UCL")), in which plaintiffs have rested their claims of fraud or misrepresentation on the grounds that a defendant's representations are false because they lack scientific support. These courts have held that where a plaintiff's claims of false advertising are, in fact, a lack of substantiation claim, this alleged lack of substantiation will not, standing alone, render any such statements false or misleading under the UCL, CLRA, or FAL. *See, e.g., Stanley v. Bayer Healthcare LLC*, No. 11cv862-IEG(BLM), 2012 WL 1132920, at *3-9 (S.D. Cal. Apr. 3, 2012) (addressing false advertising claims under, *inter alia*, CLRA and UCL, and granting defendant's summary judgment motion on grounds that plaintiff's false advertising claim was actually a lack of substantiation claim, and further, because plaintiff failed to show that any product statements were actually false or misleading); *Chavez v. Nestle USA, Inc.*, No. CV 09-9192-GW(CWX), 2011 WL 2150128, at *3-6 (C.D. Cal. May 19, 2011) (addressing false advertising claims under UCL and FAL, concluding that plaintiff actually asserted a lack of substantiation claim, and holding that plaintiffs failed to state a claim under UCL or FAL); *Fraker v. Bayer Corp.*, No. CV F 08-1564 AWI GSA, 2009 WL 5865687, at *6-10 (E.D. Cal. Oct. 6, 2009) (addressing false advertising claims under CLRA, UCL, and FAL, concluding that plaintiff's false advertising claim was based on a lack of substantiation theory, and holding that a false advertising claim cannot be based upon a lack of substantiation theory).

The Court finds these courts' analyses to be persuasive here. Because these holdings

are relevant to the Court's line of reasoning, it addresses this precedent in detail.

In the District Court for the Eastern District of California's *Fraker* decision, the court held that dismissal of plaintiff's claims under the FAL, UCL, and CLRA was warranted because plaintiff's allegations of false or misleading advertising were "essentially [an] attempt to shoehorn an allegation of violation of the Federal Trade Commission Act, 15 U.S.C. § 45 *et seq.* ("FTCA"), into a private cause of action." *Fraker*, 2009 WL 5865687, at *7. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). An FTCA claim lies "[w]here a company advertises that a product has certain attributes without making any specific claim as to the existence of any substantiation"; in such an instance, "the FTCA provides that the [Federal Trade Commission] may require that the manufacturer provide a reasonable basis for the advertising or cease and desist in making the unsubstantiated advertising claims." *Fraker*, 2009 WL 5865687, at *8. However, the express language of the statute vests remedial power in the Federal Trade Commission ("FTC"). *See* 15 U.S.C. § 45(a)(2).

Case law is clear that "private parties do not have standing to sue under the FTCA." *Manning Int'l Inc. v. Home Shopping Network, Inc.*, 152 F. Supp. 2d 432, 437 (S.D.N.Y. 2001); *see also Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981) (stating that "private litigants may not invoke the jurisdiction of the federal district courts by alleging that defendants engaged in business practices proscribed by § [45(a)(1)]"); *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973) ("The protection against unfair trade practices afforded by the Act vests initial remedial

power solely in the Federal Trade Commission."). Thus, because there is no private remedy for "unsubstantiated advertising," private litigants are limited to claims for false or misleading advertising, which require supporting factual bases for such allegations. *Fraker*, 2009 WL 5865687, at *8 ("To successfully allege a claim for false advertising, [p]laintiff has the burden to plead and prove facts that show that the claims that [d]efendant made in connection with product are false or misleading.").

In *Fraker*, the court determined that the plaintiff had failed to plead such facts where she only offered the government's prior complaint to the FTC, and the FTC's subsequent Order and Consent Decree (both issued against the defendant company in that case). *Id.* The court found this to be insufficient for purposes of showing "that the absence of substantiation of an advertising claim is, itself, falsity or somehow misleading. . . . If [p]laintiff is going to maintain an action against [d]efendant for false or misleading advertising, then [p]laintiff will be required to adduce evidence sufficient to present to a jury to show that [d]efendant's advertising claims with respect to Product are *actually false; not simply that they are not backed up by scientific evidence*." *Id.* (emphasis added). Accordingly, the district court dismissed plaintiff's claims for false or misleading advertising under California's FAL, UCL, and CLRA, granting leave to re-plead. *Id.* at *8-9, 10.

The District Court for the Central District of California held similarly in *Chavez*, 2011 WL 2150128. The court noted that, although plaintiffs had specified falsity and reliance in their pleadings, they had not provided an adequate factual basis from which the court might infer falsity. *Id.* at *4. The court concluded that plaintiffs'

allegations were, in essence, a lack of substantiation claim, and citing *Fraker*, that their allegations lacked the requisite factual support for purposes of surviving a motion to dismiss. *See id.* at *6 ("[L]ike the plaintiff in *Fraker*, Plaintiffs have offered no support for the contention that a lack of substantiation could render Defendant's claims misleading."); *id.* ("[I]t is not unreasonable to expect Plaintiffs to plead facts that show they would have some remote chance of prevailing at trial.").

Thus, the holdings of *Fraker* and *Chavez* are that, where a private litigant seeks to assert a false advertising claim under the UCL, FLA, or CLRA, he must set forth more than simply an allegation that a product's statements are not supported by credible science; rather, he must provide a sufficient factual basis in support of such a contention.

The District Court for the Southern District of California shed additional light on this issue of a plaintiff's pleading burden in the context of UCL, FLA, or CLRA allegations in its decision of *Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727-LAB-MDD, 2012 WL 5382218 at *2-3 (S.D. Cal. Nov. 1, 2012). The court addressed whether plaintiff's false advertising claims under California's UCL and CLRA "are really just 'lack of substantiation' claims." *Id.* at *1. The *Eckler* court stated that the majority of plaintiff's claims in that case alleged that the purported benefits of the contested product in that case (specifically, glucosamine, an alleged form of joint relief) were either unsubstantiated by Wal-Mart or had been disproved by the scientific community. *Id.* at *3. Notably, for purposes of this dispute, the court drew a critical distinction between these differing forms of allegations. Specifically, it stated:

There is a difference, intuitively, between a claim that has no evidentiary support one way or the other and a claim that's actually been disproved. In common usage, we might say that both are "unsubstantiated," but the caselaw (and common sense) imply that in the context of a false advertising lawsuit an "unsubstantiated" claim is only the former.

*Id.*

The *Eckler* court determined that because plaintiff "points to studies that allegedly debunk the purported benefits of glucosamine hydrochloride, she isn't just saying those benefits are unsubstantiated. She is saying they are positively false." *Id.* This, concluded the *Eckler* court, placed plaintiff's claims outside of the "lack of substantiation" category; therefore, if dismissal were going to be the fate of her claims, it would have to be on grounds of "deficien[cy] under Rules 8, 9(b), or 12(b)(6) of the Federal Rules of Civil Procedure." *Id.*

The *Eckler* court proceeded to examine plaintiff's pleadings and determined that because her UCL claim sounded in fraud, it was subject to Rule 9(b)'s heightened pleading standards. *Id.* at *5. On reviewing those studies which the plaintiff contended supported the false nature of the contested product's statements, the court concluded that such studies did not clear the heightened particularity bar. The problems with the studies that the court highlighted were twofold: (1) none of the studies referenced by plaintiff involved the disputed product, and (2) the studies to which plaintiff cited were all osteoarthritis studies, a condition that the disputed product did not represent itself as helping to alleviate or improve. *Id.*

at *6. The court also found as relevant the fact that the product contained a disclaimer expressly stating that it was not intended to "diagnose, treat, cure, or prevent any disease," and that the labeling described the product as one intended for "everyday wear and tear." *Id.* at *7 (internal quotation marks omitted). This language made clear that the product was intended for overall joint health, a proposition which plaintiff's studies did not call into question. *Id.* For these reasons, the court dismissed plaintiff's complaint.

