UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
PATRICK HUGHES and NAFISE NINA
HODJAT, individually and on behalf of all
others similarly situated,

                Plaintiffs,

        - against -

THE ESTER C COMPANY, NBTY, INC.,
and NATURESMART, LLC,

                Defendants.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
12-CV-0041 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiffs Patrick Hughes and Nafise Nina Hodjat (together, "Plaintiffs") bring this putative class action against Defendants The Ester C Company, NBTY, Inc., and NatureSmart LLC (collectively, "Defendants"), alleging that Defendants' labeling of their "Ester-C" vitamin C supplements (the "Products") as "The Better Vitamin C" is unlawful, deceptive, and misbranded. By Order dated September 30, 2016 (the "Order"), the Court denied Plaintiffs' motion to certify a nationwide class, as well as their motion to certify California and Missouri subclasses. (Dkt. 142.) Before the Court is Plaintiffs' motion for reconsideration of the Order. (Dkt. 145.) For the reasons set forth below, the Court denies Plaintiffs' motion.

**BACKGROUND**[1]

In the Order, the Court ruled that Plaintiffs had not satisfied the requirements to certify a class or any subclass under Federal Rule of Civil Procedure 23 ("Rule 23"). With respect to

---

[1] The Court presumes the parties' familiarity with the factual allegations and procedural history of this case, which are set forth in detail in the Court's order denying Plaintiffs' motion for class certification. (Dkt. 142.)

Plaintiffs' proposed nationwide class, the Court ruled that state-to-state differences in governing legal standards defeated predominance, thus precluding certification. (Order at 29-33.) In addition, with respect to the proposed nationwide class and both proposed subclasses, the Court ruled that: (1) Plaintiffs did not satisfy the implied ascertainability requirement of class certification under Rule 23(b)(3) (Order at 23-26), and (2) Plaintiffs did not satisfy the predominance requirement of class certification under Rule 23(b) because they failed to establish a damages methodology that would reliably measure damages on a class-wide basis in a manner consistent with Plaintiffs' theory of liability (Order at 33-38).

As a preliminary matter, Plaintiffs have not asked for reconsideration of the Court's denial of Plaintiffs' request to certify a nationwide class. (*See generally* Dkt. No. 146 ("Pls.' Br.").) Instead, Plaintiffs challenge the Court's decision not to certify their proposed California or Missouri subclasses. As their primary argument, Plaintiffs contend that the Court's ascertainability and predominance holdings were premised on a misapprehension of the factual record in this case. According to Plaintiffs, the Court was incorrect in stating that "over 150 companies, including Defendants, marketed and sold Ester-C products bearing 'The Better Vitamin C' label." (Pls.' Br. at 5 (quoting Order at 24-25).) Plaintiffs contend that this factual error caused the Court to erroneously find that Plaintiffs failed to satisfy the ascertainability and predominance requirements of Rule 23.[2] (Pls.' Br. at 5-11.) Plaintiffs also argue that the Court's predominance holding is "directly contrary to controlling Second Circuit authority." (Pls.' Br.

---

[2] As a related argument, Plaintiffs contend that "the Order incorrectly assume[d] that Plaintiffs seek to represent not only purchasers of Defendants' Ester-C Products but also purchasers of other companies' Ester-C Products." (Pls.' Br. at 6 (citing Order at 25 n.24).) Plaintiffs are wrong. To avoid any doubt, the Court directs Plaintiffs to pages 2 and 3 of the Order, which accurately described the proposed classes that Plaintiffs sought to represent. (Order at 2-3 (acknowledging that the proposed classes were limited to purchasers of Defendants' Ester-C products).)

2

at 7.) As a fallback argument, Plaintiffs contend that, rather than deny their certification motion with prejudice, the Court should have allowed Plaintiffs to file a renewed motion for class certification, either to pursue an alternative theory of liability or to seek certification of an "issue" class pursuant to Rule 23(c)(4). (Pls.' Br. at 11-13.)

In their opposition brief, Defendants acknowledge that the Order "contained a factual misstatement regarding the number of licensed 'Ester-C' products that bore the 'Better Vitamin C' slogan." (Dkt. No. 153 ("Defs.' Br.") at 1.) Defendants argue, however, that the Court's "misapprehension of the record" on this point "was immaterial to the Court's ultimate holding" with respect to class certification. (*Id.*)

## LEGAL STANDARD

A court may grant reconsideration on the basis of an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quotation marks and citation omitted). The standard for granting a reconsideration motion is "strict," and reconsideration generally will be denied "unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). "It is well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (quotations omitted). Furthermore, arguments raised for the first time on reconsideration are not proper grounds for reconsideration. *See Image Processing Techs., LLC v. Canon Inc.*, 2012 WL

3

253097, at *1 (E.D.N.Y. Jan. 26, 2012) ("[A] party is not permitted to 'advance new facts, issues or arguments not previously presented to the Court' on a motion for reconsideration." (quoting *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petrol. Corp.*, 948 F.2d 111, 115 (2d Cir. 1991))).

