**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                        :
PATRICK HUGHES and NAFISÉ NINA                                          :
HODJAT, individually and on behalf of all others                       :
similarly situated,                                                    :
                                                                        :
                              Plaintiffs,                              :
                                                                        :
                        - against -                                    :     No. 12 Civ. 0041 (PKC) (GRB)
                                                                        :
THE ESTER C COMPANY, NBTY, INC., and                                   :
NATURESMART, LLC,                                                      :
                                                                        :
                              Defendants.                              :
                                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**


PATTERSON BELKNAP WEBB & TYLER LLP
Steven A. Zalesin
Jonah M. Knobler
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Defendants The Ester C Company,*
*NBTY, Inc. and Naturesmart, LLC*

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ....................................................................................................3

    A.    Ester-C Products ................................................................................3

    B.    The Challenged Label Claims...........................................................3

        1.    "Immune Support"..................................................................4

        2.    "The Better Vitamin C®" ......................................................5

    C.    Procedural History .............................................................................6

        1.    Genesis Of This Lawsuit........................................................6

        2.    Plaintiffs' Complaint..............................................................7

        3.    NBTY Moves To Dismiss ......................................................7

        4.    The Court Denies Class Certification ....................................8

        5.    Plaintiffs Fail To Engage In Merits Discovery .....................8

LEGAL STANDARD.............................................................................................9

ARGUMENT ........................................................................................................9

I.    DUE TO PLAINTIFFS' FAILURE TO PROSECUTE THIS LAWSUIT, THERE
IS A TOTAL FAILURE OF PROOF AS TO EVERY ELEMENT OF THEIR
CLAIMS .....................................................................................................9

    A.    Plaintiffs Cannot Show That NBTY In Fact Made The Implied Claims
That Plaintiffs Allege To Be False.................................................10

    B.    Plaintiffs Cannot Show That The Allegedly Implied Claims Are False...............12

    C.    Plaintiffs Cannot Show That The Challenged Statements Caused Their
Purchase Decisions ........................................................................14

    D.    Plaintiffs Cannot Show That They Paid A "Price Premium" As A
Result Of The Allegedly False Statements .....................................15

    E.    Plaintiffs Cannot Show That NBTY Had The State Of Mind
Necessary For A Fraudulent Or Negligent Misrepresentation Claim...................17

# TABLE OF CONTENTS
## (continued)

**Page**

    F.    Plaintiffs Cannot Show The "Privity-Like Relationship" Necessary For A Negligent Misrepresentation Claim ........................................................................18

II.    UNJUST ENRICHMENT IS UNAVAILABLE AS A MATTER OF LAW ....................19

III.    INJUNCTIVE RELIEF IS UNAVAILABLE AS A MATTER OF LAW .......................20

CONCLUSION .......................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adorno v. Corr. Servs. Corp.*,
    312 F. Supp. 2d 505 (S.D.N.Y. 2004) ........................................................................13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .....................................................................................................9

*Anschutz Corp. v. Merrill Lynch & Co.*,
    690 F.3d 98 (2d Cir. 2012) ........................................................................................18

*Austin v. Zaltz*,
    2007 N.Y. Misc. LEXIS 8127 (Sup. Ct. Dec. 13, 2007) .....................................14, 17

*Bankers Trust Co. v. State St. Bank & Tr. Co.*,
    1998 U.S. Dist. LEXIS 9728 (S.D.N.Y. July 1, 1998) ............................................18

*Brazil v. Dole Packaged Foods, LLC*,
    600 F. App'x 531 (9th Cir. 2015) ..............................................................................15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .....................................................................................................9

*In re Cokes*,
    107 S.W.3d 317 (Mo. Ct. App. 2003) ......................................................................13

*Colgan v. Leatherman Tool Grp., Inc.*,
    38 Cal. Rptr. 3d 36 (Cal. Ct. App. 2006) ..................................................................17

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 777 (2012) ................................................................................................20

*Dandong v. Pinnacle Performance Ltd.*,
    2011 U.S. Dist. LEXIS 126552 (S.D.N.Y. Oct. 31, 2011) ......................................18

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) .....................................................................................11

*Gaidon v. Guardian Life Ins. Co.*,
    725 N.E.2d 598 (N.Y. 1999) .....................................................................................10

*Garber v. United States*,
    2017 U.S. Dist. LEXIS 29059 (C.D. Cal. Feb. 27, 2017) ........................................13

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Greene v. Gerber Prods. Co.*,
   2017 U.S. Dist. LEXIS 122102 (E.D.N.Y. Aug. 2, 2017)....................................................20

*Hayut v. State Univ. of N.Y.*,
   352 F.3d 733 (2d Cir. 2003)............................................................................................9, 14

*Hess v. Chase Manhattan Bank, USA, N.A.*,
   220 S.W.3d 758 (Mo. 2007) ................................................................................................11

*Hughes v. Ester C Co.*,
   2017 U.S. Dist. LEXIS 114224 (E.D.N.Y. July 21, 2017) ....................................................8

*Hughes v. Ester C Co.*,
   317 F.R.D. 333 (E.D.N.Y. 2016) ................................................................................. *passim*

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) ...............................................................7, 13, 18, 19

*Izquierdo v. Mondelez Int'l, Inc.*,
   2016 U.S. Dist. LEXIS 149795 (S.D.N.Y. Oct. 26, 2016) ...................................................18

*J.A.O. Acquisition Corp. v. Stavisky*,
   8 N.Y.3d 144 (2007) ......................................................................................................15, 18

*Johnson & Johnson v. Smithkline Beecham Corp.*,
   960 F.2d 294 (2d Cir. 1992)................................................................................................11

*Kimmell v. Schaefer*,
   89 N.Y.2d 257 (1996) ..........................................................................................................19

*Kwikset Corp. v. Superior Court*,
   246 P.3d 877 (Cal. 2011) ...............................................................................................14, 15

*Lanovaz v. Twinings N. Am., Inc.*,
   2014 U.S. Dist. LEXIS 1639 (N.D. Cal. Jan. 6, 2014) ..........................................................3

*Lara v. Delta Int'l Mach. Corp.*,
   174 F. Supp. 3d 719 (E.D.N.Y. 2016) .................................................................................13

