UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
PATRICK HUGHES and NAFISE NINA
HODJAT,

                Plaintiffs,                **MEMORANDUM & ORDER**[1]
                                            12-CV-0041 (PKC) (GRB)

        - against -

THE ESTER C COMPANY, NBTY, INC.,
and NATURESMART, LLC,

                Defendants.
---------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      On January 4, 2012, Plaintiffs Patrick Hughes and Nafise Nina Hodjat initiated this putative

class action against Defendants The Ester C Company, NBTY, Inc. ("NBTY"), and NatureSmart

LLC, alleging that Defendants' labeling of their "Ester-C" vitamin C supplements as "The Better

Vitamin C" is unlawful, deceptive, and misbranded.  On September 30, 2016, the Court denied

Plaintiffs' motion to certify a nationwide class, as well as California and Missouri subclasses.

Pending before the Court is Defendants' motion for summary judgment as to Plaintiffs' individual

claims.  For the reasons set forth below, the Court grants Defendants' motion for summary

judgment in its entirety and dismisses this action.

---

[1] This Memorandum & Order is being filed under seal, but a redacted version is being filed
on the public docket.  All highlighted sections of this Order shall be redacted in the publicly filed
version, consistent with the Court's February 24, 2018 Sealing Order (Dkt. 168).

**BACKGROUND**

## I. Factual Background

The Court presumes the parties' familiarity with the factual and procedural background of this case, which is detailed in the Court's prior orders resolving Defendants' motion to dismiss, *Hughes v. Ester C Co.,* 930 F. Supp. 2d 439 (E.D.N.Y. 2013)[2], Defendants' partial motion for summary judgment, *Hughes v. Ester C Co.,* 99 F. Supp. 3d 278 (E.D.N.Y. 2015), Plaintiffs' class certification motion, *Hughes v. Ester C Co.,* 317 F.R.D. 333 (E.D.N.Y. 2016), and Plaintiffs' motion for reconsideration of the denial of class certification, *Hughes v. Ester C Co.,* 320 F.R.D. 337 (E.D.N.Y. 2017).

Briefly, the Ester-C dietary supplements at issue in this action (the "Products") contain a patented form of vitamin C in the form of calcium ascorbate. (Defendants' 56.1 Statement ("Defs.' 56.1"), Dkt. 163, ¶ 4.)[3] According to Plaintiffs, misrepresentations in Ester-C's packaging and marketing create a reasonable expectation with purchasers that Ester-C provides a form of immune system defense that protects users from illnesses, and decreases one's likelihood of getting or remaining ill. (Amended Complaint ("Am. Compl."), Dkt. 13, at ¶¶ 2, 25; Plaintiff's Memorandum in Opposition to Partial Summary Judgment, ("Pl. Mem.") Dkt. 71, at ECF 6.[4]) There is no dispute that NBTY manufactures and sells dietary supplements under the trademark

---

[2] The case was assigned to the Honorable Joseph F. Bianco at that time.

[3] Unless otherwise noted, a standalone citation to Defendants' 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to Defendants' 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document.

[4] "ECF" refers to the pagination generated by the court's CM/ECF system, and not the document's internal pagination.

"Ester-C®", that Ester-C products are sold in various forms, including tablets, gummies, and powder, and that the suggested retail price for Ester-C has been as low as 7 cents per gram and as high as 75 cents per gram. (Defs.' 56.1 ¶¶ 1-7.) While evidence of the amount of damages in the form of a price premium is disputed by the parties, it is not disputed that the amount in controversy for that price premium, as to Plaintiff Hughes's and Plaintiff Hodjat's individual purchases of Ester-C products, does not amount to $75,000. (*Compare* Defs.' 56.1 ¶ 8 to Plaintiffs' ("Pl.") 56.1, Dkt. 170-1, ¶ 8 (Sealed).)[5]

Plaintiffs do not dispute that they have adduced no extrinsic evidence of how consumers actually interpret Ester-C's "immune support" representation in isolation. (Defs.' 56.1 ¶ 19.) Plaintiffs have produced no expert testimony or report concerning the immune benefits of vitamin C or lack thereof, the ability or inability of vitamin C to treat or prevent the common cold or influenza virus, or the relative bioavailability or absorbability of Ester-C and other forms of vitamin C, such as ascorbic acid. (*Id.* at ¶ 29.) Plaintiffs proffer only a webpage on the servers

---

[5] Plaintiffs quantify the price premium as to them based on data from ██████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████ Plaintiff Hughes is a citizen of Illinois who purchased "Ester-C" once from a Walgreens store in St. Louis, Missouri around March 2010, and Plaintiff Hodjat is a citizen of California, who purchased Ester-C from Ralphs and Whole Foods stores in Los Angeles, California, several times throughout 2011. (Am. Compl. ¶¶ 9-10.) Based on the amount of Ester-C product purchased by Plaintiffs and their own cost data, the estimated price premiums for Plaintiffs obviously fall far below $75,000.

of Oregon State University[6] and a journal article by Carol S. Johnston & Bing Luo[7], purportedly showing that vitamin C from Ester-C was not more "bioavailable" than simple ascorbic acid, and that there are conflicting studies as to whether Vitamin C enhances immune function. (Pl. 56.1 ¶ 17; Defs.' 56.1 Response to Pl. Additional Statement of Material Facts, Dkt. 167, ¶¶ 1-9; Plaintiffs' Memorandum of Law, ("Pl. Opp. Br."), Dkt. 170 (Sealed), at ECF 12.)