Thus, *Eckler*, by virtue of plaintiff's pleadings in that case, went one step further than the *Fraker* or *Chavez* courts. Because the plaintiff in *Eckler* proffered studies supporting her contention that defendant's statements were not only unsupported by scientific evidence, but in fact, contrary to it, plaintiff's claims fell outside the "lack of substantiation" category, and a different legal analysis came into play, namely, sufficiency of the pleadings under Rules 8, 9(b), or 12(b)(6) of the Federal Rules of Civil Procedure.

California courts are not alone in their holding as to a plaintiff's misrepresentation claim – when grounded in a lack of substantiation argument – requiring something more than the simple assertion that there is no scientific evidence supporting a product's representations. For instance, in *Gredell v. Wyeth Labs, Inc.*, the Appellate Court of Illinois addressed a consumer class action against a drug company under the Illinois Consumer Fraud Act. 854 N.E.2d 752 (Ill. App. 2006). Plaintiffs alleged that defendant had fraudulently marketed and sold cough and cold medication as an expectorant and anesthetic in the absence of any supporting scientific evidence. *Id.* Tellingly, plaintiffs' only challenge (dismissed by the trial court) was limited to the fact that no scientific evidence supported defendants' representations. *See id.* at 756 ("Plaintiff did not claim that the drugs were ineffective. . . . Rather, his claim was that defendants violated the Act because they could not support their claim of the drugs' effectiveness with 'scientific' tests proving that effectiveness."). The court rejected plaintiffs' fraud-due-to-lack-of-substantiation argument, noting that "[m]erely because a fact is unsupported by clinical tests does not make it untrue." *Id.* at 754. The court, in essence, called upon plaintiffs to come forward with something more to establish a deceptive representation beyond a simple allegation of no supporting scientific evidence.

Similarly, the Seventh Circuit, in a class action case against manufacturers and marketers of over-the-counter and prescription strength forms of stomach acid relief, briefly touched upon the issue of lack of substantiation. *Bober v. Glaxco Wellcome PLC*, 246 F.3d 934, 939 (7th Cir. 2001). In that case, plaintiffs alleged that defendants had issued false and misleading information to consumers about the substitutability of two drugs in violation of Illinois's Consumer Fraud and Deceptive Business Practice Act. *Id.* at 936. The court noted that in order for a lack of substantiation claim to be deemed deceptive, the "comparative claim at issue [must] impl[y] that there is substantiation for the claim made." *Id.* at 939 n.2. The court concluded that any claim of deception on grounds of lacking scientific evidence failed because the contested product statements at issue did not imply substantiation for their claims as to two drugs' effectiveness. *Id.* Moreover, there was significant information available to consumers – via the products' packaging information, web page, and even the contested product statements – providing

13

accurate information as to the two drugs' effectiveness, thereby dispelling "any tendency to deceive that the statements at issue might otherwise have had." *Id.* at 939. Thus, the Seventh Circuit, similar to the prior reviewed precedents, called upon plaintiffs to bring forth more than a claim of deception based solely on a lack of scientific evidence.

Lastly, the Third Circuit, in *Franulovic v. Coca-Cola Co.*, 390 F. App'x 125 (3d Cir. 2010), similarly held that plaintiffs had failed to sufficiently show fraud on the part of defendants where plaintiffs grounded their claims in a lack of substantiation theory. In *Franulovic*, plaintiffs brought suit alleging that Coca-Cola had engaged in deceptive marketing. *Id.* at 126. The Third Circuit found that summary judgment was properly granted to defendant because defendant "advertised Enviga as a calorie-burning drink based on the results of a short-term scientific study," *id.*, and plaintiffs did not offer information or studies disputing or otherwise controverting such representations, *id.* at 127.

As these cases correctly explain, where a party asserts fraudulent misrepresentation based on a lack of substantiation, that party must allege sufficient facts from which a court may infer deception. In other words, the simple allegation that a given statement is unsubstantiated or unsupported by scientific evidence, standing alone, will not be enough for purposes of showing a deceptive or fraudulent representation.

## 2) Analysis

With this framework in mind, the Court returns to the pleadings of this case, remaining mindful that the common issue with respect to plaintiffs' claims is whether there is a plausible claim that a reasonable consumer could have been misled by defendants' labeling, packaging, and marketing.

Defendants are correct that plaintiffs, at first blush, seem to be bringing a lack of substantiation claim, as they allege that defendants' marketing of Ester-C is unsupported by credible evidence. (*See* FAC ¶¶ 4, 25.) However, plaintiffs do not rest on this claim alone; rather, they go several steps further, thereby removing their claims from the lack of substantiation sphere and into the affirmative misrepresentation realm.

Specifically, plaintiffs cite to a study conducted by the Linus Pauling Institute at Oregon State University, which allegedly suggests that Ester-C is not any better at providing vitamin C to the body than other vitamin C supplements on the market. (FAC ¶ 25 n.1 (stating "Ester-C contains mainly calcium ascorbate, but also contains small amounts of the vitamin C metabolites dehydroascorbate (oxidized ascorbic acid), calcium threonate, and trace levels of xylonite and lyxonate," and acknowledging that while "the metabolites are supposed to increase the bioavailability of vitamin C, the only published study in humans addressing this issue found no difference between Ester-C and commercially available ascorbic acid tablets with respect to the absorption and urinary excretion of vitamin C"); Pls.' Opp'n to Defs.' Mot. to Dismiss at 2 & n.1 (same).)[7] Given that Ester-C markets itself

---

[7] Plaintiffs also state in their opposition to defendants' motion that "[o]ther studies exist that demonstrate that Ester-C cannot perform as advertise[d], and can be added to an amended complaint, if this court deems amendment necessary." (Pls. Opp'n Mot. to Defs' Mot. to Dismiss at 2 n.1.) As plaintiffs do not provide the Court with any such studies in their complaint, these alleged studies are beyond the scope of the present motion. The Court does not factor any such

as "the Better Vitamin C" and the "#1 Pharmacist Recommended Brand," a study suggesting that Ester-C is not a superior source of vitamin C supplementation to the body than other market brands would, indeed, call into question defendants' representations.

Moreover, the study's cited conclusion, *i.e.*, that Ester-C is no better at increasing the bioavailability of vitamin C in humans than other commercially available tablets, disputes several marketing statements present on Ester-C's website, which plaintiffs cite to and incorporate by reference in their complaint. Regarding the issue of vitamin C absorption, the website explicitly states:

> Ester-C Calcium Ascorbate is a unique and patented form of vitamin C. It is made using a proprietary, water-based manufacturing process which results in a pH neutral product that contains naturally occurring vitamin C metabolites. These metabolites activate the vitamin C molecules making it easier for the body to transport them from cell to cell for numerous health benefits.

(*Id.* ¶ 21 (quoting http://www.ester-c.com/Benefits.htm).) Plaintiffs' study, on the other hand, contends that Ester-C's allegedly unique metabolites, which supposedly "increase the bioavailability of vitamin C," do not actually do so any better than other market brands. (*Id.* ¶ 25 & n.1.) Thus, plaintiffs are not simply stating that defendants have no credible science backing up their claims. Instead, they are affirmatively claiming that defendants' representations are positively false. *See Eckler*, 2012 WL 5382218, at *3 (drawing

additional studies into its analysis.

distinction between a lack of substantiation claim and an affirmative misrepresentation claim).