## DISCUSSION

The parties agree that the Order was factually incorrect in stating that "over 150 companies, including Defendants, marketed and sold Ester-C products bearing 'The Better Vitamin C' label." (Pls.' Br. at 5 (quoting Order at 24-25).)  The Court is thus obliged to consider whether this factual inaccuracy calls into question its holdings that Plaintiffs failed to satisfy the ascertainability and predominance elements of class certification.

In addition, while Plaintiffs' motion for reconsideration was pending, the Second Circuit, in *In re Petrobras Securities*, 2017 WL 2883874 (2d Cir. July 7, 2017), issued a decision that clarifies how a district court should account for the "ascertainability" of a putative class when deciding whether to certify a class under Rule 23(b).  Accordingly, the Court will also reconsider the Order's ascertainability analysis in light of *Petrobras*.

### I. ASCERTAINABILITY

As noted in the Order (Order at 23), the Second Circuit stated in *Brecher v. Republic of Argentina* that "the touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."  806 F.3d 22, 24 (2d Cir. 2015) (citations and quotation marks omitted).  This Court stated that, under *Brecher*, "[a] class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." (Order at 23 (quoting *Huebner v. Midland Credit Mgmt., Inc.*, 2016 WL

4

3172789, at *7 (E.D.N.Y. June 6, 2016) (citation and quotation marks omitted)).) Applying these standards, the Court ruled:

> Plaintiffs fail to satisfy the implied requirement of ascertainability because of the combination of two facts unique to this case. First, . . . Plaintiffs offer no basis to find that putative class members will have retained a receipt, the Products' label, or any other concrete documentation of their purchases of the Products bearing "The Better Vitamin C" description. Second, although "The Better Vitamin C" representation appeared on all of the Products [sold by Defendants], Defendants only licensed the Ester-C intellectual property, as did at least 150 other U.S. companies. This means that over 150 companies, including Defendants, marketed and sold Ester-C products bearing "The Better Vitamin C" label. Thus, because putative class members would not be able to recall or perhaps even know whether they purchased the Products actually licensed by Defendants, as opposed to the myriad other Ester-C licensees, soliciting declarations regarding class members' history of Ester-C purchases would invite them to speculate, or worse.

(Order at 24-25 (internal citations, quotation marks, and alterations omitted).)

Plaintiffs argue, and Defendants concede, that this section of the Order erred in stating that "over 150 companies, including Defendants, marketed and sold Ester-C products bearing 'The Better Vitamin C' label." Having reviewed the class certification record a second time, the Court finds that neither Plaintiffs nor Defendants have demonstrated which, if any, of the "over 150 companies" other than Defendants that marketed and sold Ester-C products used the phrase "The Better Vitamin C."[3] In the absence of that evidence, the Court cannot accept Plaintiffs' invitation to simply assume that Defendants were the only licensees of Ester-C intellectual property who used the phrase "The Better Vitamin C" (or a similar phrase) to market their Ester-C products. As

---

[3] In their motion for reconsideration, Plaintiffs assert that "it is undisputed that approximately 150 Ester-C products containing the exact same ingredients as Defendants' Ester-C Products but not marketed as 'The Better Vitamin C' claim were sold during the relevant time period with widely varied labeling claims for far less money." (Pls.' Br. at 10-11.) But Plaintiffs do not point to any record evidence demonstrating that Defendants were the only licensees of Ester-C products who used the phrase "The Better Vitamin C" (or a similar phrase) to market their Ester-C products.

such, the Court finds that Plaintiffs have failed to demonstrate that the membership of their proposed classes can be feasibly ascertained, as the Court found in its original decision. If any licensee of Ester-C products other than Defendants used the phrase "The Better Vitamin C" to market their Ester-C products, then, even if Plaintiffs could propose a workable method for identifying all persons who purchased an Ester-C product bearing the claim "The Better Vitamin C," there would nonetheless be an obvious risk of false positives with respect to whether that product was manufactured by Defendants. Plaintiffs have not submitted any argument or evidence to address that risk. Plaintiffs have thus failed to persuade the Court that it would be administratively feasible to ascertain the membership of their proposed classes.