*Mahoney v. Endo Health Sols., Inc.*,
   2016 U.S. Dist. LEXIS 94732 (S.D.N.Y. July 20, 2016) .................................................18, 20

*McGill v. Gen. Motors Corp.*,
   647 N.Y.S.2d 209 (1st Dep't 1996) .....................................................................................18

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Morales v. Conopco, Inc.*,
    2016 U.S. Dist. LEXIS 144349 (E.D. Cal. Oct. 18, 2016) .......................................12

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)..................................................................................20

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    720 F.3d 490 (2d Cir. 2013).................................................................................13

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
    227 F.3d 489 (5th Cir. 2000) ...............................................................................11

*Punian v. Gillette Co.*,
    2016 U.S. Dist. LEXIS 34164 (N.D. Cal. Mar. 15, 2016).....................................11

*Reilly Green Mountain Platform Tennis v. Cortese*,
    2007 N.Y. Misc. LEXIS 9146 (Sup. Ct. Aug. 6, 2007), *aff'd*, 59 A.D.3d 694
    (2d Dep't 2009)....................................................................................................17

*Ries v. Arizona Beverages USA LLC*,
    2013 U.S. Dist. LEXIS 46013 (N.D. Cal. Mar. 28, 2013).....................................12

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
    2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sept. 22, 2015)...................................19

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
    497 F.3d 144 (2d Cir. 2007)..........................................................................10, 11

*TufAmerica, Inc. v. Codigo Music LLC*,
    162 F. Supp. 3d 295 ............................................................................................15

*Warma v. Ester C Co.*,
    No. 09-cv-144 (S.D. Ill. Feb. 25, 2009)...............................................................6, 7

*Wax NJ-2, LLC v. JFB Constr. & Dev.*,
    111 F. Supp. 3d 434 (S.D.N.Y. 2015)..................................................................17

*Williams v. HSBC Bank USA, N.A.*,
    467 S.W.3d 836 (Mo. Ct. App. 2015)..................................................................14

**Statutes**

Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* ("CLRA") ................................7

False Advertising Law, CAL. BUS. & PROF. CODE § 17500 *et seq.* ("FAL")..................................7

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Missouri Merchandising Practices Act, MO. REV. STAT. § 407.010 ("MMPA") ...............7, 11, 14

Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* ("UCL") ...............................7

**Other Authorities**

Fed. R. Civ. P. 23 .............................................................................................................8

Fed. R. Civ. P. 56 .............................................................................................................1

Fed. R. Evid. 803 ...........................................................................................................14

Defendants (collectively "NBTY") respectfully submit this memorandum in support of their motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## PRELIMINARY STATEMENT

Almost six years ago, a group of lawyers filed this putative class action, challenging certain claims that NBTY had made for its "Ester-C" brand vitamin C supplements.  This was not the first time that the lawyers in this group had sued a vitamin C manufacturer, or even the first time that some of them had targeted NBTY.  All of the prior suits ended with settlements and payouts to class counsel.  This time, NBTY decided to put the Plaintiffs to their proof.

In September 2016, after allowing Plaintiffs multiple opportunities to make the requisite showing, the Court refused to certify this case as a class action.  According to the scheduling order previously entered by the Court, that ruling triggered the start of  the merits-discovery period.  But rather than undertake the effort that would have been necessary to prove their claims, Plaintiffs *literally did nothing* to prosecute their case.  They served no document requests.  They noticed no depositions.  They produced no expert reports, either on liability or damages.  Plaintiffs simply sat on their hands and let the discovery period expire, even after the Court itself warned that the clock was running.

One could speculate about why Plaintiffs chose this course.  Perhaps they knew they were bound to lose on the merits and elected not to throw good money after bad.  Or perhaps they lacked the resolve to litigate their individual claims to verdict in the hope that the Second Circuit would one day overturn this Court's class-certification decision.  But whatever the reason, the consequence of Plaintiffs' inaction is clear: their claims suffer from a complete failure of proof, and NBTY is entitled to summary judgment as a matter of law.  In particular:

- With no survey or other extrinsic evidence of how ordinary consumers interpret the challenged label statements, Plaintiffs cannot prove that reasonable consumers construe those claims to convey the messages Plaintiffs contend are false. Plaintiffs' anecdotal testimony about how *they* interpreted the claims is not sufficient.

- With no expert testimony about the effect of vitamin C on human health or the benefits of Ester-C versus other forms of vitamin C, Plaintiffs cannot prove that the challenged claims are false—even assuming reasonable consumers interpret them in the manner Plaintiffs allege.

- With no credible evidence that the challenged label claims actually motivated Plaintiffs to purchase Ester-C, Plaintiffs cannot prove the required element of reliance or causation.

- With no evidence (expert or otherwise) of the total amount they spent on Ester-C, or the portion of that total that constituted the "price premium" they seek to recover, Plaintiffs cannot prove that they are entitled to any damages.

- With the challenged claims no longer being made, and having disclaimed any intent to purchase Ester-C again, Plaintiffs have no entitlement to injunctive relief.

Plaintiffs have wasted six years and vast resources—of both NBTY and this Court—pursuing meritless claims they apparently never intended to take to trial. NBTY reserves the right to make an appropriate motion to seek to recoup the exorbitant costs of this pointless litigation. But first, it is time for the Court to put Plaintiffs' terminally deficient claims out of their misery. Summary judgment should be granted in favor of NBTY.

## BACKGROUND

### A.     Ester-C Products

NBTY manufactures and sells a line of vitamin C supplements under the trademark "Es-ter-C®."  (NBTY's Local Rule 56.1 Statement ("NBTY Stat.") ¶ 1.)  Those products come in tablet, powder, and gummy forms.  (*Id.* ¶ 2.)  Unlike most vitamin C supplements, which contain vitamin C in the form of ascorbic acid, Ester-C contains a patented form of vitamin C called cal-cium ascorbate.  (*Id.* ¶¶ 3-4.)  As discussed further below, this special formulation provides im-portant benefits over ordinary vitamin C.