Plaintiffs never testified that they saw or relied upon any of the purported implied disease claims on NBTY's website. (Defs.' 56.1 ¶ 67; Hodjat Dep. at 120:18-21, 192:6-193:6; Hughes Dep. at 77:5-7, 104:7-8; Defs.' 56.1 ¶ 69.) Plaintiff Hughes testified that he had already made up his mind to purchase Ester-C when he entered the store on the date of his sole purchase. (Defs.' 56.1 ¶ 60, Hughes Dep. at 77:5-7.)

## II. The Instant Motion

Defendants filed the instant motion for summary judgment on January 19, 2018. (Dkt. 161.) Plaintiffs filed their opposition, under seal, on February 26, 2018. In it, Plaintiffs withdrew their common law claims for intentional and negligent misrepresentation. (Pl. Opp. Brief, Dkt. 170, at 10, n. 7.) Defendants filed their Reply Memorandum Brief with the Court earlier, on January 19, 2018, noting Plaintiffs' withdrawal of these claims. (Dkt. 166.) Thus, the remaining claims in this action are Plaintiffs' individual claims,[8] alleging: (1) as to Plaintiff Hodjat, violations

---

[6] *Linus Pauling Inst., Oregon State Univ., Vitamin C, LPI.OregonState.edu* (May 20, 2014), http://lpi.oregonstate.edu/infocenter/vitamins/vitaminC ("Oregon State Webpage").

[7] Carol S. Johnston & Bing Luo, *Comparison of the absorption and excretion of three commercially available sources of vitamin C*, 94 J. AM. DIETETIC ASS'N 779 (1994) ("Johnston Study"), attached as Exhibit H to the Zalesin Partial Summary Judgment Declaration, Dkt. 68-8.

[8] As a preliminary matter, and as discussed *infra,* the Court notes that because Plaintiffs' motion for class certification was denied and the individual Plaintiffs are not asserting diversity

of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, False Advertising Law ("FAL"), Cal. Bus. and Prof. Code § 17500, *et seq.,* Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200, *et seq.*, and the California "Sherman Law", Cal. Health & Safety Code § 109875, *et seq.*; (2) as to Plaintiff Hughes, violations of Missouri's Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010; and (3) as to both Plaintiffs, a New York common law "unjust enrichment" claim.

## LEGAL STANDARD

Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006). "To grant the motion, the court must determine that there is no genuine issue of material fact to be tried." *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)). A genuine factual issue exists where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 166-67 (2d Cir. 2009); *see also Celotex Corp.*, 477 U.S. at 322-23.

---

jurisdiction under 28 U.S.C. 1332(a) (*see* Pl. Opp. Br., Dkt. 170 at ECF 17, n. 7), it is unclear whether the Court retains subject matter jurisdiction over this action.

A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted; alterations in original). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation omitted). In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48. "[What] is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968). "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir. 1997).

## DISCUSSION

## I.      Subject Matter Jurisdiction

As a preliminary matter, the Court notes that because Plaintiffs' motion for class certification was denied and they are not asserting diversity jurisdiction under 28 U.S.C. 1332(a) (*see* Pl. Opp. Br., Dkt. 170 at ECF 17, n. 7), it is unclear whether the Court retains subject matter jurisdiction over this action. *See Gagasoules v. MBF Leasing LLC*, 286 F.R.D. 205, 209–10 (E.D.N.Y. 2012) ("[T]he Second Circuit has not addressed whether subject matter jurisdiction

survives a denial of class certification absent diversity or federal question jurisdiction."). Given the uncertainty on this issue in this Circuit[9], the Court declines to resolve Defendants' summary judgment motion on the basis of subject matter jurisdiction and instead decides the motion on the merits.

## II.     Plaintiffs' Claims

Plaintiffs allege that two categories of statements that have appeared in Ester-C's labeling constitute false advertising and misrepresentations that violate California and Missouri law: (1) statements about "immune support"; and (2) the slogan, "The Better Vitamin C®". (Am. Compl., ¶¶ 3, 5, 17, 22, 23, 56, 62.)