There are more allegations, though, that make clear that plaintiffs' asserted claims are not simply based upon a lack of substantiation. In particular, plaintiffs' allegation that defendants have no credible scientific evidence backing up their representations is relevant in this case because Ester-C's website expressly states that there is clinical research supporting its products. For instance, in Ester-C's "Ask an Expert" section of its website, the website's "expert" states he "take[s] an Ester-C tablet daily, all year long, because it is gentler on the stomach *and because of all the clinical research that supports the use of this product*." (FAC ¶ 20 (quoting http://www.ester-c.com/FAQ.htm).)

In light of defendants' alleged representations of scientific backing to its claims of providing superior vitamin C bioavailability, plaintiffs' asserted scientific study – asserting that Ester-C is *not*, in fact, any better than other vitamin-C brands on the market in administering vitamin C to and increasing the body's absorption of the same – is sufficient to state a plausible claim of affirmative misrepresentation. *Cf. Gredell*, 854 N.E.2d at 756 (stating that a "[l]ack of substantiation is deceptive only when the claim at issue implies there is substantiation for that claim, *i.e.*, if defendants had claimed something along the lines of 'tests show that [a product] is effective for [a given ailment],' or '[X product] is more effective for [a given ailment] than [Y product]'"); *Bober*, 246 F.3d at 939 n.2 (stating "a lack of substantiation is deceptive only when the comparative claim at issue implies that there is substantiation for the claim made").

This case is distinguishable from *Eckler*, in which plaintiff's proffered studies did not involve the disputed product, and moreover, targeted the narrower proposition that the contested product's main ingredient did not help with osteoarthritis (contrary to the product's representation that it helped target overall joint health), contributing to dismissal of plaintiffs' claims. *See Eckler*, 2012 WL 5382218, at *5-6. In contrast, here, plaintiffs' study involves Ester-C and specifically concerns Ester-C's vitamin C bioavailability qualities. Moreover, plaintiffs assert that Ester-C's marketing suggests (both explicitly and implicitly) that Ester-C is superior to other brands on the market, with statements such as:

> "Ester-C: The Better Vitamin C"

> "#1 Pharmacist Recommended Brand"

> "Ester-C is a patented ingredient that is absorbed in your body and provides advanced, active immune support. Ester-C, along with naturally occurring metabolites, works synergistically to enhance the absorption and retention of Vitamin C in your body."

> "Enhanced absorption"

> "There is nothing like the immune support of our patented Ester-C formula. As a unique form of Vitamin C, Ester-C is well retained, providing immune system support."

> "There's nothing like the immune support of patented Ester-C. As a unique form of Vitamin C, Ester-C absorbs quickly and stays there, providing immune system support."

(Product Labels, Ex. A.)

As to the study relied upon by plaintiffs, defendants counter that this study is not problematic because "the absorption study dates from 1994, does not involve a formulation of Ester-C on the market at any time during the proposed class period, and does not relate to any claim upon which Plaintiffs allegedly relied." (Defs.' Mot. to Dismiss at 4 n.5.) As a threshold matter, the fact that the study is older does not mean its findings are, by virtue of their age, necessarily incorrect, inconclusive, or irrelevant. Certainly, this type of determination cannot be made at the motion to dismiss stage. Second, although it is not clear what formulation of Ester-C the cited 1994 study addresses, there is nothing in the FAC to suggest that Ester-C's ingredients, components, or qualities have significantly changed over the years such that this study may be deemed completely inapposite. In fact, a simple examination of Ester-C's labels reveals that Ester-C is mainly composed of calcium ascorbate and vitamin C metabolites, two of the same ingredients addressed in plaintiffs' referenced study. (Product Labels, Ex. A.) In short, issues concerning the weight that should be given to this study cannot be resolved on a motion to dismiss.

Additionally, based upon the allegations in the FAC, the Court fails to see how plaintiffs' study does not "relate to any claim upon which Plaintiffs allegedly relied." (Defs. Mot. to Dismiss at 4 n.5.) Plaintiffs assert that they relied on Ester-C's various product representations, made via its packaging, labeling, and marketing, all of which state, to some degree, that Ester-C is better at providing vitamin C to the body than other products. Plaintiffs' study disputes this representation, asserting that there is no difference between Ester-C and other commercial products "with respect to the absorption and urinary excretion of

vitamin C." (FAC ¶ 25 n.1.) To the Court's reading, this certainly "relates to" plaintiffs' claims here. Defendants' contention that this is not sufficient for purposes of establishing relation – at the motion to dismiss stage – because the study solely pertains to absorption and urinary excretion, as opposed to efficacy, is unpersuasive. (Defs.' Reply Mem. at 5-6.) Ester-C's label specifically includes such language as, "Enhanced *Absorption*," "Ester-C is a patented ingredient that is *absorbed* in your body and provides advanced, active immune system support," and "Ester-C, along with naturally occurring metabolites, works synergistically *to enhance the absorption and retention* of vitamins in your body." (Product Labels, Ex. A.) Thus, the 1994 study's findings regarding absorption indeed "relate to" plaintiffs' claims and to Ester-C's explicit labeling.

Next, defendants direct the Court's attention to another asserted flaw in plaintiffs' pleading, namely, plaintiffs' references to FTC settlements in cases involving similar (although not identical) products. Defendants argue that such settlements are not relevant because "FTC consent decrees do not constitute legal determinations of falsity," and because the cited decrees involve "different products making different claims." (Defs.' Mot. to Dismiss at 9.)

The FTC decrees to which plaintiffs cite involve such products as Airborne Health Inc. ("Airborne"), Rite-Aid's "Germ Defense," CVS's "AirShield," and Walgreens' "Wal-Born." (FAC ¶¶ 26.) The FTC's decrees for the respective products required retailers to cease making misleading claims that their dietary supplements could prevent colds, fight germs, and boost immune systems. *See, e.g.*, Federal Trade Commission, "Walgreens

Will Pay Nearly $6 Million to Settle FTC Deceptive Advertising Charges," http://www.ftc.gov/opa/2010/03/walgreens.s htm (hereinafter "Wal-born FTC Decree"); Federal Trade Commission, "CVS to Pay Nearly $2.8 Million in Consumer Refunds to Settle FTC Charges of Unsubstantiated Advertising of AirShield 'Immune Boosting' Supplement," http://www.ftc.gov/opa/2009/09/cvs.shtm (hereinafter "Airshield FTC Decree"); Airborne FTC Decree, http://www.ftc.gov/opa/2008/08/airborne.sht m; Federal Trade Commission, "Rite Aid to Pay $500,000 in Consumer Refunds to Settle FTC Charges of False and Deceptive Advertising," http://www.ftc.gov/opa/2009/07/riteaide.sht m (hereinafter "Rite-Aid FTC Decree"). In reviewing these decrees, it seems clear that the FTC targeted these particular products because of their representations that, through their immune-boosting properties, they served as a cold and/or flu prevention and treatment remedy.

Defendants try to isolate Ester-C from these other products, claiming that these FTC decrees concerned products making "disease prevention claims," in contrast to Ester-C, the packaging of which "does not contain any reference to colds, cough, or flu." (Defs.' Mot. to Dismiss at 10; *see also id.* ("Plaintiffs cannot cite to a single statement on any Ester-C packaging relating to the prevention of cold or flu or to symptom mitigation.").) Plaintiffs counter that, although Ester-C's labeling might not expressly state that it is a form of cold or flu prevention or treatment, its labeling is not devoid of such references, either. For instance, underneath its image of a clock with circling arrows, implying "around-the-clock" immune support, Ester-C's label states: "Ester-C provides your body with the immune and antioxidant support it needs to

help keep you healthy and strong *during times of seasonal change* and the stresses of daily living." (Product Labels, Ex. A (emphasis added).) Plaintiffs contend that a reasonable consumer reading such language – contained on a label already emphasizing Ester-C's patented, "better" vitamin C formula that offers both antioxidant and immune system support – could fairly interpret such language as signifying that Ester-C will help prevent colds or flu, illnesses typically associated with seasonal changes. Construing these allegations most favorably to plaintiffs, these issues, including how a reasonable consumer would construe Ester-C's product statements, cannot be resolved at the motion to dismiss stage. Moreover, this Court need not consider whether the FTC decrees have any probative value to the claims in this case at the motion to dismiss stage because, even assuming that the FTC decrees do not have such probative value, plaintiffs have articulated a plausible claim based upon the other allegations in the FAC (set forth above) that survives a motion to dismiss.