Moreover, as Defendants rightly argue (Defs.' Br. at 8-10), Plaintiffs' motion for reconsideration does not grapple with the second, independent ground on which the Court ruled that Plaintiffs had failed to show ascertainability. As explained in the Order, regardless of how many licensees of Ester-C intellectual property used the phrase "The Better Vitamin C," Plaintiffs have offered "no basis to find that putative class members will have retained a receipt, the Products' label, or any other concrete documentation of their purchases of the Products bearing 'The Better Vitamin C' description." (Order at 24.) Indeed, in their motion for reconsideration, Plaintiffs do not provide any rebuttal to the Court's ruling that "the wide licensing of the Products 'renders accurate self-identification infeasible.'" (Order at 25-26 (quoting *Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 66 (S.D.N.Y. 2015)).)

The Court now considers whether the Second Circuit's decision in *In re Petrobras Securities*, 2017 WL 2883874 (2d Cir. July 7, 2017), has any impact on the Court's treatment of ascertainability in this action. In *Petrobras*, the Second Circuit clarified that the ascertainability element merely requires that a proposed class be definable "using objective criteria that establish

6

a membership with definite boundaries." 2017 WL 2883874, at *12. The *Petrobras* court also clarified that "administrative feasibility" is not part of the implied ascertainability element and is not itself a distinct element of class certification. 2017 WL 2883874, at *6. Instead, the "administrative feasibility" of ascertaining a class should be evaluated under the predominance and superiority elements of class certification under Rule 23(b), in that a district court must consider the "administrative feasibility" of ascertaining membership in a class when determining whether common issues predominate over individual issues and whether a class action is superior to other methods for resolving the putative class members' claims. *Id.* at *12-13.

In light of *Petrobras*'s clarification that the administrative feasibility of ascertaining the membership of Plaintiffs' proposed classes is not a standalone element of class certification, but is instead an inquiry that pertains to the predominance and superiority elements of Rule 23(b), the Court reconsiders and vacates so much of the Order that denied class certification strictly on the basis of "ascertainability." While the Court ordinarily would be required to re-consider administrative feasibility (or lack thereof) in the context of a broader inquiry into whether common issues predominate over individualized ones, the Court need not do so here because, as explained below, the Court reaffirms its ruling that Plaintiffs have failed to establish the predominance element in any event, since they have not established a damages methodology that would reliably measure damages on a class-wide basis in a manner consistent with Plaintiffs' theory of liability.

## II. PREDOMINANCE

As the Court stated in the Order, the Supreme Court's decision in *Comcast Corporation v. Behrend*, 133 S. Ct. 1426 (2013), requires that "a model for determining class[-]wide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury." (Order at 33 (quoting *Comcast*, 133 S. Ct. at 1432).)

7

Applying this standard, the Court ruled that "none of [Plaintiffs'] proposed models succeeds in measuring damages on a class-wide basis," because "none [of Plaintiffs' models] can isolate the premium attributable to Plaintiffs' theory of the case, namely, that consumers paid more for the Products due to the representation 'The Better Vitamin C.'" (*Id.*)

Plaintiffs argue that the Court's error in stating the number of licensees of Ester-C products who used the "Better Vitamin C" label caused the Court to commit a corresponding error in its predominance analysis under *Comcast*. (Pls.' Br. at 10-11.) According to Plaintiffs, "[t]he Court's denial of class certification on damages grounds . . . appears to be based on a misconception that no comparator products were available with which to utilize [Plaintiffs' proposed] method [for calculating damages] in this case." (Pls.' Br. at 10 (citing Order at 38).) As supposed evidence of this "misconception," Plaintiffs point to the Court's observation that a damages model that combines a hedonic regression with a conjoint analysis "does not work with Plaintiffs' theory of the case—that Ester-C is somehow 'better' than some unidentifiable comparator." (Order at 38.) Plaintiffs focus on the Order's observation that proper comparators for such an analysis are "unidentifiable," and argue that the "approximately 150 Ester-C products containing the exact same ingredients as Defendants' Ester-C Products but not marketed as 'The Better Vitamin C'" are all adequate comparators. (Pls.' Br. at 10-11.)

In making this "comparators" argument, Plaintiffs suggest that their expert, "Mr. Weir[,] will be able to compare Defendants' Ester-C Products to roughly 150 other Ester-C products with widely varied labeling claims but not [the phrase] 'The Better Vitamin C.'" (Pls.' Br. at 11 n.2.) According to Plaintiffs, "[w]ith such a rich data set, Mr. Weir will be able to employ a far more complex analysis than the type of simplistic 'binary' approach the Court contemplates in order to isolate the value of Defendants' 'The Better Vitamin C' claim." (Pls.' Br. at 11 n.2.) Yet, in so

8

arguing, Plaintiffs merely underscore how their proposed damages methodology cannot satisfy *Comcast*'s requirement that "[the] model for determining class-wide damages . . . must actually measure damages that result from the class's asserted theory of injury." 133 S. Ct. at 1432. Indeed, if Mr. Weir's damages model "isolate[s] the value" of the phrase "The Better Vitamin C," as Plaintiffs suggest in their motion, but it does not make any distinctions based on the language surrounding that phrase—such as "Enhanced Absorption," or "Stomach Friendly," or "Non-Acidic"—then Mr. Weir's model would correspond to a theory of liability that rests entirely on the phrase "The Better Vitamin C," *irrespective of the context of that claim.* However, that theory of liability—*i.e.*, the theory that "The Better Vitamin C," standing alone, is misleading—is clearly inadequate as a matter of law, because "a general claim of superiority over comparable products" is non-actionable "puffery." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 160 (2d Cir. 2007); (*see also* Order at 37 (noting that "because the term 'better' has no meaning on its own, in order to measure damages attributable to 'The Better Vitamin C,' it is necessary to look at this representation in the context in which it appears")).