Though they allege that Ester-C sells at a "premium price" compared to other vitamin C supplements, Plaintiffs have adduced no evidence of Ester-C's actual pricing vis-à-vis other brands.  (*Id.* ¶ 8.)  What the record does show, however, is that pricing for Ester-C has been high-ly variable.  NBTY's suggested retail price has fluctuated depending on the variety (tablet, pow-der, gummy); the product count; the "channel" (type of store); and whether NBTY was running one of its regular sales promotions.  (*Id.* ¶ 5.)  Over the period at issue in this case, the suggested retail price has been as low as 7 cents per gram and as high as 65 cents per gram.  (*Id.* ¶ 6.)  Fur-ther adding to the variability, each retailer makes its own decision whether to charge NBTY's suggested retail price or a different price of its own choosing.  (*Id.* ¶ 7.)

### B.     The Challenged Label Claims

Plaintiffs take issue with a variety of statements that have appeared in Ester-C's labeling. Those statements fall into two categories: (1) statements about "immune support" and (2) the slogan "The Better Vitamin C®."[1]

---

[1] Plaintiffs' complaint also took issue with certain statements on NBTY's website.  (NBTY Stat. ¶ 13.) Because Plaintiffs never even visited NBTY's website (*id.* ¶ 14), summary judgment is clearly warranted to the extent Plaintiffs still purport to challenge those statements.  *See Lanovaz v. Twinings N. Am., Inc.*, 2014 U.S. Dist. LEXIS 1639, at *17 (N.D. Cal. Jan. 6, 2014) ("[Plaintiff] cannot base a claim on content on Twinings' website that she never saw or relied on.").

1.      **"Immune Support"**

Plaintiffs attack a number of label statements concerning the role that vitamin C plays in the immune system.  These statements include "Immune Support," "Immune System Support," "24 Hour Immune Support," and the like.  (NBTY Stat. ¶ 15.)

It is not genuinely disputed that vitamin C does, in fact, support the immune system.  The U.S. Food and Drug Administration, the National Institutes of Health, the Institute of Medicine of the National Academy of Sciences, and the European Food Safety Authority all agree on this point.  (*Id.* ¶ 16.)  Even the websites and journal articles that Plaintiffs relied upon in their First Amended Complaint recognize that "vitamin C status is associated with improved immune responses."  (*Id.* ¶ 17.)  Plaintiffs have never adduced any contrary evidence.

Plaintiffs nevertheless allege that consumers interpret Ester-C's "immune support" statements as a promise that taking Ester-C will prevent or treat specific diseases—namely, the common cold or the influenza virus—and that *this implied disease-treatment claim* is false.  (*Id.* ¶ 18.)  Plaintiffs have adduced no evidence that consumers actually interpret NBTY's "immune support" statements in this manner.  (*Id.* ¶ 19.)  In fact, the label itself contradicts this interpretation:  each "immune support" claim is linked by an asterisk to an express statement that "[t]his product is not intended to diagnose, treat, cure or prevent any disease."  (*Id.* ¶ 20.)

Even if Ester-C's label did contain an express statement that the product mitigates cold symptoms, that claim would be true—or at least not demonstrably false.  A recent meta-analysis of clinical trials on vitamin C found a "consistent [positive] effect" from "regular supplementation" on the "duration and severity of colds" and concluded that it was "worthwhile for common cold patients to test on an individual basis whether therapeutic vitamin C is beneficial for them."  (*Id.* ¶ 21.)  Plaintiffs can hardly challenge the conclusions of this meta-analysis, as they relied upon an earlier version of it in briefing to the Court.  (*Id.* ¶ 22.)

4

2.    "The Better Vitamin C"

Plaintiffs also challenge a slogan, "The Better Vitamin C®," that formerly appeared in Ester-C's labeling.  NBTY ceased use of that slogan in early 2015.  (NBTY Stat. ¶ 24.)  Plaintiffs assert that consumers interpreted the "Better" slogan as a claim that Ester-C is more easily *absorbed* than ordinary ascorbic acid, and that this implied absorption claim is false.  (*Id.* ¶ 25.)  Plaintiffs have adduced no evidence that consumers interpret the "Better" slogan in this way.  (*Id.* ¶ 26.)  And Plaintiffs testified under oath that they themselves did not interpret the "Better" slogan in this manner.  (*Id.* ¶ 34-35.)  Indeed, Plaintiffs have adduced no evidence that a reasonable consumer would interpret the "Better" slogan as anything other than a marketing "puff."

In any event, there can be no reasonable dispute that Ester-C is, in fact, "better" than ordinary ascorbic acid.  With regard to absorption, multiple studies have demonstrated that Ester-C is retained in white blood cells—a key component of the human immune system—longer than ascorbic acid.  (*Id.* ¶ 27.)  The only evidence Plaintiffs have ever mustered about absorption is a 20-year old "study" involving just nine subjects.  That study purported to compare the absorption of Ester-C and ascorbic acid in blood *plasma* (the non-cellular, fluid portion of the blood) only.  It did not attempt to measure the relative absorption of Ester-C and ascorbic acid in human *immune cells*—which is what people taking vitamin C for its immune properties presumably care about.  (*Id.* ¶ 28.)

Ester-C is undisputedly "better" than ascorbic acid in other ways as well.  For example, clinical studies have found that Ester-C's patented non-acidic formula causes significantly less gastrointestinal irritation than ascorbic acid.  (*Id.* ¶ 30.)  Plaintiffs' own complaint cited a webpage that states that calcium ascorbate (the form of vitamin C in Ester-C) is "less acidic" and "less irritating to the gastrointestinal tract" than ascorbic acid.  (*Id.* ¶ 31.)  Plaintiffs have never pointed to any contrary evidence.  (*Id.*)

C.      **Procedural History**

1.      **Genesis Of This Lawsuit**

In 2008, a group of attorneys commenced a wave of class actions against manufacturers of vitamin C supplements, alleging that the products did not provide any immune benefit. (NBTY Stat. ¶ 36.)  At the center of this group was Brian Kreisler of Belleville, Illinois.  The chosen plaintiffs were largely men residing in the greater Belleville area, most of whom appear to be personal friends or acquaintances of Mr. Kreisler and of one another.  (*Id.* ¶ 37.)  These lawsuits quickly settled, resulting in handsome payments to the lawyers and little benefit to any-one else.  In the first suit alone, counsel took home $950,000.00 in legal fees, while the allegedly duped class members received vouchers for $5.99 apiece.  (*Id.* ¶ 38.)