---

[9] *See Weiner v. Snapple Beverage Corp.,* No. 07–CV–8742 (DC), 2011 WL 196930, at * 2 (S.D.N.Y. Jan. 21, 2011) ("The circuits that have considered the issue . . . have uniformly concluded that federal jurisdiction under [Class Action Fairness Act ("CAFA")] does not depend on class certification.") (citing *Cunningham Charter Corp. v. Learjet Inc.,* 592 F.3d 805, 806 (7th Cir. 2010) (collecting cases)). As the court observed in *Weiner,* "[t]his conclusion accords with the general proposition, endorsed by the Second Circuit, that federal jurisdiction is determined at the outset of the litigation." *Id.* at * 2 (citing *LeBlanc v. Cleveland,* 248 F.3d 95, 100 (2d Cir. 2001)); *but see Gagasoules,* 286 F.R.D. at 210 (finding that where "the assertion of CAFA jurisdiction was frivolous or defective from the outset", the court is deprived of subject matter jurisdiction regardless of "any invocation of class action status" under CAFA); *see also Tropical Sails Corp. v. Yext, Inc.,* No. 14-CV-7582, 2017 WL 1048086, at *15–16 (S.D.N.Y. Mar. 17, 2017) (holding that a decision denying certification does not eliminate federal jurisdiction over the original claims except "if a plaintiff invoked CAFA jurisdiction frivolously or defectively, federal jurisdiction would not exist."); *McGaughey v. Treistman,* No. 05-CV-7069 (HB), 2007 WL 24935, at *3–4 (S.D.N.Y. Jan. 4, 2007) (finding no subject matter jurisdiction after case filed under CAFA and Telephone Consumer Protection Act ("TCPA") was denied class certification, and where Plaintiffs failed to put forth facts "that meets the $75,000 amount-in-controversy requirement of 28 U.S.C. § 1332(a)") (citing *Gottlieb v. Carnival Corp.,* 436 F.3d 335, 343 n.10 (2d Cir. 2006)). The Court notes that, even if Plaintiffs were asserting diversity jurisdiction, they could not meet the amount-in-controversy requirement, since any restitution or compensatory damages in the form of a "price premium" for the two remaining Plaintiffs, even with statutory and treble damages, could not possibly amount to $75,000. (*See* Am. Compl. ¶¶ 9-10; Pl. Opp. Br. at ECF 30.)

In Count I of the Amended Complaint, Plaintiff Hughes asserts that these allegedly false statements constitute a violation of Section 2 of the MMPA, Mo. Rev. Stat. § 407.010, which provides:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice. . . . Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale advertisement or solicitation.

In Count II of the Amended Complaint, Plaintiff Hodjat asserts that these statements violate the CLRA's prohibition on "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. In Count III, she alleges that these statements constitute "unfair, deceptive, untrue, or misleading advertising" that are prohibited by the FAL. Cal. Bus. and Prof. Code § 17500.

In Count IV, Hodjat appears to allege five separate violations of the UCL, which proscribes "unlawful, unfair[,] or fraudulent business act or practice[s]." Cal. Bus. & Prof Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). The UCL also "borrows" predicate legal violations and treats them as "independently actionable" under the unlawful prong of the UCL. *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871, 118 Cal. Rptr. 2d 770 (2002). Hodjat's first two UCL claims in Count IV thus "borrow" or incorporate deceptive practice and false advertising claims from the CLRA and FAL, respectively, under the "unlawful" prong of the UCL. (*See* Am. Compl. ¶ 67.) Hodjat's third claim under the UCL "borrows" or incorporates violations of several provisions of California's Sherman Law, which, *inter alia*, proscribes "misbranding" of food and

drug products, under the "unlawful" prong of the UCL.[10]  (Am. Compl. ¶¶ 68-69.)  Finally, Hodjat

alleges a violation of the "fraudulent" prong of the UCL, which "requires a showing [that]

members of the public are likely to be deceived", *Wang,* 97 Cal. App. 4th at 871, and a separate

violation under the "unfair" prong of the UCL, alleging false advertising, consumer deception, and

misrepresentation as the unfair practice at issue.[11]  (Am. Compl. ¶¶ 70-71, 72-76.)

---

[10]  For her UCL "misbranding" claim under the Sherman Law, Plaintiff Hodjat cites
violations of California Health & Safety Code § 110398 ("It is unlawful for any person to advertise
any food, drug, device, or cosmetic that is adulterated or misbranded"); § 111445 ("It is unlawful
for any person to misbrand any drug or device"); § 110770 ("It is unlawful for any person to
receive in commerce any food that is misbranded or to deliver or proffer for delivery any such
food"); and § 111450 ("It is unlawful for any person to receive in commerce any drug or device
that is misbranded or to deliver or proffer for delivery any drug or device.").  (*See* Am. Compl. ¶
68.)  Plaintiff Hodjat further clarifies that under California Health & Safety Code § 110660, "[a]ny
food is misbranded if its labeling is false or misleading in any particular", and § 110290, that "In
determining whether the labeling or advertisement of a food, drug, device, or cosmetic is
misleading, all representations made or suggested by statement, word, design, device, sound, or
any combination of these, shall be taken into account. The extent that the labeling or advertising
fails to reveal facts concerning the food, drug, device, or cosmetic or consequences of customary
use of the food, drug, device, or cosmetic shall also be considered." (Am. Compl. ¶¶ 69-70.)