Finally, defendants argue that no reasonable consumer could mistake Ester-C for a disease prevention product because "the only reference to disease on the packaging is contained in the disclaimer, which clearly states: 'This product is not intended to diagnose, cure, treat or prevent any disease.'" (Defs.' Mot. to Dismiss at 10 (quoting Product Labels, Ex. A).) First, it is true that there is a disclaimer on the package containing the above-referenced language. It is also true that the disclaimer is preceded by an asterisk, and this asterisk appears after several of the statements on Ester-C's packaging, including after such statements as "immune system support," "antioxidant support," "B Vitamins to Boost Energy Metabolism," to name only a few. (Product Labels, Ex. A.)

However, in determining whether a product's label or packaging is misleading, one must examine a disclaimer or accurate information on the product in the context of the allegedly misleading statements. For example, a similar issue was addressed in *Coca-Cola v. Ackerman*, No. CV-09-0395(JG)(RML), 2010 WL 2925955 (E.D.N.Y. July 21, 2010), in the context of vitaminwater's labeling. In that case, a class of plaintiffs asserted violations under California, New Jersey, and New York consumer protection laws, alleging, among other issues, that vitaminwater's labeling and marketing was misleading because it "bombard[ed]" consumers with the product's supposed benefits while drawing consumers' attention away from the product's significant sugar content. *Id.* at *6. Upon careful consideration of the different product statements alleged to be misleading by the plaintiffs in that action, the court concluded that a reasonable consumer could have been misled by the product's labeling: "[t]he fact that the actual sugar content of vitaminwater was accurately stated in an FDA-mandated label on the product does not eliminate the possibility that reasonable consumers may be misled." *Id.* at *16.

The court noted as relevant a Ninth Circuit decision, in which that court addressed the issue of allegedly deceptive labeling in the context of Gerber's "Fruit Juice Snacks." *Id.* (citing and dicussing *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)). In the *Gerber Products* decision, the district court had granted defendants' motion to dismiss on the grounds that no reasonable consumer could have been misled by the fruit snacks' representations because its ingredients were identified on the FDA-mandated panel. *Gerber Prods.*, 552 F.3d at 939-40. The Ninth Circuit, however, reversed on the grounds that the presence of the FDA-

mandated nutritional panel (providing accurate nutritional information) did not erase the possibility that a reasonable consumer could be misled. In doing, the Ninth Circuit explained:

> Reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box . . . We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misrepresentations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Id.*; *see also Potler v. MCP Facilities Corp.*, 471 F. Supp. 1344, 1351 (E.D.N.Y. 1979) (deeming a disclaimer inoperative where a product's express warranties could not reasonably be construed consistently with the disclaimer's language).

At this early stage of the litigation, it cannot be determined whether a disclaimer on the back of Ester-C's products, stating that it is "not intended to diagnose, treat, or prevent any disease," eliminates the possibility of a reasonable consumer being misled into thinking that Ester-C's claims of being the "Better Vitamin C" that "provides advanced, active immune system support" and "antioxidant support" to "help keep you healthy and strong during times of seasonal change" signified a cold or flu prevention product. Indeed, plaintiffs buttress their position on this issue by pointing in the FAC

to various prominent retailers' marketing of Ester-C:

> 22. . . . . Walmart's website marketing Ester-C states as follows:
>
> > Stay healthy with the Ester-C The Better Vitamin C Supplement Tablets.
> >
> > \* \* \*
> >
> > The Ester-C vitamin C 1000mg tablets also offer 24 hour immunity from day to day ailments like flu and fever.
>
> \* \* \*
>
> 24. An advertisement on Amazon.com for "Ester-C 24 Hour Immune Support 500mg" states as follows:
>
> > 24 hour immune protection. [E]ster-C gives you powerful immune system support. [E]ster-C provides your body with the antioxidant protection it needs to help keep you healthy and strong.

(FAC. ¶ 22, ¶ 24.)[8] Plaintiffs assert that these marketing representations further support their position because they demonstrate that even retailers interpret the product as being a cold and flu prevention product.

In sum, the Court concludes that plaintiffs are not bringing a stand-alone lack of substantiation claim. Instead, in the FAC, plaintiffs reference scientific evidence which

---

[8] Defendants made clear at oral argument that these marketing representations were made independent of Ester-C Co. and were not approved by the Company. (Oral Arg. Oct. 23, 2012.)

they assert establishes the fraudulent nature of defendants' representations. Accepting the allegations as true, and drawing all reasonable inferences in plaintiffs' favor, the Court concludes that plaintiffs have articulated a plausible claim that a reasonable consumer could be misled into believing that Ester-C's products may help in preventing or shortening the duration of colds or flu. *Cf. Ackerman*, 2010 WL 2925955, at *15 ("The plaintiffs have sufficiently alleged that the collective effect of the challenged statements was to mislead a reasonable consumer into believing that vitaminwater is either composed solely of vitamins and water, or that it is a beneficial source of nutrients."). Of course, defendants may raise these issues again, if they wish, at the summary judgment stage once plaintiffs have had the opportunity to fully develop their claims through the discovery process.

The Court now proceeds to plaintiffs' specific allegations of misrepresentation under several states' laws, and considers whether plaintiffs' claims pass muster under Rule 9(b)'s heightened pleading requirements.

### B. Review of the Pleadings in the Context of Plaintiffs' State Law Claims

#### 1. California Law

##### a. Applicability of Federal Rule of Civil Procedure 9(b)

The parties do not dispute that Rule 9(b)'s heightened pleading standard is applicable to plaintiffs' California claims, nor could they, for that matter, as plaintiffs' claims of false advertising and unfair, unlawful, or deceptive business practices sound in fraud. (*See* FAC ¶¶ 1-4, 9-10, 55, 56, 58, 62, 70, 71, 73, 74); *see Kearns v.*

*Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("Rule 9(b)'s particularity requirement applies to [California's consumer protection statutes'] state-law causes of action."). As set forth in greater detail *infra* as to each consumer fraud claim, plaintiffs here have sufficiently pled their false and misleading claims under California law with the requisite particularity. *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (stating allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute fraud charged so that they can defend against the charge and not just deny that they have done anything wrong"). That is, plaintiffs adequately provide the "'who, what, when, where, and how'" of the alleged fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

In brief (and echoed in the Court's analysis of each California claim), plaintiffs clearly identify themselves, defendants, and the contested products at issue (FAC ¶¶ 1, 9-10, 11-14, 16); they identify the specific representations made via the product's packaging, labeling, and marketing that are allegedly misleading (*id.* ¶¶ 2-3, 16-21); they identify where the allegedly fraudulent statements were made, namely, at particular retail stores (including a Walgreens in St. Louis, Missouri and a Ralphs and a Whole Foods stores in Los Angeles, California for the respective class representatives) and on certain sections of the website (*id.* ¶¶ 2-3, 9-10, 16-21); they clarify the time period at issue, including the specific times when Hodjat and Hughes purchased Ester-C (*id.* ¶¶ 1, 9-10); they assert how defendants' representations are deceptive, alleging they "convey to the consumer that, by taking Ester-C, his or her immune system will be aided in protecting the consumer from

illness" (*id.* ¶ 25); and, lastly, plaintiffs allege why defendants' statements are fraudulent, namely, because their representations are "wholly unsupported by scientific evidence" and contradicted by other scientific studies (*id.* ¶¶ 4, 25 & n.1).