 Plaintiffs cannot have it both ways. They cannot, on the one hand, insulate their claims from dismissal on grounds of puffery by pointing to contextual language surrounding the phrase "The Better Vitamin C," yet, on the other hand, satisfy the predominance element of class certification by ignoring that same contextual language. As the Court explained in the Order, Weir's methodology is bound to either "overvalu[e] . . . the price premium attributable to [an actionable] misrepresentation," or be rendered legally "meaningless because consumers naturally will interpret 'better' differently based on the surrounding context." (Order at 37.) For all of these reasons, Weir's methodology is "plainly prohibited by *Comcast*." (Order at 36-37.) Accordingly, the Court reaffirms its predominance ruling and denies Plaintiffs' motion for reconsideration.

9

### III. ALTERNATIVE RELIEF

As an alternative form of relief, Plaintiffs ask the Court for leave to file a renewed motion for class certification. (Pls.' Br. at 11-12.)

First, Plaintiffs argue that they should be granted leave to file an amended motion for class certification based on "Defendants' marketing statements concerning the immune support provided by their Ester-C products." (Pls.' Br. at 11.) Plaintiffs claim that they should be permitted to file that motion because the Court denied Defendants' motion for summary judgment as to that theory of liability "while Plaintiffs' Motion for Class Certification was pending." (*Id.*) The Court disagrees. As Defendants' rightly note (Defs.' Br. at 17), the pendency of Defendants' motion for summary judgment did not prevent Plaintiffs from pursuing class certification based on their "immune support" theory of liability. The Court declines to allow Plaintiffs to fundamentally shift their theory of liability through a motion for reconsideration. *See In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007) (mem) (acknowledging that "[d]istrict courts have ample discretion . . . to decline to consider[] a revised class certification motion after an initial denial").[4]

Second, Plaintiffs argue that, instead of denying class certification, the Court should have certified an "issue class" pursuant to Rule 23(c)(4). As an initial matter, the Court notes that it has

---

[4] Indeed, the Court finds it would be particularly unfair to require Defendants to defend against a renewed motion for class certification, based on an alternative theory of liability, at this stage in the litigation. In their original and amended complaints, Plaintiffs relied heavily on a theory of liability that centered around the "immune support" language on some of Defendants' Ester-C products, with almost no emphasis placed on the phrase "The Better Vitamin C." (*See* Dkts. 1 & 13.) Thereafter, presumably for strategic reasons, Plaintiffs sought class certification based entirely on the phrase "The Better Vitamin C," seemingly having abandoned their original "immune support" theory. (*See* Dkt. 95.) When Plaintiffs' first bid for class certification was woefully inadequate, the Court identified deficiencies in Plaintiffs' submission and granted them a "second attempt at certifying their class." (Order at 41 n.36.) Plaintiffs do not identify any reason to give them yet another bite at the apple.

10

"no[] obligat[ion] to implement Rule 23(c)(4) on its own initiative." *Adkins v. Stanley*, 656 F. App'x 555, 557 (2d Cir. 2016). Thus, to the extent Plaintiffs claim that the Court erred in declining to certify an issue class *sua sponte*, the Court rejects that claim. Alternatively, to the extent that Plaintiffs seek to certify an issue class under Rule 23(c)(4) by way of their motion for reconsideration, the Court denies that request, as a motion for reconsideration is not a proper vehicle to "advance new facts, issues or arguments not previously presented to the Court." *Caribbean Trading*, 948 F.2d at 115. As noted above, the Court has given Plaintiffs more than sufficient opportunity to define and seek certification of a class under Rule 23. In the years of litigation in this action, Plaintiffs did not once suggest that they would seek to certify an issue class under Rule 23(c)(4). Having already denied two motions for class certification, the Court declines to consider a third certification motion, even if it were narrowed to seek certification of an "issue" class.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration of the Court's order denying class certification is denied. By August 11, 2017, the parties shall submit a joint letter proposing a briefing schedule for any anticipated motions for summary judgment concerning Plaintiffs' individual claims.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 21, 2017
　　　　Brooklyn, New York

11