In 2009, the group set its sights on NBTY and Ester-C, filing a putative class action on behalf of another Belleville-area man with connections to Mr. Kreisler.  *See Warma v. Ester C Co.*, No. 09-cv-144 (S.D. Ill. Feb. 25, 2009).  (*Id.* ¶ 39.)  In May 2010, the *Warma* suit settled. (*Id.*)  But even as the parties were negotiating that settlement, Mr. Kreisler and his colleagues were apparently plotting a do-over.  Just weeks before *Warma* was formally dismissed, Plaintiff Patrick Hughes—yet another Belleville-area resident and personal friend of Mr. Kreisler—purchased Ester-C.  (*Id.* ¶ 40.)  Hughes had never bought a vitamin C supplement in his life be-fore that curiously timed purchase.  (*Id.* ¶ 41.)  Hughes removed the stick-on label from his Es-ter-C bottle and saved it, along with the outer box, long after he had finished the contents and discarded the bottle itself.  (*Id.* ¶ 42.)  At some subsequent point—he claims not to remember when—Hughes retained his friend, Mr. Kreisler, to bring this suit, and provided Mr. Kreisler with the label and box he had improbably saved.  (*Id.* ¶ 43.)

In January 2012, Mr. Kreisler and his colleagues filed the complaint in this action.  In May 2012, a second named Plaintiff was added: Nafisé Nina Hodjat, a Los Angeles lawyer.  (*Id.*

¶ 44.)  Just one month after Hodjat joined this lawsuit as a *plaintiff*, she appeared in another federal lawsuit as an *attorney*; her co-counsel in *that* lawsuit, Reese Richman LLP (now Reese LLP), is one of Mr. Kreisler's co-counsel in *this* lawsuit.  (*Id.* ¶ 45.)

### 2.    Plaintiffs' Complaint

The operative First Amended Complaint alleges that NBTY has made false and misleading statements about Ester-C in its labeling (*supra* at 3-5), and that Hughes and Hodjat were deceived into purchasing Ester-C in reliance on those statements.  Hughes, who purchased Ester-C in Missouri, brought a claim under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010.  (NBTY Stat. ¶ 9.)  Hodjat, who purchased Ester-C in California, asserted claims under three largely interchangeable California consumer-protection statutes: the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*  (*Id.* ¶ 10.)  Both Hughes and Hodjat also brought claims under New York common law for unjust enrichment, intentional misrepresentation, and negligent misrepresentation.  (*Id.* ¶ 11.)  They purported to sue not only on their own behalves, but also on behalf of a nationwide class of Ester-C purchasers, as well as Missouri and California subclasses.  (*Id.* ¶ 12.)

### 3.    NBTY Moves To Dismiss

In June 2012, NBTY moved to dismiss, arguing (among other things) that reasonable consumers would not interpret the challenged statements in the manner that Plaintiffs alleged.  (NBTY Stat. ¶ 46.)  Judge Bianco, who was then assigned to this case, denied that motion.  (*Id.* ¶ 47.)  *See Hughes v. Ester C Co.*, 930 F. Supp. 2d 439 (E.D.N.Y. 2013).  He held that it would be premature to dismiss because Plaintiffs might be able to develop evidence that reasonable consumers construed the challenged label statements as the Plaintiffs alleged in their complaint.

(NBTY Stat. ¶ 47.)  But Judge Bianco expressly noted that the issue could be raised again "at the summary judgment stage once plaintiffs have had the opportunity to fully develop their claims through the discovery process."  (*Id.*)

### 4.      The Court Denies Class Certification

Plaintiffs moved for class certification in August 2014.  (NBTY Stat. ¶ 48.)  At a July 2015 hearing, the Court found that Plaintiffs had not met their burden under Rule 23—indeed, it would later call that initial proffer "woefully inadequate."  (*Id.* ¶¶ 49-50.)  *See Hughes v. Ester C Co.*, 2017 U.S. Dist. LEXIS 114224, at *16 n.4 (E.D.N.Y. July 21, 2017).  But the Court charitably afforded Plaintiffs a second chance.  (NBTY Stat. ¶ 51.)  In the year that followed, both parties filed expert reports and supplemental briefing on class certification.  (Id. ¶ 52.)

In September 2016, following a *Daubert* hearing, the Court issued a detailed, 41-page Memorandum and Order denying Plaintiffs' motion for class certification with prejudice.  (*Id.* ¶ 53.)  *See Hughes v. Ester C Co.*, 317 F.R.D. 333, 354 (E.D.N.Y. 2016).  Plaintiffs then petitioned the Second Circuit for leave to take an interlocutory appeal of the Court's class-certification denial.  The Second Circuit summarily denied that petition.  (*Id.* ¶ 54.)  Separately, Plaintiffs moved this Court to reconsider its denial of class certification, which the Court declined to do.  (*Id.* ¶ 55.)  *See Hughes*, 2017 U.S. Dist. LEXIS 114224.

### 5.      Plaintiffs Fail To Engage In Merits Discovery

With class certification off the table, Plaintiffs' counsel essentially abandoned this case. Under the Court's scheduling order, the merits-discovery period commenced immediately upon the denial of Plaintiffs' class-certification motion.  (NBTY Stat. ¶ 56.)  Shortly thereafter, the Court issued an order reminding the parties that the discovery period was ongoing.  (*Id.* ¶ 57.) On December 29, 2016, merits discovery concluded.  (*Id.* ¶ 58.)  During that time, Plaintiffs' counsel took no discovery whatsoever from NBTY or from any third party: they served no inter-

rogatories, requested no documents, and took no depositions.  Similarly, Plaintiffs disclosed no merits experts and tendered no expert reports—on consumer perception of the disputed claims, the science of vitamin C, damages, or otherwise.  (*Id.* ¶¶ 19, 23, 26, 29, 65, 67.)

## LEGAL STANDARD

Summary judgment should be granted where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment is "not … a disfavored procedural shortcut, but … an integral part of the Federal Rules," designed to "secure the just, speedy and inexpensive determination of every action." *Id.* at 327.

In opposition to a summary-judgment motion, the non-movant cannot "rest upon mere allegation or denials of his pleading, but must set forth specific facts" supported by admissible record evidence "showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The "mere existence of a scintilla of evidence in support of the non-movant's position" is "insufficient." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (cleaned up).  Rather, there must be "evidence on which the jury could *reasonably* find" for the non-movant. *Id.* (emphasis added).