[11]  With regard to the "unfair" prong of the UCL, some California courts have held that
the "unfair" prong "requires alleging a practice that 'offends an established public policy or . . .
is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,' and the
policy must be 'tethered to [a] specific constitutional, statutory or regulatory provision.'" *Pratt v.
Whole Food Mkt. California, Inc.*, No. 5:12-CV-05652 (EJD), 2015 WL 5770799, at *3 (N.D.
Cal. Sept. 30, 2015) (quoting *Bardin v. Daimlerchrysler Corp.,* 136 Cal. App. 4th 1255, 1263,
1266 (2006) (quotations omitted)).  "Other courts have held that the court must apply a balancing
test that 'weigh[s] the utility of the defendant's conduct against the gravity of the harm to the
alleged victim.'" *Id.*  (citing *Schnall v. Hertz Corp.,* 78 Cal. App. 4th 1144, 1167 (2000)).  To
state a plausible claim for misrepresentation under the FAL, CLRA, and Sherman Law under
each prong of the UCL, however, including the "unfair" prong, a plaintiff "must allege that
Defendant's representations are likely to deceive a reasonable consumer."  *Id.* at *4 (quoting *Red
v. Kraft Foods, Inc.*, No. CV 10-1028-GW (AGRx), 2010 WL 11402175, at *5 (C.D. Cal. July
26, 2010) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). "Because
such an inquiry is common to all three statutory schemes, courts often analyze them together."
*Id.*  (citing *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1132 (N.D. Cal. 2013)).

## III. Plaintiffs' False Advertising and Misrepresentation Claims

The elements of Plaintiffs' false advertising and misrepresentation claims under Missouri and California law substantially overlap. To state a claim under the MMPA, a plaintiff must show that (1) [he] purchased the merchandise in question; (2) [he] purchased the merchandise for personal, family, or household use; (3) [he] suffered an ascertainable loss; and (4) the ascertainable loss was the result of an unfair practice." *Bryan v. Bank of Am., N.A.*, No. 4:17-CV-1616 (RLW), 2018 WL 485968, at *4 (E.D. Mo. Jan. 18, 2018) (internal quotation omitted); *Snelling v. HSBC Card Servs., Inc.*, No. 4:14-CV-431 (CDP), 2015 WL 457949, at *9 (E.D. Mo. Feb. 3, 2015) (to satisfy fourth element of MMPA claim, plaintiff must allege facts establishing that defendants used or employed a deception, fraud, false pretense, false promise, misrepresentation in connection with the purchase of the product). To prevail under the UCL, FAL, and the CLRA, a plaintiff must demonstrate that she "actually relied on the challenged misrepresentations and suffered economic injury as a result of that reliance." *Wilson v. Frito-Lay N. Am., Inc.,* 260 F. Supp. 3d 1202, 1208 (N.D. Cal. 2017) (internal citations omitted). Thus, Plaintiffs' false advertising and misrepresentation claims under Missouri and California law share the following core elements: (1) that Defendants' labeling conveyed the allegedly false or misleading implied statements; (2) that

the implied statements are, in fact, false or misleading;[12] (3) that the implied statements were the motivating cause of Plaintiffs' purchase decisions; and (4) that Plaintiffs suffered damages or economic injury, here, in the form of a price premium.

### A. Plaintiffs Cannot Demonstrate that Ester-C's Labeling Conveyed the Alleged Implied Disease Claims

Plaintiffs' false advertising and misrepresentation claims are based on the following allegedly false implied statements: (1) "immune support" statements that, when viewed in combination with other statements contained in the labeling of Ester-C, convey the false message that Ester-C is capable of preventing or treating influenza or the common cold (Pl. 56.1 ¶ 19); and (2) "The Better Vitamin C®" slogan that, in context, conveys a false message that Ester-C is more effectively absorbed into the human body than ascorbic acid. (Pl. Opp. Br. at ECF 12, 20-21.) Because Plaintiffs provide no evidence that a reasonable consumer perceived Defendants' labeling as conveying these implied disease claims, they cannot prove the first element of their false advertising and misrepresentation causes of action.

Under the CLRA, UCL, FAL, and MMPA, it is not enough for a plaintiff to assert, based on his or her own subjective belief that a statement on the defendant's label conveyed the alleged implied message. Rather, false advertising claims under these statutes are governed by the "reasonable consumer" test. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016); *Maxwell v.*

---

[12] The California Supreme Court has recognized that the FAL, CLRA, and UCL all "prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 850–51 (N.D. Cal. 2018) (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)); *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (same).

*Unilever United States, Inc.*, No. 5:12-CV-01736 (EJD), 2018 WL 1536761, at *5 (N.D. Cal. Mar. 29, 2018) ("False advertising claims under the FAL, the CLRA, and the fraudulent and unfair prongs of the UCL are governed by the 'reasonable consumer' standard."); *Ries v. Arizona Beverages USA LLC*, No. 10-CV-01139 (RS), 2013 WL 1287416, *3 (N.D. Cal. Mar. 28, 2013) ("UCL, FAL, and CLRA claims grounded in fraud are governed by the 'reasonable consumer test.'"); *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (same); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504 (2003) (same); *Kasky*, 27 Cal. 4th at 951 (same); *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. 2007) ("reasonable consumer" standard also applies under MMPA).