### b. Violation of California's Consumers Legal Remedies Act

California's CLRA prohibits specified "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." *See* Cal. Civ. Code, § 1770(a). Practices expressly prohibited by the CLRA include, *inter alia*, "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have," *id.* § 1770(a)(5), "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," *id.* § 1770(a)(7), and "[a]dvertising goods or services with intent not to sell them as advertised," *id.* § 1770(a)(9). Section 1760 makes clear that the CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.* § 1760.

The Court concludes that plaintiffs have adequately pled a violation of the CLRA here. The FAC provides a detailed list of the representations that plaintiffs challenge. (FAC ¶¶ 16-21.) Additionally, the FAC sets forth the specific sections of the CLRA that plaintiffs contend defendants violated (*id.* ¶¶ 52, 57), along with a statement of how defendants violated such sections (*id.* ¶¶ 2-4,

25, 55-57). Plaintiffs also allege that they are "consumers" under Section 1761(d), as they purchased Ester-C for personal, family, or household purposes. (*Id.* ¶ 53); *see also* Cal. Civ. Code § 1761(d) (defining "consumer" as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes"). Similarly, plaintiffs state that they engaged in "transactions" under the statute. (FAC ¶ 54); *see also* Cal. Civ. Code § 1761(e) (defining "transaction" as "an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement"). These allegations are more than sufficient to survive dismissal at this stage.

### c. Violation of California's False Advertising Law

Section 17500 of California's False Advertising Law ("FAL") of the California Business and Professions Code prohibits the dissemination in any advertising medium of any "statement" concerning "real or personal property" offered for sale, "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. An FAL-based claim may concern "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Ackerman*, 2010 WL 2925955, at *18 (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002)) (internal quotation marks omitted).

In pleading a false advertising claim, a plaintiff's claims are governed by the "reasonable consumer" test, *i.e.*, plaintiff

must show that "members of the public are likely to be deceived." *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 905 (N.D. Cal. 2011) (citation and internal quotation marks omitted); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (noting applicability of "reasonable consumer" test when addressing false advertising claim under Section 17500 of California's Business and Professions Code); *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) ("[B]y explicitly imposing a 'reasonable care' standard on advertisers, § 17500 impliedly adopts such a standard for consumers as well: unless particularly gullible consumers are targeted, a reasonable person may expect others to behave reasonably as well."); *In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal. 2009) ("[T]o state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." (citation and internal quotation marks omitted)). To successfully plead such a claim, a plaintiff must allege "(1) statements in the advertising are untrue or misleading, and (2) defendant knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading." *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1088 (E.D. Cal. 2009).

Plaintiffs allege that defendants made several false and misleading statements via their product labeling, website, and overall marketing, creating the reasonable expectation in consumers that Ester-C provides better vitamin absorption than other brands, and that Ester-C is a form of immune system support capable of protecting consumers from illness. Plaintiffs additionally allege that such false and deceptive representations enticed consumers

into purchasing Ester-C's products. Plaintiffs state that defendants knew their statements were false at the time they made them, and that plaintiffs relied on these statements when purchasing the different forms of the products. Thus, plaintiffs have satisfied their pleading burden as to their FAL claim.

### d. Violation of California's Unfair Competition Law

Notably, a "violation of the False Advertising Law necessarily violates California's Unfair Competition Law." *Parino*, 838 F. Supp. 2d at 905 (citing *Gerber Prods.*, 552 F.3d at 938). Section 17200 defines "unfair competition" as including "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. Prof. Code § 17200. Because plaintiffs have pled sufficient facts to state a claim under California's FAL, they likewise have done so under California's UCL. *See, e.g.*, *Parino*, 838 F. Supp. 2d at 905-06 (holding that because plaintiff sufficiently pled her FAL claim, she also pled enough to establish a UCL claim); *Ackerman*, 2010 WL 2925955, at *18 ("[V]iolations of California's False Advertising Law constitute 'unlawful' conduct for the purposes of the UCL."); *Kasky*, 45 P.3d at 249 (recognizing that Section 17200, Cal. Bus. & Prof. Code, defines unfair competition to include any act prohibited by California's FAL).

In an abundance of caution, the Court addresses each prong pursuant to which plaintiff attempts to state a cause of action under the UCL, namely, (1) unlawful

conduct, (2) fraudulent conduct, and (3) unfair conduct. (FAC ¶¶ 65-77.) The Court bears in mind that the issue of "[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer." *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1116 (S.D. Cal. 2011).

### i. Unlawful Practice

An "unlawful" practice is one "forbidden by law, be [it] civil or criminal, federal, state, or municipal, statutory, regulation, or court-made." *VP Racing Fuels*, 2010 WL 1611398, at *4 (quoting *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994)). A plaintiff stating a cause of action based on an "unlawful" business act or practice under the UCL "must allege facts sufficient to show a violation of some underlying law." *Id.* Plaintiffs here plead sufficient facts to show violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), and violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*, as set forth *supra*.[9]

These allegations are sufficiently detailed to satisfy the UCL's "unlawful" prong.

### ii. Fraudulent Act

The term "fraudulent," as used in the UCL, "does not refer to the common law tort of fraud." *See Capitol Records, Inc. v. MP3tunes, LLC*, 611 F. Supp. 2d 342, 348 (S.D.N.Y. 2009) ("Fraudulent as used in § 17200 [of the UCL] does not refer to the common law tort of fraud but only requires a showing [that] members of the public are likely to be deceived." (quoting *Express, LLC v. Fetish Grp., Inc.*, 464 F. Supp. 2d 965, 980 (C.D. Cal. 2006))). Thus, for a business act or practice to be deemed "fraudulent" under the UCL, a plaintiff must allege that "consumers are likely to be deceived by the defendant's conduct." *VP Racing Fuels*, 673 F. Supp. 2d at 1087; *see also Ackerman*, 2010 WL 2925955, at *21 ("To prevail, a plaintiff must produce evidence showing a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025-26 (9th Cir. 2008)) (internal quotation marks omitted)).

Plaintiffs state that defendants' "misleading marketing, advertising, packaging, and labeling of Ester-C is likely to deceive reasonable customers." (FAC ¶ 71.) Plaintiffs identify defendants, as well as their respective principal places of business. (*Id.* ¶¶ 11-14.) Plaintiffs also allege where and when they purchased the Ester-C products (*id.* ¶¶ 9-10); expressly identify the different forms of Ester-C products available for purchase (*id.* ¶ 16); and explicitly identify a number of the statements on Ester-C's labeling, packaging, and marketing that plaintiffs allege create a misleading representation (*id.* ¶¶ 2-3, 17-

---

[9] Plaintiffs also contend that defendants have violated the "unlawful conduct" prong of the UCL through violations of California's Sherman Law, Cal. Health & Safety Code, § 109875, *et seq.* (FAC ¶¶ 68-69.) Because plaintiffs have adequately pled a violation of the "unlawful conduct" prong through their pleadings of violations of California's FAL and CLRA, the Court need not address whether plaintiffs also violated the UCL's proscription against unlawful conduct due to alleged violations of the Sherman Law. *See Ackerman*, 2010 WL 2925955, at *18 n.33 (not addressing plaintiff's alternative allegation of an "unlawful conduct" violation under the UCL through violations of California's Sherman Law because plaintiffs already had sufficiently pled a violation of the same prong through their allegations of violations of California's FAL).