## ARGUMENT

## I.    DUE TO PLAINTIFFS' FAILURE TO PROSECUTE THIS LAWSUIT, THERE IS A TOTAL FAILURE OF PROOF AS TO EVERY ELEMENT OF THEIR CLAIMS

Plaintiffs' various causes of action all sound in false advertising and share a core of common elements.  At minimum, they all require Plaintiffs to prove:

(1) that NBTY's labeling *in fact conveyed* the implied statements alleged to be false;

(2) that those implied statements are *in fact false*;

(3) that those implied statements were *the cause* of Plaintiffs' purchase decisions; and

(4) that Plaintiffs *suffered damages*—here, the payment of a "price premium."

Plaintiffs' claims for intentional and negligent misrepresentation further require proof that NBTY acted with the requisite state of mind (willfulness and negligence, respectively). Finally, Plaintiffs' claim for negligent misrepresentation requires them to prove a special or "privity-like" relationship between themselves and NBTY.

Because Plaintiffs conducted no discovery as to the merits of their claims, there is a total failure of proof as to each and every one of the above elements. Consequently, summary judgment in NBTY's favor is required as to every cause of action.[2]

### A. Plaintiffs Cannot Show That NBTY In Fact Made The Implied Claims That Plaintiffs Allege To Be False

There are two types of false-advertising cases: (1) those where the plaintiff challenges a statement as *literally* false on its face; and (2) those where the plaintiff challenges a statement's *implications*. *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). As the Second Circuit has instructed, "[o]nly an *unambiguous* message can be literally false…. [I]f the language … is susceptible to more than one reasonable interpretation, [an] advertisement cannot be literally false." *Id*. at 158 (cleaned up). The category under which a particular case falls dictates the type of proof a plaintiff must provide.

This is a case of the second type. Plaintiffs have never disputed—and cannot dispute—that, like all vitamin C, Ester-C provides "immune support." All relevant regulators take this as a given, and the sources relied upon in Plaintiffs' own complaint concede as much. (*Supra* at 4.) Instead, Plaintiffs allege that, in context, these facially true "immune support" claims convey a

---

[2] This is particularly obvious with respect to Plaintiffs' claim for *intentional* misrepresentation, which requires proof of each element by "clear and convincing" evidence. *Gaidon v. Guardian Life Ins. Co.*, 725 N.E.2d 598, 607 (N.Y. 1999).

10

false *implied message* that Ester-C is capable of preventing or treating the influenza virus or the common cold.

In the same vein, Plaintiffs do not and cannot maintain that the slogan "The Better Vitamin C®" is literally false on its face.  As the Court previously recognized in this very case, "a general claim of superiority over comparable products" such as the "Better" slogan is archetypal sales puffery with "no meaning of its own"—and as such, it cannot possibly be literally false.  *See Hughes*, 317 F.R.D. at 346 n.13.  Scores of judicial decisions have held the same.  (NBTY Stat. ¶ 33.)  *See, e.g.*, *Time Warner Cable*, 497 F.3d at 160; *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 498-99 (5th Cir. 2000); *Punian v. Gillette Co.*, 2016 U.S. Dist. LEXIS 34164, at *26-27 (N.D. Cal. Mar. 15, 2016).  Instead, Plaintiffs allege that, in context, the "Better Vitamin C" slogan conveys a false *implied message* that Ester-C is more effectively absorbed into the human body than ascorbic acid.

The threshold issue, then, is whether the challenged statements—which are not literally false on their face—in fact convey the implicit messages that Plaintiffs assail.  *See Johnson & Johnson v. Smithkline Beecham Corp.*, 960 F.2d 294, 297-98 (2d Cir. 1992).  Importantly, it is not enough for Plaintiffs to show that NBTY's statements conveyed those implicit messages *to them*.  They must prove that those messages were in fact conveyed to "a significant portion of the general consuming public … acting reasonably in the circumstances."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016); *see also Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. 2007) ("reasonable consumer" standard also applies under MMPA).

This requires Plaintiffs to adduce extrinsic evidence—ordinarily in the form of a survey—showing how reasonable consumers interpret the challenged claims.  *See Time Warner Cable*, 497 F.3d at 153 ("[A] district court *must* rely on extrinsic evidence … to support a finding

11

of an implicitly false message." (emphasis in original)); *Ries v. Arizona Beverages USA LLC*, 2013 U.S. Dist. LEXIS 46013, at *19-20 (N.D. Cal. Mar. 28, 2013) ("[A]necdotal evidence alone is insufficient … [T]o prevail, plaintiff must demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead [reasonable] consumers."); *Morales v. Conopco, Inc.*, 2016 U.S. Dist. LEXIS 144349, at *12-13 (E.D. Cal. Oct. 18, 2016) ("[Plaintiffs'] individual testimony is insufficient to establish whether defendant's representations on its products would deceive a reasonable consumer….").

Here, the summary-judgment record contains no competent evidence—extrinsic or otherwise—that a broad cross-section of reasonable consumers interpret the challenged claims in the manner alleged. Plaintiffs did not commission a consumer survey or offer a subject-matter expert to testify as to how reasonable consumers would understand the challenged label claims. All they have is the bare allegations in their complaint, which are not evidence at all, and Plaintiffs' own "anecdotal" testimony, which is insufficient to create a genuine issue of fact. Indeed, when it comes to the "Better" slogan, *not even Plaintiffs themselves* interpreted the words on the label in the manner the complaint alleges—*i.e.*, as a claim about absorption. Hodjat testified that, to her, the slogan meant generically that Ester-C was superior to other vitamin C supplements "in everything." (*Id.* ¶ 34.) For Hughes, meanwhile, the "Better" slogan "mean[t] that [Ester-C is] better than fruit." (*Id.* ¶ 35.)

With no competent evidence that the challenged label claims actually conveyed the disputed messages to a broad cross-section of reasonable consumers, Plaintiffs' claims fail at the very threshold. *See Ries*, 2013 U.S. Dist. LEXIS 46013, at *19-21.