Under the "reasonable consumer" standard, Plaintiffs must prove that Defendants' statements were, in fact, conveyed to "a significant portion of the general consuming public . . . acting reasonably in the circumstances." *Ebner*, 838 F.3d at 965; *Hess,* 220 S.W.3d at 773. This standard requires more than a mere possibility that Defendants' label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner*, 838 F.3d at 965 (quoting *Lavie*, 105 Cal. App. 4th 496); *Maxwell,* 2018 WL 1536761, at *4–6 (same). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner*, 838 F.3d at 965 (internal citations and quotation marks omitted). To satisfy the reasonable consumer standard, a plaintiff must adduce extrinsic evidence—ordinarily in the form of a survey[13]—to show how reasonable consumers interpret the challenged claims. *Ries,*

---

[13] While in some cases, "California courts have held that proof of deception does not require expert testimony or consumer surveys", *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411 (YGR), 2016 WL 3844334, at *8 (N.D. Cal. July 15, 2016); *Colgan v. Leatherman Tool Grp., Inc.*,

2013 WL 1287416, at *6 ("[A]necdotal evidence alone is insufficient . . . [T]o prevail, plaintiff must demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead [reasonable] consumers."); *Morales v. Conopco, Inc.*, No. 2:13-CV-2213 (WBS) (EFB) 2016 WL 6094504, at *4 (E.D. Cal. Oct. 18, 2016) ("[Plaintiffs'] individual testimony is insufficient to establish whether defendant's representations on its products would deceive a reasonable consumer....") (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025-26 (9th Cir. 2008)).

Here, Plaintiffs offer nothing more than their own conclusory allegations and "anecdotal" testimony to show what implied claims Ester-C purportedly conveyed. This is plainly insufficient to create a genuine issue of material fact as to whether the statements on Ester-C's labeling conveyed the alleged implied disease claims. The record otherwise contains no evidence—extrinsic or otherwise—that a broad cross-section of reasonable consumers interpret the challenged statements in the manner Plaintiffs allege.

---

135 Cal. App. 4th 663, 681-82 (2006), *as modified on denial of reh'g* (Jan. 31, 2006) (citing cases, and finding statements deceptive for purposes of CLRA, FAL, and UCL, as a matter of law, based on evidence of statements' falsity and the fact that two named plaintiffs had been misled), in such cases, the plaintiffs were also clearly able to substantiate their allegations with admissible evidence regarding the actual material falsity or misleading nature of the implied statements and were able to demonstrate named Plaintiffs' reliance on such statements. *See id.* Even in CLRA, FAL, and UCL class actions, named plaintiffs must still prove each element of their claims, including actual reliance on any alleged misrepresentation. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326-27 (2011)). Here, as discussed *infra*, Plaintiffs offer no proof of the material falsity or misleading nature of any implied statements on Ester-C's labeling. Further, class certification was denied, and Plaintiffs never testified that they saw or relied upon any of the purported implied disease claims on NBTY's website. (Defs.' 56.1 ¶ 67; Hodjat Dep. at 120:18-21, 192:6-193:6, Hughes Dep. at 77:5-7, 104:7-8; Defs.' 56.1 ¶ 69.)

Accordingly, Defendants are entitled to summary judgment solely on this ground with respect to Plaintiffs' false advertising and misrepresentation claims under the CLRA, FAL, UCL, and MMPA.

**B.    Plaintiffs Cannot Show That Any Implied Disease Claims on Ester-C's Labeling are Materially False or Misleading**

Plaintiffs also cannot establish the second element of their false advertising and misrepresentation claims—namely, that the alleged implied disease claims on Ester-C's labeling are, in fact, materially false or misleading.  Because vitamin C's contribution to human immune function and the relative bioavailability of different molecular forms of vitamin C are subjects "beyond the ken of the average layperson," Plaintiffs are "unable to sustain their burden of pro[ving falsity] . . . without presenting [expert] testimony from a person with the requisite technical and scientific knowledge."  *In re Cokes,* 107 S.W.3d 317, 323-24 (Mo. Ct. App. 2003); *Chandler v. Janssen Pharmaceuticals, Inc.,* No. 15-CV-3106 (PKC) (SJB) 2018 WL 3212422, at *8 (E.D.N.Y. Jun. 29, 2018) ("expert testimony is required when the factual content of the underlying issues is not found within common knowledge and experience of laypersons."); *see also Zakaria v. Gerber Prod. Co.,* No. LA-CV-01500-2000 (JAK) (EX), 2015 WL 4379743, at *3 (C.D. Cal. Jul. 14, 2015) (citing *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.,* 107 Cal. App. 4th 1336, 1345 (2003)) ("To be sure, where the scientific evidence is inconclusive, a plaintiff may fail to carry her burden to show actual falsehood, and a private false advertising claim cannot be based on mere lack of substantiation.*").