21). Plaintiffs assert that they relied on such representations, and make clear that they would not have purchased such products had it not been for the identified statements' health benefit representations. (*Id.* ¶¶ 9-10, 71.) Plaintiffs allege that a reasonable consumer will understand Ester-C's marketing and packaging to mean that "his or her immune system will be aided in protecting the consumer from illness" (*id.* ¶ 25), and that "[d]efendants have not been truthful regarding what their Ester-C [p]roducts 'can and cannot do'" (*id.* ¶ 28).

Thus, plaintiffs sufficiently state a cause of action under the "fraudulent" prong of the UCL.

### iii.    Unfair Act

A business act or practice is "unfair" where it "'threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to a violation of the law, or that otherwise significantly threatens or harms competition.'" *VP Racing Fuels*, 673 F. Supp. 2d at 1086-87 (quoting *Cel-Tech Commcn's., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999)). For purposes of a claim under the UCL, a business practice is "unfair" "when it 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Ackerman*, 2010 WL 2925955, at *20 (quoting *Wilner v. Sunset Life Ins. Co.*, 78 Cal. App. 4th 952, 965 (Ct. App. 2000)). For a plaintiff to successfully plead an "unfair" business act or practice, he must "allege facts showing the 'unfair' nature of the conduct and that the harm caused by the conduct outweighs any benefits that the conduct may have." *VP Racing Fuels*, 673 F. Supp. 2d at 1087; *see also In re Ferrero Litig.*, 794 F. Supp. 2d at 1117 ("California

courts define an unfair business practice as either a practice that undermines a legislatively declared policy or threatens competition, or a practice that has an impact on its alleged victim that outweighs the reasons, justifications, and motives of the alleged wrongdoer."). Generally, to prevail, a plaintiff must show that "the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006).

Here, plaintiffs allege that defendants "have profited enormously from their false advertising of Ester-C," charging consumers "a premium price of more than three times the cost of a comparable Vitamin C supplement." (FAC ¶ 29.) Plaintiffs further state that they "suffered a substantial injury by virtue of buying a product they would not have purchased absent [d]efendants' unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Ester-C." (*Id.* ¶ 73.) Plaintiffs also allege that "[t]here is no benefit to consumers or competition from deceptively marketing and labeling dietary supplements[,] [i]ndeed, the harm to consumers and competition is substantial." (*Id.* ¶ 74.) Lastly, plaintiffs state that they "had no way of reasonably knowing that the Ester-C they purchased was not as marketed, advertised, packaged, and labeled," and that defendants' "conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to" consumers. (*Id.* ¶¶ 75-76.) The Court finds these allegations of harm sufficient for purposes of stating a cause of action under the "unfair" prong of the UCL.

*     *     *

For these reasons, the Court finds that plaintiffs have sufficiently pled their claims of violations under the three asserted UCL prongs of unlawful, fraudulent, and unfair conduct.

### 2. Missouri Law

#### a. Applicability of Rule 9(b)

Plaintiffs assert a violation under Missouri's Merchandising Practices Act ("MMPA"). The MMPA prohibits the "act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise . . . ." Mo. Rev. Stat. § 407.020. Missouri courts consistently recognize that "'Rule 9(b)'s particularly requirements apply with equal force to state consumer fraud statutes as they do to common law fraud claims.'" *Khaliki v. Helzberg Diamond Shops, Inc.*, 11-CV-00010 (NKL), 2011 WL 1326660, at *2 (W.D. Mo. Apr. 6, 2011) (quoting *Courchene v. Citibank N.A.*, No. 06-4026-cv-C-NKL, 2006 WL 2192110, at *2 (W.D. Mo. Aug. 1, 2006)); *see also Blake v. Career Educ. Corp.*, No. 4:08cv00821 ERW, 2009 WL 140742, at *2 (E.D. Mo. Jan. 20, 2009) (citing cases). Thus, Rule 9(b) governs the applicable standard of pleading for plaintiff's claims under the MMPA. In order for their claims to survive dismissal under Missouri law, plaintiffs "must 'include such matters as the time, place, contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given thereby.'" *Blake*, 2009 WL 140742, at *2 (quoting *Commercial Prop. Invs. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)). Most basically described, "the complaint must identify the 'who, what, where, when, and how' of the alleged fraud.'" *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (quoting *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003)).

#### b. Missouri's Merchandising Practices Act

To state a claim for violation under the MMPA, "plaintiffs must allege that they (1) purchased a product sold or advertised by defendants; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by § 407.020." *Metcalf v. Lowe's Home Ctrs., Inc.*, 09-CV-14 (CAS), 2010 WL 1221855, at *2 (E.D. Mo. Mar. 30, 2010). Plaintiffs adequately do so.

Plaintiffs' pleadings establish that they purchased defendants' products for personal, family, or household purposes. (*See* FAC ¶¶ 9, 10, 53.)[10] Plaintiffs likewise affirm throughout the FAC that they suffered ascertainable losses of money and/or property "by paying more for the Product than they would have and/or by purchasing the Product when they would not have if the horsepower of the Product had not been

---

[10] Although plaintiffs' only express statement of purchasing Ester-C for personal, family, or household use is contained in their pleadings as to violations of California's CLRA (*see* FAC ¶ 53), given the strong similarities across plaintiffs' pleadings, this is sufficient for purposes of establishing that plaintiffs' purchase here, whether under California, Missouri, or New York law, was for personal, family, or household use. The Court accordingly will overlook the absence of this statement from plaintiffs' Missouri-specific pleadings.

misrepresented." (*Id.* ¶ 49; *see also id.* ¶¶ 9-10, 29.) Lastly, plaintiffs adequately plead an unlawful act under Section 407.020, pointing to specific language contained in defendants' labeling, packaging, and marketing upon which plaintiffs relied in purchasing Ester-C (*see id.* ¶¶ 16-21), stating why such language is deceptive (*see id.* ¶¶ 4, 25 & n.1, 47-48), and stating the harm suffered on account of such misrepresentations (*id.* ¶¶ 9-10, 29, 49).

Plaintiffs' allegations satisfy Rule 9(b)'s particularity requisites. Plaintiffs state the following facts regarding the "who, what, where, when, and how" of the asserted fraud under Missouri law. Hughes alleges that he is a citizen of Washington County, Illinois who purchased Ester-C from a Walgreens in St. Louis, Missouri, in approximately March 2010. (FAC ¶ 9.) Hodjat states that she is a citizen of Los Angeles County, California who purchased Ester-C from Ralphs and Whole Foods stores on several occasions in 2011. (*Id.* ¶ 10.) Plaintiffs identify Ester-C Company, NBTY, Inc. and NatureSmart LLC as defendants (*id.* ¶ 11-14), and specify the particular forms of Ester-C available for consumer purchase (*id.* ¶ 16). Plaintiffs also identify the particular representations made by defendants alleged to be false (*id.* ¶¶ 2-3, 16-21), and why and how defendants' misrepresentations deceive consumers (*id.* ¶¶ 9-10, 25 & n.1). For these reasons, plaintiffs have pled their Missouri claims with sufficient particularity. *See Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982).

\*      \*      \*

Accordingly, dismissal of plaintiffs' claims under the MMPA is not warranted.