### B.      Plaintiffs Cannot Show That The Allegedly Implied Claims Are False

Even if Plaintiffs could prove that reasonable consumers construed the challenged statements in the manner alleged, that would not be enough. Plaintiffs would also have to prove that

12

these implicit messages are actually false.  Thus, as to the "immune support" statements, Plaintiffs would have to prove that vitamin C *does not* in fact provide any protection against the flu or common cold.  Similarly, as to the "Better" slogan, Plaintiffs would have to prove that Ester-C *is not* in fact superior to ascorbic acid when it comes to absorption.  But they have no competent evidence of falsity on either score.[3]

As a threshold matter, these are the sorts of issues where Plaintiffs absolutely must adduce expert testimony in order to meet their summary-judgment burden.  Because vitamin C's contribution to human immune function and the relative bioavailability of different molecular forms of vitamin C are subjects "beyond the ken of the average layperson," Plaintiffs "will be unable to sustain their burden of pro[of] . . . without presenting … [expert] testimony from a person with the requisite technical and scientific knowledge." *Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719, 43-44 (E.D.N.Y. 2016); *see also Garber v. United States*, 2017 U.S. Dist. LEXIS 29059, at *18-19 (C.D. Cal. Feb. 27, 2017); *In re Cokes*, 107 S.W.3d 317, 323-24 (Mo. Ct. App. 2003).  But they have disclosed no scientific experts and proffered no expert report setting forth the testimony that such experts would provide at trial.  (NBTY Stat. ¶¶ 23, 29.)  This alone compels summary judgment.  *See Adorno v. Corr. Servs. Corp.*, 312 F. Supp. 2d 505, 514 (S.D.N.Y. 2004); *Garber*, 2017 U.S. Dist. LEXIS 29059, at *19.

Even if expert testimony were not required, the record does not raise a genuine issue of fact as to the falsity of the implied claims that NBTY allegedly made.  First, as to "immune support," the scientific consensus is that vitamin C *does* have a "consistent effect" on the "duration

---

[3] Notably, it is not enough for Plaintiffs to show that NBTY lacks "scientific substantiation" for its implied claims or that their truth or falsity presents an open question—Plaintiffs must affirmatively and definitively prove that the science supports *their* position.  *Hughes*, 930 F. Supp. 2d at 455-59; *see also ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013) ("[A]s a matter of law, statements of scientific conclusions about unsettled matters of scientific debate cannot give rise to liability for damages [under the Lanham Act or state consumer-protection law].").

and severity of colds." (*Supra* at 4.)  And second, as to "The Better Vitamin C®," the undisputed evidence is that Ester-C *is* better absorbed into white blood cells (and thus, into the immune system) than ascorbic acid.  (*Supra* at 5.)  The only supposedly contrary "evidence" that Plaintiffs have ever cited is an obscure study published over two decades ago, involving just nine subjects, which did not even purport to measure the absorption of Ester-C into *immune cells*.  Instead, it compared Ester-C and ascorbic acid with respect to their absorption into *blood plasma*.  (*Supra* at 5.)  Blood plasma is not part of the immune system, so absorption into blood plasma is irrelevant.  Accordingly, even if it constituted a "scintilla of evidence" in support of Plaintiffs' position—and it does not[4]—this single publication is not evidence on which a jury could "reasonably" find that the scientific evidence supports Plaintiffs.  *Hayut*, 352 F.3d at 743.

### C.     Plaintiffs Cannot Show That The Challenged Statements Caused Their Purchase Decisions

A false statement that has no effect is not a basis for liability.  Thus, even if Plaintiffs could show that NBTY made statements capable of misleading reasonable consumers, they could not recover without showing that those statements *caused* them to purchase Ester-C.  Some of Plaintiffs' causes of action phrase this requirement in terms of "reliance," while others call it "causation"—but there is no practical difference between the two.  *See Kwikset Corp. v. Superior Court*, 246 P.3d 877, 890 (Cal. 2011) (under California consumer-protection laws, plaintiff must show that he "would not have bought the product but for the misrepresentation"); *Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836, 843 (Mo. Ct. App. 2015) (MMPA plaintiff must "prove an ascertainable loss caused by th[e] alleged representation"); *Austin v. Zaltz*, 2007 N.Y. Misc. LEXIS 8127, at *13 (Sup. Ct. Dec. 13, 2007) (reliance required for intentional misrepresenta-

---

[4] Plaintiffs could not even introduce this study at trial, because they have disclosed no witness (whether expert or fact) with the qualifications to authenticate it, and because they cannot satisfy the requirements of any hearsay exception in Fed. R. Evid. 803.

tion); *J.A.O. Acquisition Corp. v. Stavisky*, 8 N.Y.3d 144, 148 (2007) (reliance required for neg-

ligent misrepresentation); *TufAmerica, Inc. v. Codigo Music LLC*, 162 F. Supp. 3d 295, 313 n.19

(S.D.N.Y. 2016) (but-for causation required for unjust enrichment claim).

Here, no reasonable jury could find the requisite causal connection.  For starters, Plain-

tiffs testified that they purchased Ester-C for its immune benefits—but they conceded that they

have believed *for their entire lives* that vitamin C prevents and/or treats colds and the flu.

(NBTY Stat. ¶ 59.)  In other words, Plaintiffs held the beliefs that caused them to purchase Ester-

C long before they ever saw or heard of that product, and for reasons entirely independent of any

statement made by NBTY.  Because the challenged statements in Ester-C's labeling were not the

cause of the beliefs that prompted them to make their purchase, the element of causation cannot

be satisfied.

Additionally, Plaintiff Hughes testified that he had *already made up his mind* to purchase

Ester-C when he entered the store on the date of his sole purchase.  (*Id.* ¶ 60.)  As such, nothing

that he subsequently saw in Ester-C's labeling or packaging could possibly have been a cause of

his purchase decision.  *See Kwikset*, 246 P.3d at 888 n.10 ("a party who … b[uys] a product sus-

pecting it was mislabeled in order to pursue a [false advertising] action" cannot show the requi-

site causal connection).

## D.     Plaintiffs Cannot Show That They Paid A "Price Premium" As A Result Of The Allegedly False Statements

Even if Plaintiffs could show falsity and causation, that still would not be enough: each of

their claims also requires a showing of injury or damages.  And here, as the Court has already

held, the only cognizable measure of damages is the so-called "price premium"—that is, "the

difference between what [Plaintiffs] paid [for Ester-C] and the value of what [they] received."