Here, Plaintiffs have disclosed no expert testimony or report concerning the immune benefits of vitamin C or lack thereof, or the ability or inability of vitamin C to treat or prevent the common cold or influenza virus.  (Defs.' 56.1 ¶ 23.)  The scientific reports Plaintiffs rely on,

namely, the Oregon State Webpage and the Johnston study article, are plainly inadmissible hearsay. *Cruz v. City of New Rochelle,* No. 13-CV-7432 (LMS), 2017 WL 1402122, at *24 (S.D.N.Y. Apr. 3, 2017) (published internet articles inadmissible on summary judgment) (citing *Glowczenski v. Taser Int'l, Inc.,* 928 F. Supp. 2d 564, 572 (E.D.N.Y. 2013) ("A published article is hearsay. . . . [T]he potential establishment of the articles at trial as reliable authorities does not make them admissible as evidence on the current motion for summary judgment."), *aff'd in part, dismissed in part on other grounds*, 594 Fed. App'x 723 (2d Cir. 2014)).

Neither the Johnston study nor the Oregon State Webpage can be admitted without an expert to testify as to their reliability and acceptance in the relevant field of expertise. *Schneider v. Revici*, 817 F.2d 987, 991 (2d Cir. 1987) (Federal Rule of Evidence "803(18) explicitly requires that to qualify under the learned treatise exception, a proper foundation as to the authoritativeness of the text must be laid by an expert witness"). Plaintiffs offer no such expert. *Chandler*, 2018 WL 3212422, at *8 (finding that absence of expert to interpret and validate relevant studies precluded their admission); *see also Schneider,* 817 F.2d at 991; *Glowczenski,* 928 F. Supp. 2d at 572-73.[14]

Plaintiffs have similarly failed to offer any evidence to show the material falsity of the slogan, "The Better Vitamin C®," which Plaintiffs allege conveys the implied statement that Ester-C is more effectively absorbed into the human body than ascorbic acid. (Defs.' 56.1 ¶ 24.) Plaintiffs have disclosed no expert testimony concerning the relative bioavailability or

---

[14] Contrary to Plaintiffs' contention (*see* Pl. Opp. Br. at ECF 23-24), the fact that Defendants cited the Johnston study in prior filings is irrelevant, as Defendants did not cite the Johnston study for its substance; they also did not attest to, or concede, its reliability or the validity of its conclusions.

absorbability of Ester-C and other forms of vitamin C, such as ascorbic acid. (*Id.* at ¶ 29). *Chandler*, 2018 WL 3212422, at *8.

Plaintiffs' failure to offer any expert evidence to establish the material falsity or deception element of their false advertising and misrepresentation claims, in itself, compels summary judgment for Defendants on Plaintiffs' false advertising and misrepresentation claims under the UCL, CLRA, FAL, and MMPA.[15]

## IV. Plaintiff Hodjat's UCL Misbranding Claims

As discussed *supra*, Plaintiff Hodjat purports to bring a misbranding claim, based on a "borrowed" predicate violation of California's Sherman Law, under the UCL's "unlawful" practice prong. (Am. Compl. ¶¶ 68-69; *see Bruton v. Gerber Food Product Company,* 703 Fed. App'x 468, 471 (9th Cir. 2017) (unpublished) (unlawful misbranding claim can be a distinct and separate ground for liability from a fraudulent or false advertising claim under the UCL's unlawfulness prong). However, even when separately asserted, "[t]he Court looks to the 'gravamen' of Plaintiff's [UCL Sherman Law] causes of action to determine if the causes of action are grounded in fraud." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1098 (N.D. Cal. 2017) (dismissing unlawful, fraudulent, and unfair misbranding claims under the UCL, where Sherman Law claims were grounded in false advertising, misrepresentation, and fraud) (citing *Wilson,* 961 F. Supp. 2d at 1144 ("It is clear from Plaintiffs' SAC that the behavior that Plaintiffs allege violated FDA regulations and the Sherman Law is misrepresentation or deception, because Plaintiffs are asserting that Defendant used deceptive labeling practices to hide the truth of the Products'

---

[15] Because the Court finds that Plaintiffs cannot satisfy the first two elements of their false advertising and misrepresentation claims, the Court does not analyze the remaining elements.

ingredients.")); *Kane v. Chobani, Inc.*, No. 12-CV-2425 (LHK) 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013) (finding unlawful UCL claim grounded in fraud where the plaintiff alleged a violation of "the UCL's unlawful prong based on Defendant's violations of the advertising and misbranding provisions of the Sherman Law").[16]

Nowhere is the gravamen of Plaintiff Hodjat's misbranding claims more transparent than in her Amended Complaint: "The Sherman Law provides that a product is misbranded 'if its labeling is false or misleading in any particular.'" (Am. Compl. ¶ 69 (citing Cal. Health & Safety Code § 110660)). Here, the clear predicate violations of Plaintiff's UCL misbranding claims are the false or misleading advertising provisions of the Sherman Law. (*Id.*) Given that Hodjat's UCL misbranding claims are based on the false advertising and misrepresentation provisions of the Sherman Law, they fail for the same reasons as her other claims, *i.e.*, insufficient evidence to