### 3. New York Law

#### a. Applicability of Rule 9(b)

Rule 9(b)'s particularity requirements also apply to plaintiffs' claims under New York common law, namely, unjust enrichment, *Sgaliordich v. Lloyd's Asset Mgmt.*, 10-CV-03669(ERK), 2012 WL 4327283, at \*5 (E.D.N.Y. Sept. 20, 2012) (noting that a claim of unjust enrichment "must be pled with specificity when the underlying acts are allegedly fraudulent" (quoting *Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 288 (E.D.N.Y. 2010))); *Welch v. TD Ameritrade Holding Corp.*, No. 07-CV-6904(RJS), 2009 WL 2356131, at \*21 (S.D.N.Y. July 27, 2009) (holding that Rule 9(b) applied to unjust enrichment claim premised on alleged fraudulent acts), intentional misrepresentation, *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44-45 (2d Cir. 1991) (noting Rule 9(b)'s applicability to an intentional misrepresentation claim); *Apex Maritime Co. v. OHM Enters., Inc.*, No. 10-Civ-8119(SAS), 2011 WL 1226377, at \*2 (S.D.N.Y. 2011) (same), and negligent misrepresentation, *Watson v. Riptide Worldwide, Inc.*, No. 11 Civ. 0874(PAC), 2013 WL 417372, at \*4 (S.D.N.Y. 2013) ("Negligent misrepresentation is a type of fraud and, as such, is subject to Rule 9(b)'s heightened pleading standard." (citations and internal quotation marks omitted)).

#### b. Unjust Enrichment

To prevail on a claim for unjust enrichment in New York, a plaintiff must establish: "(1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendant[] to make restitution." *Intellectual Capital Partner v. Institutional Credit*

*Partners LLC*, No. 08 Civ 10580(DC), 2009 WL 1974392, at *8 (S.D.N.Y. July 8, 2009). Under New York law, unjust enrichment does not require a direct relationship between the parties. *See In re Canon Cameras Litig.*, No. 05 Civ. 7233 (JSR), 2006 WL 1751245, at *2 (S.D.N.Y. June 23, 2006); *see also Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 149 (N.Y. App. Div. 2004) (finding plaintiffs' allegations that defendant's deceptive practices "caused them to pay artificially inflated prices for its products [sufficient for purposes of] stat[ing] a cause of action for unjust enrichment").

Here, plaintiffs clearly allege that defendants were unjustly enriched. (FAC ¶ 80 ("Defendants have been unjustly enriched by their sale of Ester-C Products through the use of false advertising and other fraudulent and deceptive conduct designed to persuade consumers that Ester-C Products actually provide immune support."); *id.* ¶ 81 ("As a proximate result of Defendants' unlawful, fraudulent, and unfair conduct, Defendants have obtained revenues by which they became unjustly enriched at the expense of Plaintiffs and other members of the Class.").) Plaintiffs also establish that such enrichment was at plaintiffs' expense, expressly stating that they would not have purchased Ester-C, or paid a premium for it, had it not been for defendants' misrepresentations, or had plaintiffs known the veracity of such statements. (*See id.* ¶¶ 9, 10 (stating that "[h]ad [plaintiffs] known the truth that the statements [they] relied on were false, misleading, deceptive, and unfair, [they] would not have purchased Ester-C or paid the premium price (of approximately 300%) for the Ester-C [they] bought"); *id.* ¶ 29 (providing details as to how "[d]efendants have profited enormously from their false advertising of Ester-C").) Plaintiffs assert

that they, along with other consumers, did not receive what they believed they had paid for (that is, a product providing "better vitamin C" and effective "immune support" against illness during "times of seasonal change"), and that "[u]nder the[se] circumstances . . ., it would be unfair and inequitable for Defendants to retain the profits they have unjustly obtained at the expense of Plaintiffs and the Class." (*Id.* ¶ 81.) Thus, plaintiffs have sufficiently pled the elements of an unjust enrichment claim.

Plaintiffs also have done so with the requisite Rule 9(b) particularity through the same allegations that satisfied their fraud claims under California and Missouri law. *See supra.*

c. Intentional Misrepresentation

To state an intentional misrepresentation (or fraud) claim under New York law, a "plaintiff must establish that: '(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance.'" *Liberty Mut. Ins. Co. v. Palace Car. Servs. Corp.*, No. 06-cv-4881(FB)(CLP), 2007 WL 2287902, at *2 (E.D.N.Y. Aug. 8, 2007) (quoting *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998)).

Plaintiffs have adequately pled their intentional misrepresentation claim. Plaintiffs clearly allege that defendants made a material false representation, *i.e.*, that defendants promoted products as having qualities they did not in fact possess, namely, the ability to protect consumers from illness. (*See* FAC ¶ 25 ("Defendants have no credible evidence that taking Ester-

C will provide immune support or keep one from getting sick."); *id.* ¶ 48 ("Defendant [sic] have thereby – in their manufacturing, advertising, marketing, selling, and distribution of the Products – engaged in practices that constitute deception, fraud, false pretense, false promise . . ."); *id.* ¶ 62 ("Defendants . . . have falsely advertised Ester-C Products by falsely claiming that the Products offer protection against germs, provide immune support, and help prevent a user from getting or remaining sick."); *id.* ¶ 93 ("Defendants made the false representations herein alleged . . .").) Plaintiffs identify those packaging and marketing statements that they contend are false. (*See* FAC ¶¶ 16-21.) Plaintiffs also set forth their grounds for asserting that such statements are false, including reference to a study that counters Ester-C's representations of being the "Better Vitamin C" that offers "Enhanced Absorption" and that is superior to other brands on the market (implicitly suggested by its statement of being the "#1 Pharmacist Recommended Brand") (*see* FAC ¶ 25 & n.1), as well as reference to FTC settlements in cases involving similar product representations (*see id.* ¶¶ 26-28).

Second, plaintiffs allege that defendants intended to defraud plaintiffs, *i.e.*, consumers. Plaintiffs plead that "[a]t the time [d]efendants made the representations herein alleged, [d]efendants knew the representations were false." (*Id.* ¶ 85.) Plaintiffs bolster this claim of alleged falsity awareness by pointing to an alleged lack of supporting scientific evidence for defendants' claims, the study conducted by the Linus Pauling Institute (disputing several of Ester-C's principal representations), and the FTC settlements in cases involving similar allegations of fraudulent misrepresentations. (*Id.* ¶¶ 4, 25 & n.1, 26-27.) Plaintiffs contend that defendants made such false statements "with the intention of

depriving Plaintiffs and other Class members of property or otherwise causing injury." (*Id.* ¶ 86; *see also id.* ¶ 29 (noting the profit defendants allegedly made from their advertising tactics).)

Third, plaintiffs assert that they reasonably relied on defendants' representations and that they would not have purchased such products "[h]ad [they] known the truth that the statements [they] relied on were false, misleading, deceptive, and unfair." (*Id.* ¶¶ 9 & 10; *see also id.* ¶ 87 ("Plaintiffs and other Class members believed and relied on Defendants' promoting, marketing, advertising, packaging, and labeling of the Ester-C Products, and, in justifiable reliance thereon, purchased them.").) The parties dispute whether this Court, on a motion to dismiss, may consider the issue of whether a plaintiff's reliance was justified. *Compare MBIA Ins. Co. v. GMAC Mortg. LLC*, 914 N.Y.S.2d 604, 608 (N.Y. Sup. 2010) (in action involving motion to dismiss fraud claim on grounds that plaintiff could not have justifiably relied on such misrepresentation, court denied motion because "[r]easonable reliance is a fact intensive inquiry, which should be reserved for a trier of fact"), *with Allison v. Round Table Inv. Mgmt. Co.*, 447 F. App'x 274, 276 (2d Cir. 2012) (upholding district court's dismissal of fraud claim on grounds that plaintiff could not show reliance was justifiable). Based on the allegations before it in this particular case, the Court cannot conclude as a matter of law that the cited statements here could not have been reasonably relied on by consumers; it, therefore, declines to dismiss plaintiffs' intentional misrepresentation claim on this ground. *See Ackerman*, 2010 WL 2925955, at *17 ("[W]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and

weighing of evidence from both sides and therefore usually cannot be resolved through a motion to dismiss" (quoting *Gerber Prods.*, 552 F.3d at 938-39) (internal quotation marks omitted)).[11]