*Hughes*, 317 F.R.D. at 354; *see also Brazil v. Dole Packaged Foods, LLC*, 600 F. App'x 531,

534 (9th Cir. 2015) ("The district court correctly limited damages to the difference between the prices customers paid and the value of the fruit they bought—in other words, the 'price premium' attributable to Dole's 'All Natural Fruit' labels.").[5]

Plaintiffs, however, have adduced no evidence to prove *either* term in the "price premium" equation.  First, as to the amount Plaintiffs paid: Hodjat did not know how many times she bought Ester-C, or what price(s) she paid.  (NBTY Stat. ¶ 61.)  And although Hughes purchased just once, he also had no idea how much he paid.  (*Id.* ¶ 62.)  As discussed above, the price of a single unit of Ester-C could vary by up to a factor of nearly 10 depending on the variety and size purchased, place of purchase, and whether a promotion was in effect.  (*Supra* at 3.)  Thus, the amount that Plaintiffs actually spent on Ester-C is a complete mystery.

Second, as to the value of what Plaintiffs received for their money: both Hughes and Hodjat readily admitted that the value of the Ester-C they purchased was not *zero*, yet neither one had any idea what that value actually was.  (NBTY Stat. ¶ 63.)  At the class-certification stage, Plaintiffs promised the Court that they would be able to calculate this "price premium" using the econometric techniques of hedonic regression, conjoint analysis, and/or contingent valuation.  (*Id.* ¶ 64.)  Yet Plaintiffs never proceeded to do so: since the denial of class certification, they have disclosed no further expert testimony on damages.  (*Id.* ¶ 65.)  As such, the value of what Plaintiffs received is also a complete mystery.

As such, there is no evidence that Plaintiffs paid *any* "price premium" because of the challenged statements—let alone any evidence of the *quantity* of that "price premium."  That is fatal to Plaintiffs' claims: in a false-advertising case, damages "must be of a measurable amount

---

[5] Plaintiffs are not entitled to a full refund of their purchase price, even if they would not have bought Ester-C at all absent the challenged claims.  *See Hughes*, 317 F.R.D. at 355 n.31 ("The Court flatly rejects … [Plaintiffs'] full refund [theory].").

…, and that measurable amount must be supported by evidence."  *Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 61 (Cal. Ct. App. 2006).  The fact-finder may not simply "select an amount" out of thin air.  *Id.* at 62.  Because Plaintiffs failed to offer any evidence of the existence or quantity of their supposed damages, summary judgment is compelled.  *See id.*

### E.      Plaintiffs Cannot Show That NBTY Had The State Of Mind Necessary For A Fraudulent Or Negligent Misrepresentation Claim

In addition to the deficiencies detailed above, Plaintiffs' intentional and negligent misrepresentation claims suffer from another defect:  both require a specific showing of *mens rea*.  Intentional misrepresentation requires Plaintiffs to show that NBTY made the challenged claims with actual knowledge of their falsity.  *Austin*, 2007 N.Y. Misc. LEXIS 8127, at *13.  And negligent misrepresentation requires a "showing of negligence"—*i.e.*, that, in making the challenged statements, NBTY did not act with the degree of care that a reasonable business in its position would have exercised.  *Reilly Green Mountain Platform Tennis v. Cortese*, 2007 N.Y. Misc. LEXIS 9146, at *14 (Sup. Ct. Aug. 6, 2007), *aff'd*, 59 A.D.3d 694 (2d Dep't 2009).

There is no evidence in the record that NBTY made the challenged claims with knowledge they were false.  (NBTY Stat. ¶ 66.)  Likewise, there is no evidence setting forth the standard of care that a reasonable business would have exercised under the circumstances, or that NBTY's actions failed to live up to that standard.  (*Id.* ¶ 67.)  *See, e.g., Wax NJ-2, LLC v. JFB Constr. & Dev.*, 111 F. Supp. 3d 434, 446-47 (S.D.N.Y. 2015) (in order to sustain action for negligent misrepresentation, plaintiff must present evidence of appropriate standard of care, which ordinarily requires "expert evidence").  For this reason as well, summary judgment is required with respect to the intentional and negligent misrepresentation claims.

**F.      Plaintiffs Cannot Show The "Privity-Like Relationship" Necessary For A Negligent Misrepresentation Claim**

In addition to the above elements, a claim for negligent misrepresentation is available only where there is a "special or privity-like relationship" between the plaintiff and the defendant. *J.A.O. Acquisition Corp.*, 8 N.Y.3d at 148; *see also Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012).  This requires "[s]omething more than the trust and reliance between an ordinary buyer and seller."  *Bankers Trust Co. v. State St. Bank & Tr. Co.*, 1998 U.S. Dist. LEXIS 9728, at *9 (S.D.N.Y. July 1, 1998); *see also Izquierdo v. Mondelez Int'l, Inc.*, 2016 U.S. Dist. LEXIS 149795, at *21 (S.D.N.Y. Oct. 26, 2016); *Dandong v. Pinnacle Performance Ltd.*, 2011 U.S. Dist. LEXIS 126552, at *39-40 (S.D.N.Y. Oct. 31, 2011).

Relevant here, a special or privity-like relationship cannot exist in a standard consumer-product transaction, where the plaintiff is merely "one of a large class of possible consumers." *Mahoney v. Endo Health Sols., Inc.*, 2016 U.S. Dist. LEXIS 94732, at *9 (S.D.N.Y. July 20, 2016); *see also McGill v. Gen. Motors Corp.*, 647 N.Y.S.2d 209, 210 (1st Dep't 1996) (dismissing negligent misrepresentation claim for failure to allege special relationship; manufacturer's statements in advertisements were not sufficient because "this kind of mass communication cannot establish 'privity' with unidentified members of the public").

Here, Plaintiffs have adduced no evidence of any "special or privity-like relationship" between themselves and NBTY.  At most, they could establish that they are "one of a large class of possible consumers" to whom NBTY marketed its products.  Summary judgment is thus appropriate as to Plaintiffs' negligent misrepresentation claim for this additional reason.