---

[16] The Court observes that "mislabeling alone does not render a product violative of the UCL." *Thomas v. Costco Wholesale Corp.*, No. 12-CV-02908 (BLF), 2014 WL 5872808, at *1 (N.D. Cal. Nov. 12, 2014). To be sure, there may be cases in which a "misbranding" claim under the UCL may be based, in part, on a "*per se*" violation of another statute. *See, e.g., Brown v. Hain Celestial Grp., Inc.,* No. 11-CVZ-03082 (LB) 2015 WL 3398415 at *6-7 (N.D. Cal. May 26, 2015) (finding *per se* violations of California Organic Products Act ("COPA") 70% organic content requirement for products labeled and sold as "organic" to be materially deceptive under the UCL). There may also be cases in which *per se* violations of the Sherman Law may be alleged under the unlawful prong of the UCL. *See, e.g., Orchard Supply Hardware LLC v. Home Depot USA, Inc*., 939 F. Supp. 2d 1002, 1007 (N.D. Cal. 2013) ("an unlawful group boycott is one type of *per se* violation of Section 1 of the Sherman Act", finding plaintiffs did not sufficiently allege such a violation); *Allergan, Inc. v. Athena Cosmetics, Inc.,* No. 07-SACV-1316 (JVS) (RNBx), 2012 WL 12898351, at *4 (C.D. Cal. Dec. 20, 2012) (failure to submit a New Drug Application ("NDA") to the Food and Drug Administration ("FDA") and failure to obtain FDA approval before selling a "new" drug or misbranded product may reveal a *per se* violation of Cal. Health & Safety Code §§ 111550, 110398 and 111440 under the UCL). However, all such cases specifically discuss *per se* violations of underlying statutes in the complaint. As noted *infra*, Plaintiff Hodjat makes very clear that her claim is grounded in fraud, false advertising, and misrepresentation; there are no "*per se*" violations of the Sherman Law specifically alleged or discussed in the Amended Complaint. (*See* Am. Compl. ¶ 69 (citing Cal. Health & Safety Code § 110660).)

satisfy the reasonable consumer standard or establish the falsity of the implied disease claims alleged. Defendants, therefore, are entitled to summary judgment as to Hodjat's three UCL misbranding claims.

## V.    Plaintiffs' Law of the Case Argument

Plaintiffs try to cure the defects in Plaintiff Hodjat's UCL misbranding claims by arguing that, if she can show that Defendants "violated the [Federal Drug and Cosmetic Act ("FDCA")] and the parallel California state law, the Sherman Food, Drug, and Cosmetic Act", she need not prove *any* of the elements of a false advertising/misrepresentation claim, *i.e.*, that a reasonable consumer perceived the allegedly false implied statements, falsity of the implied statements, causation/reliance, and damages. (Pl. Opp. Br. at ECF 14-16.)[17] From this premise, Hodjat argues that the Court's March 2015 ruling that Plaintiff had created a factual issue about whether the statements on Ester-C's label constituted non-FDA-approved disease claims, *Hughes*, 99 F. Supp. 3d at 286-87, constitutes the "law of the case" and results in Hodjat's UCL claim surviving summary judgment, regardless of whether she can prove the other elements of her claim. (Pl. Opp. Br. at ECF 15 (asserting that "the Court has already rejected Defendants' argument that the representations at issue do not constitute a disease claim").) This circular sleight of hand, however, is incorrect.[18]

---

[17] Because the Court does not find that its March 2015 ruling has the binding effect urged by Hodjat, the Court does not address the legal principles or case law she relies upon.

[18] "If final judgment has not been entered, then a partial summary judgment generally does not have preclusive effects." *Nieto v. Vill. Red Rest. Corp.,* No. 17-CV-2037 (JCF), 2017 WL 4539327, at *1 (S.D.N.Y. Oct. 10, 2017) (citing *Warner Bros. Inc. v. American Broadcasting Companies, Inc.,* 720 F.2d 231, 245 n.11 (2d Cir. 1983) ("The 'subject to revision' language of Rule 54(b) underscores that a grant of partial summary judgment on one of several claims does not have *res judicata* effect"); *Acha v. Beame*, 570 F.2d 57, 62-63 (2d Cir. 1978) ("It follows that

The "law-of-the-case" doctrine stands for the proposition that "a decision regarding an issue of law made at one stage of a litigation becomes binding precedent, to be followed in subsequent stages of the same litigation." *Firestone v. Berrios*, 42 F. Supp. 3d 403, 411 (E.D.N.Y. 2013) (internal quotation omitted). However, that doctrine, which is "discretionary", *New York City Dep't of Fin. v. Twin Rivers, Inc.*, No. 95-CV-1389 (HB) (HBP), 1997 WL 299423, at *1 (S.D.N.Y. June 5, 1997) (internal quotation omitted), does not apply where there has been an "intervening change of facts (based on the discovery of new evidence) or of controlling law . . . ." *Calabrese v. CSC Holdings, Inc.,* No. 02-CV-5171 (DLI)(JO), 2009 WL 425879, at *7 (E.D.N.Y. Feb. 19, 2009) (citing *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Cooper & Lybrand, L.L.P.,* 322 F.3d 147, 167 (2d Cir. 2003) (internal citations omitted)). Here, the relevant facts have changed. While the Court found in March 2015, based on the record then, that there existed a material issue of fact about whether Defendants' "immune support" statements constituted implied disease claims, there is no longer a factual dispute on this issue.