Fourth, plaintiffs allege that they suffered damages on account of their purchasing a product at a premium price that did not offer the qualities it presented itself as having. (*See id.* ¶¶ 29, 88 ("Plaintiffs and other Class members were induced to spend an amount . . . on the Ester-C Products manufactured, distributed, and sold by Defendants, and Plaintiffs and the other Class members lost money by purchasing Ester-C Products that were not what they were represented to be, that were worth less than Plaintiffs and the other Class members paid for the Products, and which Plaintiffs and the other Class members would not have purchased but for the misrepresentations."); *id.* ¶ 89 ("Plaintiffs and other Class members, in purchasing, using, and consuming the Ester-C as herein alleged, did rely on Defendants' [ ] representations, all to their damage.").) This asserted monetary

loss is sufficient for purposes of establishing damages under New York's intentional misrepresentation law. *See 3801 Beach Channel, Inc. v. Shvartzman*, No. 05-cv-0207 (CBA)(JO), 2010 WL 6471990, at *5 (S.D.N.Y. Sept. 30, 2010) (finding elements of fraud sufficiently pled where plaintiffs alleged they would not have completed certain transactions had they known the truth as to the representations, and that they suffered monetary losses as a result).

The Court also finds that plaintiffs have cleared Rule 9(b)'s particularity bar for those reasons set forth *supra*, as plaintiffs have specified those statements asserted to be fraudulent, identified the "speaker" of the statements, stated where and when the statements were made, and explained why plaintiffs considered the statements to be fraudulent.

### d. Negligent Misrepresentation

A negligent misrepresentation will be actionable "where the defendant has been careless 'in imparting words upon which others were expected to rely and upon which they did or failed to act to their damage,' and where the author of the statement has 'some relationship or duty . . . to act with care' vis-à-vis the party at whom the statement is directed." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 583 (2d Cir. 2005). The New York Court of Appeals most recently described the particular elements of such a claim as follows:

> It is well settled that [a] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that

---

[11] In their motion, defendants cite to *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77 (1st Dept. 2004), in which the court upheld the lower court's dismissal of a fraud claim "on the ground of failure to demonstrate justifiable reliance on misrepresentation." *Id.* at 78. The case concerned beverages bearing labels touting the health benefits of the drinks' consumption, including improved memory, reduced stress, and improved health. *Id.* It is unclear what the specific product representations were in *Donahue*, nor is the exact language of the disclaimer clear from the opinion. Additionally, the *Donahue* court, when weighing the appropriateness of dismissal on the fraud claim, gave weight to the "type of product involved," which in that case, was herbal iced teas and fruit punch. *Id.* However, these determinations are case-specific and, as noted above, the issue of justifiable reliance cannot be resolved in this case at the motion to dismiss stage.

the information was incorrect; and (3) reasonable reliance on the information.

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 Civ. 7508(SAS), 2012 WL 4762039, at *2 (S.D.N.Y. Oct. 5, 2012) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011)) (internal quotation marks omitted); *see also Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) (stating that "the elements of negligent representation are: . . . carelessness in imparting words; . . . upon which others were expected to rely; . . . and upon which they did act or failed to act; . . . to their damage . . . to one to whom the declarant is bound by some relation or duty of care").

Turning to plaintiffs' negligent misrepresentation claims, as previously set forth, plaintiffs have adequately pled the elements of false statements and damages. (*See, e.g.*, FAC ¶¶ 16-21, 25, 48, 62, 86, 93.) Because the factor of reliance ties into the special relationship element, the Court addresses both prongs simultaneously.

Generally, "[t]o state a claim for negligent misrepresentation in connection with a commercial transaction, a plaintiff must plead justifiable reliance." *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 821 F. Supp. 2d 616, 623-24 (S.D.N.Y. 2011). A court assessing reliance under New York law must consider three factors: "'whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.'" *Id.* at 624 (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996)).

Plaintiffs have pled sufficient facts from which the Court may infer a special relationship between the parties to this action. Plaintiffs point out that defendants, in their marketing, allegedly held themselves out as holding a type of special expertise regarding the purported health benefits of Ester-C. For instance, Ester-C's website contains a section entitled, "Ask an *Expert*," which states that the "expert" "take[s] an Ester-C tablet daily, all year long, because it is gentler on the stomach *and because of all the clinical research that supports the use of this product*." (FAC ¶ 20 (quoting http://www.ester-c.com/FAQ.htm).) That same page also states that Ester-C "*has good clinical research* and is the easiest form of vitamin C to take in my opinion because it is non-acidic. *The company is also completely committed to clinical studies*." http://www.ester-c.com/FAQ.htm. Plaintiffs also assert that the product's labeling also contains language that, at the very least, suggests some level of medical or scientific backing for its claims. (*See* Product Labels, Ex. A ("#1 Pharmacist Recommended Brand"; "Ester-C gives you the added benefits of C-Sorb[, and] Ester-C, together with C-Sorb and naturally occurring metabolites, works synergistically to quickly absorb into your system and stay there, providing immune system support"; "As a unique, delicious form of Vitamin C, Ester-C is well retained, providing immune system support[, p]lus Ester-C [] can be taken all year long to support heart health, antioxidant health, healthy bones and joints, and healthy skin, hair and nails").)

In short, plaintiffs have stated a plausible claim that defendants understood that the content of their labeling, packaging, and website – indeed, all forms of their marketing and branding – would be used by consumers for the purpose of evaluating Ester-C in comparison to the numerous other

brands of vitamin supplements on the market. *See Kwikset*, 246 P.3d at 889 ("The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities that may come to associate with a particular source." (citing *F.T.C. v. Procter & Gamble Co.*, 386 U.S. 568, 572 (1967))). Moreover, plaintiffs have plausibly alleged that defendants knew that they were targeting individuals who generally lacked the scientific or medical background necessary to carefully assess and truly evaluate Ester-C's assertions before purchase, and who would have to trust the representations as stated in Ester-C's marketing. *Cf. Dallas Aerospace*, 352 F.3d at 788-89 (finding as a relevant factor for dismissal of negligent misrepresentation claim the fact that plaintiff held the relevant expertise with which to assess the representations at issue).

For these reasons, plaintiffs have pled sufficient facts from which a special relationship under New York law might be inferred. And for reasons previously set forth, based on the allegations before it, the Court cannot conclude as a matter of law that the contested statements could not have been reasonably relied on by consumers. Thus, the Court will allow plaintiffs' negligent misrepresentation claim to proceed. *See Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104 (2d Cir. 2001) ("Given that a determination of whether a special relationship exists is essentially a factual inquiry, these allegations are sufficient to overcome a motion to dismiss."); *see also Kimmell*, 89 N.Y.2d at 264 ("Whether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact.").

Lastly, plaintiffs have adequately pled their negligent misrepresentation claims, via the same allegations that satisfy their fraud claims under California and Missouri law, such that they satisfy both Rule 8 and Rule 9(b)'s standards.

## IV. CONCLUSION

For the reasons set forth, defendants' motion to dismiss plaintiffs' complaint is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 15, 2013
Central Islip, New York

* * *

The attorneys for plaintiffs are Kim Richman and Michael Robert Reese of Reese Richman LLP, 875 Sixth Avenue, 18th Floor, New York, NY 10001, and Patrick J. Sheehan of Whatley Drake & Kallas LLC 60 State Street 7th Floor Boston, MA 02109. The attorneys for defendants James D. Arden, Christina Coleman, and Kara L. McCall of Sidley Austin LLP, One South Dearborn Street, Chicago, IL 60603.