To be sure, at the pleadings stage, Judge Bianco held that Plaintiffs had "pled sufficient facts" to show a "special relationship" based on allegations that NBTY "held [itself] out as holding a type of special expertise regarding the purported health benefits of Ester-C."  *Hughes*, 930

18

F. Supp. 2d at 475.  But the cases concerning defendants with "unique or specialized expertise" involve "[p]rofessionals, such as lawyers and engineers," who "by virtue of their training and expertise, may have special relationships of confidence and trust with their clients."  *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263-64 (1996).  Prior to Judge Bianco's decision, there was no New York case "support[ing] … the proposition that a special relationship may be based on [a mere] advertisement directed at consumers"; indeed, "courts ha[d] consistently held" the opposite. *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 U.S. Dist. LEXIS 126880, at *75-78 (E.D.N.Y. Sept. 22, 2015).  Judge Bianco's ruling would appear to authorize a negligent misrepresentation claim against *any* manufacturer that professes special "expertise" about its products—which is essentially *every* manufacturer.  That is not the law.

But even taking this ruling at face value, Plaintiffs have not developed the evidence necessary to prove the allegations that Judge Bianco found sufficient.  First, Plaintiffs never testified that they saw or relied upon any of NBTY's purported claims of "expertise."  (NBTY Stat. ¶ 68.) Indeed, all of the "expertise" claims that Judge Bianco cited were found on NBTY's *website*, which neither Plaintiff ever saw.  (*Id.* ¶ 69.)  Second, Plaintiffs never developed any evidence to support their allegation about how NBTY "understood that the content of [its] … marketing … would be used" or that NBTY "knew that [it was] targeting individuals who generally lacked [a] scientific or medical background."  (*Id.* ¶ 70.)  *Cf. Hughes*, 930 F. Supp. 2d at 475.  Accordingly, even if Judge Bianco's motion-to-dismiss ruling were correct, summary judgment would still be required for lack of a "special or privity-like relationship."

## II.    UNJUST ENRICHMENT IS UNAVAILABLE AS A MATTER OF LAW

Plaintiffs may attempt to excuse their utter failure of proof by insisting they can still recover under the doctrine of unjust enrichment.  Any such argument would be futile.

The New York Court of Appeals has squarely held that a claim for unjust enrichment is not available in a case of this nature.  "Unjust enrichment is not a catchall cause of action to be used when others fail…. An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).  Rather, it "is available *only* in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Id.* (emphasis added).

This is not an "unusual" case involving an "equitable obligation" not otherwise recognized by the law.  It is a standard false-advertising case, governed by standard consumer-protection statutes and the common law of fraud and warranty.  Plaintiffs' unjust enrichment claim "simply duplicates, or replaces, [these] conventional contract or tort claim[s]."  It cannot stand.  *See, e.g., Greene v. Gerber Prods. Co.*, 2017 U.S. Dist. LEXIS 122102, at *78 (E.D.N.Y. Aug. 2, 2017) (dismissing unjust enrichment claims in consumer class action as duplicative of consumer protection statute claims); *Mahoney*, 2016 U.S. Dist. LEXIS 94732, at *31-33 (same). In any event, absent competent evidence that Plaintiffs paid an identifiable "price premium" because of a false statement by NBTY, there can be no "injustice" requiring restitution.

## III.   INJUNCTIVE RELIEF IS UNAVAILABLE AS A MATTER OF LAW

Finally, summary judgment should be granted with respect to Plaintiffs' claims for injunctive relief.  The Court has already held that injunctive relief is unavailable in this case because "(1) the named Plaintiffs lack standing to seek such injunctive relief, and (2) the record demonstrates that there is no risk of future harm."  *Hughes*, 317 F.R.D. at 357.  The Court reached this conclusion because Plaintiffs alleged no intent ever "to buy [Ester-C] again," and because even if they did, the "Better" slogan was "removed … from Ester-C packaging in early 2015" and poses no future threat to *anyone*.  *Id.*; *cf. Nicosia v. Amazon.com, Inc.*, 834 F.3d 220,

239 (2d Cir. 2016) (consumer "lack[ed] standing to pursue injunctive relief" where he failed to allege any intent to buy the challenged product again in the future, and where defendant had "ceased selling" the challenged product in any event).

## CONCLUSION

After a "woefully deficient" and ultimately unsuccessful effort at class certification, Plaintiffs essentially abandoned this case, ignoring court-ordered deadlines and making no effort at all to develop any evidence to support their claims. Given the spurious nature of their allegations, that may be just as well. Summary judgment should be granted to NBTY.

Dated:  October 13, 2017                    /s/ Steven A. Zalesin
                                            Steven A. Zalesin (sazalesin@pbwt.com)
                                            Jonah M. Knobler (jknobler@pbwt.com)
                                            PATTERSON BELKNAP WEBB & TYLER LLP
                                            1133 Avenue of the Americas
                                            New York, New York 10036
                                            Telephone: 212-336-2000
                                            Fax: 212-336-2222

                                            *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2017, I caused the foregoing document to be served on counsel of record, at the email addresses below.

/s/ Steven A. Zalesin
Steven A. Zalesin (sazalesin@pbwt.com)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: 212-336-2000
Fax: 212-336-2222

Michael R. Reese (mreese@reesellp.com)
George V. Granade II (ggranade@reesellp.com)
REESE, LLP

Patrick J. Sheehan (psheehan@whatleykallas.com, ecf@whatleykallas.com)
WHATLEY KALLAS, LLC

Jeffrey A. Leon (jeff@Qulegal; debs@Qulegal; ecf@Qulegal)
Zachary A. Jacobs (zach@Qulegal.com; debs@Qulegal; ecf@Qulegal.com)
QUANTUM LEGAL LLC, f/k/a COMPLEX LITIGATION GROUP LLC

Alvin C. Paulson (acp@bphlaw.com)
Kevin T. Hoerner (kth@bphlaw.com)
BECKER, PAULSON, HOERNER & THOMPSON, P.C.

Brian T. Kreisler (brian@kreislerlawfirm.com)
THE KREISLER LAW FIRM, LLC

Michelle W. Cohen (mcohen@pbwt.com)
Jonah M. Knobler (jknobler@pbwt.com)
J. Taylor Kirklin (jtkirklin@pbwt.com)
PATTERSON BELKNAP WEBB & TYLER LLP