As discussed *supra*, based on the now-complete record, Plaintiffs are unable to demonstrate that the Ester-C labels even conveyed the alleged implied disease claims, because Plaintiffs have failed to put forth anything more than their own subjective beliefs about what messages the labels conveyed. *See, e.g., Stone v. Eamer*, No. 7:15-CV-97 (LEK) (ATB), 2018 WL 557872, at *14, n. 8 (N.D.N.Y. Jan. 19, 2018) (granting summary judgment to Defendants, departing from prior order finding that Plaintiff may assert a plausible claim under Title VI of the Civil Rights Act of 1964

---

where, as in the instant case, a partial summary judgment is rendered with respect to only part of the relief sought by the appellants, and where consideration of further relief is specifically reserved, judgment is neither 'final' nor on an entire 'claim....' Where a judgment is not 'final,' within the terms of 28 U.S.C. § 1291, and hence not certifiable under Rule 54 (b), it has no *res judicata* effect.")). The Court also notes that even if meritorious, this argument obviously would not help Plaintiff Hughes's MMPA claims survive summary judgment.

("Title VI"), based on Plaintiff's intervening failure to provide sufficient evidence to establish a "deliberate indifference" Title VI claim). Thus, Hodjat's assertion that "the Court has already rejected Defendants' argument that the representations at issue do not constitute a disease claim" is simply incorrect. Nor can Hodjat even make the conditional argument that, "*if* a jury determines that Defendants violated federal regulations by making disease claims about Ester-C without prior authorization, causation, reliance and damages are established as a matter of law[]". (Pl. Opp. Br. at ECF 16 (emphasis added)). That option is now foreclosed. Because Plaintiffs have failed to develop any evidence to show that the implied disease claims even exist, Hodjat is unable to show that Defendants violated federal regulations, so as to relieve Hodjat of having to prove all of the elements of her UCL misbranding claims. (*Id.* at 9-10 (arguing that unauthorized disease claims are material under the UCL and that materiality under the UCL establishes causation, reliance, and damages).)[19] For this reason, and the reasons discussed *supra,* the Court thus finds Plaintiff Hodjat's UCL misbranding claims cannot survive summary judgment.

## VI. Unjust Enrichment under New York Common Law

To state a claim for unjust enrichment, Plaintiff "must plead that (1) the defendant was enriched (2) at the plaintiff's expense and (3) that equity and good conscience require the defendant to make restitution." *Eidelman v. Sun Prod. Corp*., No. 16-CV-3914 (NSR), 2017 WL 4277187, at *6 (S.D.N.Y. Sept. 25, 2017) (citing *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014)); *accord Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d

---

[19] Indeed, the absurdity of Plaintiffs' position is demonstrated by the fact that it would permit Plaintiffs to go to trial on its false advertising and misrepresentation claims even though they cannot prove that the implied disease claims were, in fact, conveyed by Defendants' statements on the Ester-C label.

777, 790 (2012) ("The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which 'in equity and good conscience' should be paid to the plaintiff").

"Unjust enrichment is not a catchall cause of action to be used when others fail . . . . An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Rather, it "is available *only* in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* (emphasis added). Unjust enrichment claims should be dismissed "where the violative conduct alleged is conterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed." *Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack*, No. 14-CV-6498 (LTS) (HBP), 2018 WL 2059653, at *29 (S.D.N.Y. May 1, 2018) (citing *Trainum v. Rockwell Collins, Inc*., No. 16-CV-7005 (JSR), 2017 WL 2377988, at *19-20 (S.D.N.Y. May 31, 2017)).

This is not an "unusual" situation involving an "equitable obligation" not otherwise recognized by the law. The causes of action in this case are standard false-advertising claims that are governed by consumer protection statutes. Because Plaintiffs' unjust enrichment claim "simply duplicates, or replaces, [these] conventional contract or tort claim[s]", *Corsello,* 18 N.Y.3d at 790, it cannot survive summary judgment. *See also Davis v. Hain Celestial Grp., Inc*., 297 F. Supp. 3d 327 (E.D.N.Y. 2018) (dismissing plaintiff's unjust enrichment claim where "it merely duplicate[d] plaintiff[']s other claims based on the same alleged misrepresentations" and was "no different from his claims for false advertising or fraudulent misrepresentation."); *Mahoney v. Endo Health Solutions*, No. 15-CV-9841 (DLC) 2016 WL 3951185, at *11 (E.D.N.Y. Jul. 20, 2016) (same).

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment.

The Clerk of the Court is respectfully directed to enter judgment and close the case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
PAMELA K. CHEN
UNITED STATES DISTRICT JUDGE

Dated: September 4, 2018
Brooklyn, New York